**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **MARK L. SHORT,** | § | |
| Plaintiff, | § | |
| | § | **CIVIL ACTION NO:** |
| **VS.** | § | 1:26-cv-01174-ADA-DH |
| | § | |
| **TEXAS WORKFORCE COMMISSION;** | § | |
| **MICHAEL MARLER,** in his official capacity as Interim Deputy Regional Director; | § | |
| **TANISHA PICKNEY,** in her official capacity as Vocational Rehabilitation Counselor**,** | § | |
| | § | |
| Defendants. | § | |

## DECLARATION OF MARK L. SHORT AUTHENTICATING ADMINISTRATIVE TRANSCRIPTS

I, Mark L. Short, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746:[1]

1. I am the Plaintiff in the above-captioned civil action. I am over the age of eighteen, of sound mind, and am competent to testify to the matters stated herein. All facts

[1] See https://www.ecfr.gov/current/title-32/section-516.26

set forth in this declaration are based upon my own personal knowledge.

2. During the time period of March through April 2026, I was a participating party (the Appellant) in an administrative due process proceeding before the Texas Workforce Commission - Vocational Rehabilitation (TWC-VR), designated as TWC VR Docket No. 2026-27.

3. I was physically present on the official telephonic lines during the administrative hearings held for this docket on:

   - March 31, 2026 (Pre-Hearing Conference);
   - April 24, 2026 (Status Conference); and
   - April 29, 2026 (Status Conference).

4. Each transcription was generated from the official audio recordings provided by the TWC-VR and transcribed using Microsoft Word Transcribe.[2] I have reviewed the transcriptions and, to the best of my knowledge and belief, they represent a true, accurate, and verbatim (or near-verbatim) account of the audio records.

5. Attached hereto as **Exhibit F (Bates EXHIBIT F 00001 – 000073)**: is a true, correct, and accurate transcription of the March 31, 2026, Pre-Hearing Conference. I have personally reviewed this transcript and attest that it accurately reflects the audio of the proceeding and the statements made by Impartial Hearing Officer June Mann and TWC-VR Regional Director Michael Marler.

6. Attached hereto as **Exhibit G (Bates EXHIBIT G 000001 – 000023):** is a true, correct, and accurate transcription excerpt of the April 24, 2026, Status Conference. I have personally reviewed this transcript and attest that it accurately

---

[2] See https://support.microsoft.com/en-us/office/transcribe-your-recordings-7fc2efec-245e-45f0-b053-2a97531ecf57

reflects the audio of the proceeding and the statements made by Impartial Hearing Officer June Mann.

7. Attached hereto as **Exhibit H (BATES EXHIBIT H 000001 – 000056):** is a true, correct, and accurate transcription excerpt of the April 29, 2026, Status Conference. I have personally reviewed this transcript and attest that it accurately reflects the audio of the proceeding and the statements made by Impartial Hearing Officer June Mann and TWC-VR Regional Director Michael Marler.

8. I offer these transcripts as accurate representations of the statements made by opposing parties and agents of the Defendant Agency, and as a factual record of the procedural limitations imposed by the state tribunal.

Pursuant to 28 U.S.C. § 1746,

I declare under penalty of perjury that the foregoing is true and correct. (28 U.S.C. 1746)

Executed on this __6th___ day of May 2026.

*/s/ Mark L. Short*

Mark L. Short, BSCS,
Plaintiff, *Pro Se*
350 North Street
San Marcos, Texas 78666
(940) 337-7005
markl_short@yahoo.com

# Transcript

00:00:03 Speaker 1

Okay, recording has begun.

00:00:04 Speaker 1

Thank you.

00:00:08 Speaker 1

Good morning.

00:00:09 Speaker 1

This pre-hearing conference will come to order.

00:00:11 Speaker 1

This is a TWC administrative hearing case captioned Mark L.

00:00:16 Speaker 1

Short versus the Texas Workforce Commission and is filed as TWC docket number 2026-27.

00:00:24 Speaker 1

This pre hearing conference is being held on Tuesday, March 31st, 2026 at 10:00 AM and it is now 10:02 in the morning.

00:00:34 Speaker 1

My name is June Maine and I am the impartial hearing officer appointed by the Texas Workforce Commission to hear this matter.

00:00:41 Speaker 1

I am responsible for conducting a full and fair hearing as well as maintaining and enforcing appropriate conduct and decorum.

00:00:49 Speaker 1

I am also responsible for issuing an impartial decision.

00:00:53 Speaker 1

My decision will be based exclusively on the evidence admitted to the record and on such matters officially noticed.

00:01:00 Speaker 1

The hearing shall be conducted in accordance and compliance with 40 Texas Administrative Code, Chapter 850, Subchapter E and Section 102 of the Rehabilitation Act of 1973 as amended.

00:01:15 Speaker 1

This conference is being audio recorded by the hearings coordinator, Melissa Collins.

00:01:20 Speaker 1

The original copy of the audio recording will be kept as part of the files in this appeal.

00:01:26 Speaker 1

No other recording may be or will be made of this hearing by any of the participants.

00:01:33 Speaker 1

in this hearing.

00:01:34 Speaker 1

Any other recording of this hearing is not authorized by the Texas Administrative Code.

00:01:40 Speaker 1

If a party desires a copy of the audio recording, one copy will be provided at no charge.

00:01:47 Speaker 1

At this point, I'd like to ask that all persons present at this hearing identify themselves for the record.

00:01:53 Speaker 1

And let's start with Mr.

00:01:55 Speaker 1

Short.

00:01:55 Speaker 1

Would you please state your full name and your address, please?

00:02:03 Speaker 1

Mr.

00:02:04 Speaker 1

Short, we can't hear you.

00:02:05 Speaker 1

Either turn up, maybe turn up the volume a little bit.

00:02:08 Speaker 1

We have that technology glitch again.

00:02:14 Speaker 2

Any better now?

00:02:15 Speaker 1

Perfect.

00:02:16 Speaker 1

Yes.

00:02:16 Speaker 1

All right.

00:02:17 Speaker 1

We'll get through this.

00:02:18 Speaker 1

All right.

00:02:18 Speaker 2

That's okay.

00:02:20 Speaker 2

Yeah, please let me know if something happens on my end that causes an issue.

00:02:24 Speaker 2

Anyway, my name is Mark Short.

00:02:26 Speaker 2

I am the appellant petitioner in this in this matter.

00:02:30 Speaker 2

My address is 350 North Street, San Marcos, Texas, 78666.

00:02:37 Speaker 2

And I guess that's all you need from me at this point.

00:02:41 Speaker 1

That's all I need at this point.

00:02:42 Speaker 1

That is correct.

00:02:43 Speaker 1

All right.

00:02:43 Speaker 1

And who is here representing the agency?

00:02:46 Speaker 3

Michael Marler.

00:02:47 Speaker 3

I am the interim deputy regional director for TWC Vocational Rehabilitation.

00:02:54 Speaker 1

Alright, and we also have Miss Collins, the hearings coordinator, participating as well.

00:03:00 Speaker 1

As a reminder, the notice of pre hearing conference management order and the rules of decorum were issued, and I believe that they were sent to all parties yesterday.

00:03:11 Speaker 1

So let's talk about the purposes of the pre-hearing conference today.

00:03:15 Speaker 1

So the purpose of the pre-hearing conference is as follows.

00:03:18 Speaker 1

First, to acquaint all parties with the applicable laws, rules, and regulations.

00:03:26 Speaker 1

Two, to allow all parties to raise and address concerns regarding any pending motions, discovery, stipulations, witnesses, disclosure, settings, or any other relevant and material matter.

00:03:39 Speaker 1

Three, to develop the specific issues to be decided at the evidentiary hearing.

00:03:46 Speaker 1

Four, to determine the date for exchanging evidence and identifying witnesses.

00:03:51 Speaker 1

And finally, to set a date for the formal evidentiary hearing.

00:03:57 Speaker 1

Let's talk about the evidentiary hearing.

00:04:00 Speaker 1

The purpose of the formal administrative hearing

00:04:04 Speaker 1

The purposes are as follows.

00:04:06 Speaker 1

First, to provide an opportunity to pursue a resolution of disputes through the hearing process regarding decisions made by the VR counselor concerning the furnishing or denial of services.

00:04:20 Speaker 1

Another purpose is to provide an opportunity for the submission of additional evidence and information to the impartial hearing officer who shall render a decision on the issues in dispute.

00:04:33 Speaker 1

And in connection with the evidentiary hearing, both the appellant, Mr.

00:04:37 Speaker 1

Short, and the agency have a number of rights subject to applicable laws, rules, policies, and some of the rights include the following.

00:04:48 Speaker 1

Both parties have the right to examine all documentary evidence offered for admission into evidence.

00:04:55 Speaker 1

To provide direct testimony for witnesses to call witnesses to testify.

00:05:01 Speaker 1

to offer into evidence any relevant or material information, to cross-examine witnesses presented by the other party, to raise objections to any evidence offered, to make an opening statement, to make a closing statement.

00:05:18 Speaker 1

And of course, the appellant has the right to obtain assistance of legal counsel.

00:05:23 Speaker 1

Both parties have the right to obtain affidavits and to request documents and other information from the other party.

00:05:30 Speaker 1

So let's talk about the hearing procedures.

00:05:34 Speaker 1

Once we commence the hearing, let's talk about how that will progress.

00:05:41 Speaker 1

For the benefit of all parties, I will explain the sequence of the final evidentiary hearing.

00:05:47 Speaker 1

First, we will take up any pending or new motions from either or both parties.

00:05:52 Speaker 1

The witnesses that each of the parties will be presenting will be identified and sworn in.

00:06:00 Speaker 1

The purposes and the procedures for the hearing will be explained again.

00:06:04 Speaker 1

The rights of the parties that I just went over will be explained again at the beginning of the hearing.

00:06:10 Speaker 1

The statement of issue that we will agree upon today will be read into the record.

00:06:16 Speaker 1

Mr.

00:06:16 Speaker 1

Short and TWC will both be allowed opening statements.

00:06:21 Speaker 1

Each party will be allowed to present witnesses.

00:06:24 Speaker 1

Mr.

00:06:24 Speaker 1

Short will have the opportunity to present his testimony and evidence first.

00:06:28 Speaker 1

All of the evidence will be presented.

00:06:31 Speaker 1

I may ask questions of either party and their witnesses at any point in the proceeding.

00:06:37 Speaker 1

Once we have taken in all of the evidence and the witness testimony, I will allow each of the parties to make a closing statement.

00:06:46 Speaker 1

The hearing will be adjourned and then within 30 days after we adjourn the hearing, I will issue a reasoned decision and it's usually very lengthy.

00:06:56 Speaker 1

It's usually more than 10 pages and it will go through the issue that was presented to me, the evidence that I considered an analysis of the evidence and then my decision.

00:07:07 Speaker 1

So as stated previously, Mr.

00:07:09 Speaker 1

Short as the appellant will present his case first, followed by the agency.

00:07:16 Speaker 1

And with regard to witness testimony, if we do this virtually, and most of these are done virtually, each party will be responsible for providing their own witnesses.

00:07:29 Speaker 1

And with each witness as stated previously, the other party will have an opportunity to cross examine them.

00:07:36 Speaker 1

All right, I know I've gone through very quickly and again, most of this will be in the pre hearing order and all of this is contained in Chapter 850 of the Administrative Code and that was provided previously to Mr.

00:07:51 Speaker 1

Short when he filed the appeal.

00:07:55 Speaker 1

So if if you want to refer back to that, everything I've discussed today is already in writing and of course it I want to make sure that.

00:08:04 Speaker 1

You understand.

00:08:05 Speaker 1

All right.

00:08:06 Speaker 1

So at this point, Mr.

00:08:08 Speaker 1

Short, do you have any questions over?

00:08:10 Speaker 1

And I'm just talking about what I just went over.

00:08:13 Speaker 2

Not over what you just went over.

00:08:15 Speaker 2

Like you said, you already have all this that's already been codified and in the statute.

00:08:19 Speaker 2

So I'm I think I'm good on that.

00:08:21 Speaker 1

Great.

00:08:21 Speaker 1

Mr.

00:08:21 Speaker 1

Marler, do you have any questions?

00:08:23 Speaker 3

No, ma'am, you were very clear.

00:08:25 Speaker 1

All right, so.

00:08:28 Speaker 1

At this point in the pre-hearing, we will determine what the actual issues are that I will be hearing at the evidentiary hearing and talking about any pending motions.

00:08:38 Speaker 1

So, Mr.

00:08:40 Speaker 1

Short, I know you have filed a number of motions, pleadings, et cetera.

00:08:46 Speaker 1

So let me address how we typically handle this so that you understand as the hearing officer, again, I must remain impartial and neutral.

00:08:56 Speaker 1

I can't.

00:08:57 Speaker 1

be show preference or deference to one party.

00:09:01 Speaker 1

So typically this is an unusual case because typically the pre hearing conference is set about three weeks after an appeal is filed.

00:09:09 Speaker 1

But because of my schedule and both of you were willing to do it on such quick notice.

00:09:14 Speaker 1

So this is, I will tell you, unusual.

00:09:16 Speaker 1

Usually we would be three weeks out from now.

00:09:19 Speaker 1

So the evidence and and.

00:09:23 Speaker 1

Any submission that will be, I will give deadlines in the order.

00:09:28 Speaker 1

And it's typically about, and I was thinking probably late April.

00:09:33 Speaker 1

So between late April and the date that we decide for the evidentiary hearing, all of the evidence can be submitted at that point.

00:09:43 Speaker 1

There's typically not a lot of motions that are filed in connection with these appeals.

00:09:48 Speaker 1

If we need to address them, if there's an emergency, I'm happy to address them.

00:09:53 Speaker 1

But if it they're premature or too early, I will deny them without prejudice and then if they need to be reasserted.

00:09:59 Speaker 1

So Mr.

00:10:01 Speaker 1

Short, can you give me a summary of what motions you believe are pending at this point that we should address?

00:10:09 Speaker 2

Right now I only have two motions that are pending.

00:10:12 Speaker 2

It was the the the motion dealing with subpoenas and the other one was the motion for interim, the emergency interim relief.

00:10:22 Speaker 1

All right.

00:10:23 Speaker 1

I will table the subpoena after we talk about the issues, because I think that's connected.

00:10:29 Speaker 1

They're asking for subpoena.

00:10:30 Speaker 1

We need to make sure I clarify what the issue is.

00:10:32 Speaker 1

Let's talk about your emergency interim relief.

00:10:35 Speaker 1

And again, that is an extraordinary measure that's usually not granted.

00:10:39 Speaker 1

This procedure is an expedited procedure, and my jurisdiction is very limited on what I can hear, and it's meant to be a fast-track system resolution within 60 days.

00:10:51 Speaker 1

So typically,

00:10:53 Speaker 1

There's not a need for interim relief, but tell me what the interim relief you're seeking and the basis for the interim relief.

00:11:00 Speaker 2

OK, give me a moment here and let me pull up the motion.

00:11:04 Speaker 2

So give me one second.

00:11:05 Speaker 2

All right.

00:11:06 Speaker 2

Because I tried to identify everything that was in the the issue there documented.

00:11:12 Speaker 2

So so basically it has to do with like the the actual polling of the compensatory education.

00:11:21 Speaker 2

OK, that's been that's also been a factor of this.

00:11:23 Speaker 2

It has to do with.

00:11:26 Speaker 2

The immediate need for AT technology.

00:11:30 Speaker 2

OK.

00:11:31 Speaker 2

And so even now my ability to participate in the hearing is somewhat limited and and impeded just from the fact that those are.

00:11:43 Speaker 2

Assistive technology that I actually need even now to help with with this matter.

00:11:48 Speaker 2

So those those are.

00:11:50 Speaker 2

reasons why it are being raised now.

00:11:55 Speaker 2

So there's the issue like my own records, OK, because from what I understand, I'm supposed to be given like a copy of my case file without even asking at the onset of this process.

00:12:05 Speaker 2

Now I'll say on the record that this is my second due process I've had and I've yet to receive a copy of my complete file ever.

00:12:12 Speaker 2

So I would very much enjoy having that in front of me in order to be able to address and proceed.

00:12:19 Speaker 1

Alright, so you you're right.

00:12:20 Speaker 1

So I I I see three different issues, so we'll go through them.

00:12:26 Speaker 1

So first the case record.

00:12:29 Speaker 1

Let me let me start back with you said this is your second appeal or due process, so let me make sure that the issues don't overlap.

00:12:37 Speaker 1

So I don't know anything about the previous appeal.

00:12:41 Speaker 1

Is that one fully resolved?

00:12:43 Speaker 2

Yes, it was resolved well.

00:12:46 Speaker 2

We we had a mediation agreement at the end, so I would say is in however part of that's being raised again now because it was a case where the the agency wasn't forthcoming and honoring the mediation agreement.

00:12:59 Speaker 2

But for that moment, yes, I guess you could say yes, it was resolved at that time, you know, so but still no, I never received a copy of my case filed then either.

00:13:09 Speaker 1

All right.

00:13:09 Speaker 1

OK, we're still on the appeal.

00:13:11 Speaker 1

So all right.

00:13:12 Speaker 1

So I'm going to table the appeal till we talk about the issue.

00:13:16 Speaker 1

And I think a lot of these issues will dovetail into us deciding what the actual issue is for me to hear.

00:13:22 Speaker 1

All right.

00:13:22 Speaker 1

So we'll talk about the appeal and you said that they failed to abide.

00:13:27 Speaker 1

We'll talk about that when we get to the issue.

00:13:30 Speaker 1

That to be heard, but let's talk about the case file.

00:13:34 Speaker 1

Mr.

00:13:34 Speaker 1

Marler, can you give me an update on Mr.

00:13:37 Speaker 1

Short's case file where we are on that.

00:13:40 Speaker 3

This is the first that I'm hearing that it was not provided, so I'm writing an e-mail right now to make it happen.

00:13:46 Speaker 1

OK, Mr.

00:13:47 Speaker 1

Short and I don't know if Mr.

00:13:49 Speaker 1

Marler will be sending it to you electronically or physical paper.

00:13:53 Speaker 1

Is there a preference that you have Mr.

00:13:54 Speaker 1

Short.

00:13:55 Speaker 2

Well, definitely a searchable PDF format would be great, but any type of electronic format that I can actually search it or, you know, and that would be very much appreciated.

00:14:08 Speaker 1

All right.

00:14:10 Speaker 1

Is that possible, Mr.

00:14:11 Speaker 1

Marler.

00:14:12 Speaker 3

I'm writing it down right now.

00:14:15 Speaker 3

I believe it is, yes, possible.

00:14:16 Speaker 1

OK.

00:14:17 Speaker 1

All right.

00:14:18 Speaker 1

And do you have an anticipated time frame that you could have that to Mr.

00:14:22 Speaker 1

Short.

00:14:25 Speaker 3

I will try to get it out in the next 24 hours.

00:14:31 Speaker 1

If there is some issue with regard to the case file, Mr.

00:14:34 Speaker 1

Short, and you don't get it within a week or so, if you could ask for a status conference if you can't resolve it with Mr.

00:14:41 Speaker 1

Marler.

00:14:41 Speaker 1

Again, there's nothing in this process that prohibits you from contacting Mr.

00:14:47 Speaker 1

Marler and trying to work through issues without requesting a status conference, but I definitely want to make sure you get your case file.

00:14:53 Speaker 1

All right.

00:14:55 Speaker 1

So then the next issue you raised is assistive technology.

00:14:59 Speaker 1

So tell me what specifically you're asking for and why it's there is an immediate need today versus when I make a ruling after the evidentiary hearing?

00:15:12 Speaker 2

Well, part of this process is the formulation and and organization of of PDF files.

00:15:18 Speaker 2

OK, that's that's very, very huge requirement of this.

00:15:24 Speaker 2

So one of the requests that I've had ongoing is basically an Adobe Acrobat Pro license to actually allow me to do that.

00:15:34 Speaker 2

Right now, I'm having to hobble together a bunch of ad hoc solutions.

00:15:39 Speaker 2

And even then, I'm still not able to effectively generate the type of documentation I need to on such an evolved case like this.

00:15:54 Speaker 1

All right.

00:15:56 Speaker 1

Was that part of the mediated settlement agreement and the last appeal, or is this Adobe Acrobat something else that's occurred since that mediated settlement agreement?

00:16:07 Speaker 2

It was, it wasn't decided at that point.

00:16:10 Speaker 2

Right now, the way it was at that point was I would be assessed.

00:16:14 Speaker 2

There'd be an AT assessment to actually determine what would be applicable assistive technologies.

00:16:20 Speaker 2

Now the issue about that license actually came up in December of 2025, where it was agreed upon with with me and the actual.

00:16:30 Speaker 2

I guess the AT assessor.

00:16:34 Speaker 2

OK, and so that's been kind of a back and forth issue now since past, gosh, four months or so, and so I have to be resolved.

00:16:43 Speaker 2

All.

00:16:44 Speaker 1

Right, Mr.

00:16:44 Speaker 1

Muller, do you have any information or can you provide me with an update from the agency's perspective?

00:16:49 Speaker 3

Well,

00:16:50 Speaker 3

First, there's not anything on any IPE that says anything about assistive technology.

00:17:00 Speaker 3

However, it was discussed in an e-mail, and I believe it was an e-mail.

00:17:12 Speaker 3

I've been advised that

00:17:15 Speaker 3

Our records indicate that neither the note taking tablet nor Adobe Acrobat Pro were included in any IPE.

00:17:24 Speaker 3

While an evaluation was authorized, you were contacted to arrange for the consultation on December 11th, 2025 and did not schedule at that time.

00:17:37 Speaker 3

So this is dated.

00:17:44 Speaker 3

March 30, March 11th from Valerie Robbins.

00:17:51 Speaker 3

You apparently had a conversation with her and she advised that you talk to your counselor about that.

00:17:57 Speaker 3

Now I will say that the assistive technology was referenced was to my understanding, and I know we're not there yet.

00:18:06 Speaker 3

This is just the preliminary hearing.

00:18:09 Speaker 3

I was tied to a BVI related blind and visually impaired related eligibility determination.

00:18:16 Speaker 3

That because of new medical documentation has been overturned.

00:18:24 Speaker 3

You're still still eligible for services based on your other disabling qualifying disabling conditions.

00:18:33 Speaker 3

But that particularly was.

00:18:38 Speaker 3

from what I've been advised was related to a visual impairment diagnosis.

00:18:51 Speaker 3

So it's not on an IPE, so it still could be negotiated if it's determined to be appropriate.

00:19:04 Speaker 1

And again, as I want to remind both parties that there's nothing that prevents the two of you from either scheduling a mediation through Ms.

00:19:13 Speaker 1

Collins with the neutral mediator to try to resolve it, or talking amongst yourselves and emailing during this process, nothing that prohibits it.

00:19:21 Speaker 1

And if you can reach even a partial agreement, that makes the evidentiary hearing that much shorter and easier for me.

00:19:28 Speaker 1

All right, so.

00:19:30 Speaker 1

Mr.

00:19:30 Speaker 1

Short, you're asking for Adobe Acrobat License Pro.

00:19:38 Speaker 2

Yes, that was one of the things I was asking for.

00:19:40 Speaker 2

Now, do I, I was trying to be patient and give Mr.

00:19:43 Speaker 2

Marlow a chance to speak there.

00:19:45 Speaker 2

However, there was many things that he said that he may not be aware of that are just factually incorrect and false.

00:19:52 Speaker 2

And also the actual downgrading of my BVI status happened after I filed due process.

00:19:59 Speaker 2

And I formally contested that as well.

00:20:01 Speaker 2

OK, so my understanding is that they're supposed to be in place some type of stay put procedure.

00:20:08 Speaker 2

So the idea of actually downgrading my BVI status in the context of a due process hearing, that's just that that sounds illegal to me.

00:20:18 Speaker 1

All right.

00:20:19 Speaker 1

So you're asking for the Adobe Acrobat License Pro and we will take the subpoena issue once we get to

00:20:28 Speaker 1

the issue.

00:20:29 Speaker 1

So I will not make a ruling on the Adobe Acrobat License Pro until we get through the issue.

00:20:35 Speaker 1

I think this is an appropriate time to talk about the issues.

00:20:42 Speaker 1

We've got a couple rabbit trails here and there.

00:20:45 Speaker 1

I want to make sure that we're on the same page.

00:20:47 Speaker 1

So let's first talk about my jurisdiction and what I have authority for.

00:20:54 Speaker 1

So

00:20:57 Speaker 1

Let me pull up the appeal that Mr.

00:21:02 Speaker 1

Short filed, and it said that there was a termination made on March 4th, 2026 by Tanisha Pinckney and Tishwan Ferguson, the VR supervisor, regarding the denial of services.

00:21:20 Speaker 1

There was an issue with the IPE

00:21:24 Speaker 1

There was an issue with delivery of quality or counseling or other services, and then there were some attachments.

00:21:31 Speaker 1

So it says I'm contesting the constructive denial of appellate rights, the 17 month failure to provide authorized assistive technology tablet and Adobe Acrobat Pro, and the falsification of case ledgers.

00:21:46 Speaker 1

The agency is mislabeled.

00:21:48 Speaker 1

One 1700 seventy-six dollars and fifty-two cents in academic reimbursements as supportive maintenance to conceal that $0.00 has been paid toward authorized living stipends.

00:22:00 Speaker 1

stipend since January 2025.

00:22:03 Speaker 1

This neglect has directly caused a metabolic crisis and A1C increase from 7.6% to 8.5% and permanent physical atrophy of 3.5 centimeters with the captain differential.

00:22:18 Speaker 1

All right, so let's let's first talk about my authority.

00:22:21 Speaker 1

My authority.

00:22:24 Speaker 1

is with regard to denial or suspension of services within 180 days preceding the filing of the appeal.

00:22:38 Speaker 1

So that is, for your reference, Mr.

00:22:43 Speaker 1

Short, that is 40 Texas Administrative Code 850.62B.

00:22:50 Speaker 1

which says the request for review shall be filed within 180 calendar dates from the date of determination and shall be filed in writing and filed with the agency's Office of General Counsel.

00:23:02 Speaker 1

So the appeal that you filed seems to reference a longer period of time and

00:23:15 Speaker 1

I am only allowed to make determinations regarding, and this is an 850.60, which is the scope.

00:23:22 Speaker 1

I am only allowed to make determinations concerning the denial, reduction, suspension, or termination of VR services.

00:23:31 Speaker 1

I am not allowed to do anything else.

00:23:34 Speaker 1

So I believe that part of your appeal is outside my ability to hear evidence and make a determination.

00:23:43 Speaker 1

So I need to hear from you so that I understand exactly what your appeal is.

00:23:48 Speaker 1

What occurred on March 4th that gave rise to the appeal?

00:23:55 Speaker 2

Well, first of all, let me say for the record also that I've yet to receive any type of notice of determination on anything ever since I've been in the program.

00:24:04 Speaker 2

OK.

00:24:05 Speaker 2

And so part of my ability to appeal something is I need that NOD.

00:24:11 Speaker 2

to actually, you know, tie it to a particular date to bring to an independent hearing office, you know, purview.

00:24:21 Speaker 2

So as you said yourself, ma'am, I believe you're quoting some some restrictions on 180 day dates.

00:24:28 Speaker 2

Well, I mean, I can, you know, sign off all the times I've asked for NODs that I've yet to receive.

00:24:34 Speaker 1

And so that's the law.

00:24:36 Speaker 1

I mean, I'm not just signing.

00:24:38 Speaker 1

No, no.

00:24:38 Speaker 2

No, no, no.

00:24:39 Speaker 2

I and I I appreciate that.

00:24:40 Speaker 2

No, no, no.

00:24:40 Speaker 2

And I'm trying to work within the the confines of your jurisdiction, you know, but at the same time, if if an agency never provides you an NOD, then it's basically it prevents my ability to even pursue an appeal.

00:24:56 Speaker 1

Well, if you aren't getting the services that you want, that is effectively a denial and there it gives right to an appeal.

00:25:03 Speaker 1

So very well.

00:25:05 Speaker 1

If if you're not getting something that you need through any agency.

00:25:11 Speaker 1

And and you disagree with it, you you take action.

00:25:15 Speaker 1

So I'm telling you, I understand what you're saying and I understand I can from your pleadings.

00:25:21 Speaker 1

I understand you're frustrated, but I don't have authority.

00:25:25 Speaker 1

to go beyond what I can hear.

00:25:28 Speaker 1

And if I did, and I rendered a decision, I promised you TWC would appeal it saying this.

00:25:36 Speaker 1

hearing officer had no right to make these determinations.

00:25:40 Speaker 1

So I'm trying to stay within the lane that I've been prescribed by law.

00:25:44 Speaker 1

So I need to know from you what happened in the six months before the appeal filed on issues that I can hear.

00:25:52 Speaker 1

So specifically what happened on March 4th because you referenced that date on the appeal?

00:25:58 Speaker 2

Okay.

00:25:58 Speaker 2

On that particular date there, there has been some ongoing discussion

00:26:04 Speaker 2

OK, via emails OK between me and and the different agents you know of TWC and so.

00:26:13 Speaker 2

Part of that was actually me filing a complaint with the the VR ons onsman bunsman from forgive me, I have a very difficult time with that word.

00:26:24 Speaker 2

And I got a formal response back basically reciting some of the same rhetoric that Mr.

00:26:29 Speaker 2

Marler read.

00:26:31 Speaker 2

OK, which is totally factually incorrect and and and and false.

00:26:35 Speaker 2

OK, because I've I've had like ongoing conversations with with various entities like the AT assessor.

00:26:44 Speaker 2

I actually went through and we went through the AT assessment.

00:26:48 Speaker 2

I actually submitted information back to them.

00:26:51 Speaker 2

So it had been a very interactive process.

00:26:53 Speaker 2

So the idea that they reached out to me and I didn't respond is complete bogus.

00:26:59 Speaker 2

I mean, I've raised issues also about, you know, ongoing issues about requesting what is the status of this AT technology?

00:27:07 Speaker 2

I, you know, I need this, you know, for support of my courseware, okay?

00:27:14 Speaker 2

And so I have probably,

00:27:15 Speaker 2

I don't know, 510 different e-mail threads that are all relevant to that that that's taking place in January, it's taking place in in February, it's taking place in March.

00:27:26 Speaker 2

And those are things that I'm more than happy to provide to either Mr.

00:27:30 Speaker 2

Marder or or yourself, Your Honor, to support my claims about this.

00:27:35 Speaker 2

So so again, whatever Mr.

00:27:38 Speaker 2

Marder is reading from from his his records there is is is.

00:27:42 Speaker 2

It's actually false, OK, because I I can contest all that.

00:27:46 Speaker 1

Well, and that's typically why we are in an appeal process because the two parties do not see eye to eye.

00:27:52 Speaker 1

And that's that's my role in this matter to be impartial and render a decision.

00:27:56 Speaker 1

So tell me, Mr.

00:27:58 Speaker 1

Short, what services were you denied in the 180 days prior to the filing of the appeal that I need to consider?

00:28:08 Speaker 2

Well, the AT technology, OK, I can definitely tie that to within 180 days.

00:28:15 Speaker 1

OK.

00:28:16 Speaker 1

Can you be very specific because the issue needs to be very specific.

00:28:20 Speaker 1

What assistive technology do you were you requesting that has been denied besides the Adobe?

00:28:26 Speaker 1

I know we've gone through the Adobe.

00:28:29 Speaker 2

The laptop or or the tablet support and actually I was asked by the AT assessor which one did I prefer and and I I actually responded to her you know which one it was the the the Surface Pro would have been very appropriate.

00:28:44 Speaker 2

OK.

00:28:44 Speaker 2

So right now those are the two items that the the ATS technology that that I definitely need and require.

00:28:52 Speaker 1

OK.

00:28:53 Speaker 1

What other services were denied to you within 180 days prior to the filing of the appeal that we need to consider at the at the final hearing?

00:29:05 Speaker 2

OK.

00:29:05 Speaker 2

The orthopedic support has yet to be provided.

00:29:10 Speaker 2

So basically I have.

00:29:12 Speaker 2

I think it's documented that I have a ruptured Achilles tendon and so forth.

00:29:17 Speaker 2

No, no supports has been provided for that whatsoever.

00:29:20 Speaker 1

All right.

00:29:25 Speaker 1

OK.

00:29:26 Speaker 1

Assistive technology, orthopedic support.

00:29:29 Speaker 2

OK.

00:29:29 Speaker 1

What else?

00:29:30 Speaker 2

Since we're since Mr.

00:29:32 Speaker 2

Marler is raising the issue about the downgrade of my disability status, obviously I'm going to contest that.

00:29:39 Speaker 2

OK.

00:29:40 Speaker 2

And so he's saying that that happened just in was it March?

00:29:45 Speaker 2

What was the date of that, Sir?

00:29:47 Speaker 3

No, I was quoting the the date of my e-mail.

00:29:50 Speaker 3

OK, that that I was quoting.

00:29:51 Speaker 3

I don't have a date for when that was determined.

00:29:57 Speaker 2

I received e-mail about that.

00:29:58 Speaker 2

It was like it was after I'd already filed.

00:30:00 Speaker 2

It was a week after I filed is when I received a notice of that.

00:30:04 Speaker 2

So I know that definitely is going to be within the 180 days.

00:30:08 Speaker 1

But it's 180 days preceding the appeal.

00:30:11 Speaker 1

It doesn't address matters that occurred after the appeal was filed.

00:30:16 Speaker 2

Oh, so you don't have the ability to address them downgrading my service in the middle of an appeal?

00:30:22 Speaker 1

That is something that occurred post appeal.

00:30:27 Speaker 1

You could file a separate appeal and you could seek to consolidate it, but I believe it says within 180 calendar dates from the

00:30:38 Speaker 1

Yes, previous to the filing of the appeal.

00:30:41 Speaker 2

OK.

00:30:42 Speaker 1

So how Mr.

00:30:44 Speaker 1

Marler indicated that the redesignation wouldn't prevent services from being provided.

00:30:54 Speaker 1

So what service is there, Mr.

00:30:56 Speaker 1

Shores, are specific services that have been denied as a result of the reclassification.

00:31:02 Speaker 2

Everything is pretty much that was like the last major issue that happened in the context of this.

00:31:08 Speaker 2

So I have not had any more, you know, I haven't requested anything else because nothing else has been provided.

00:31:15 Speaker 2

And the next thing you know is they downgrade my service, which I also filed and submitted emails that actually contested that saying that they that they didn't have the actual the basis of justification to do that.

00:31:26 Speaker 2

OK, so.

00:31:28 Speaker 2

So I mean, but now you're telling me that I can't even raise that in the context of the due process.

00:31:32 Speaker 2

I have to file another due process to raise that, but there should have been like a stay put order, which I mean that should fall within your jurisdiction to enforce a stay put order.

00:31:43 Speaker 3

Your honor, am I able to interject here?

00:31:46 Speaker 1

Yes, you may respond.

00:31:47 Speaker 3

So everything has stayed put right now.

00:31:51 Speaker 3

Nothing, nothing has changed.

00:31:53 Speaker 3

You're still on what we what we call a.

00:31:57 Speaker 3

blind and visually impaired caseload.

00:32:00 Speaker 3

However, there has been a determination, not in any official way yet, that you do not meet our visually impaired criteria, and that your eligibility determination based on that piece, just that piece, was invalid.

00:32:21 Speaker 3

Whenever we discover those things through case reviews and any number of other things,

00:32:27 Speaker 3

we reevaluate.

00:32:30 Speaker 3

Now, the good thing is you're still eligible for VR services and you're still eligible to receive at least some of the services that have been identified on your IP.

00:32:42 Speaker 3

I don't know about the AT.

00:32:44 Speaker 3

The only thing I know about the AT is it's currently in place.

00:32:48 Speaker 3

You were directed to make an appointment and

00:32:56 Speaker 3

from the information that I have available to me, you did not do that.

00:33:01 Speaker 3

And so there has been no denial of the assistive technology service that you have requested.

00:33:11 Speaker 3

But I will say that that, as far as I understand, was related to a diagnosis of a visual impairment that was qualifying for our services.

00:33:24 Speaker 3

That is still to be determined whether or not the cert those services with regard to the technology are still appropriate.

00:33:34 Speaker 3

And as I said earlier, it may be that having the diagnosis that you do have qualifies you for those assistive technology services that is yet to be determined.

00:33:51 Speaker 3

So there's been no denial.

00:33:54 Speaker 3

And because there's been no denial, there's been no NOD.

00:33:59 Speaker 1

OK, so but the orthopedic support has nothing to do with the BVI, so that's that's totally.

00:34:06 Speaker 3

I can address that too.

00:34:08 Speaker 1

No, well, no, I just wanted to say that not everything is going to be related.

00:34:12 Speaker 1

So I think Mr.

00:34:13 Speaker 1

Short, does that answer your question?

00:34:14 Speaker 1

So you're not being denied any services as a result and there's not been official letter denying it.

00:34:20 Speaker 1

So basically there I know you had.

00:34:23 Speaker 1

put in some of your motions that there's been some, you know.

00:34:29 Speaker 2

Constructive denial, I guess is the best way to put it right now.

00:34:32 Speaker 2

But I'm sorry, I didn't mean to go ahead.

00:34:36 Speaker 1

We may, although that letter hasn't been issued, Mr.

00:34:42 Speaker 1

Short, I assume that part of the testimony and evidence that I will hear will be relating to your vision impairment.

00:34:51 Speaker 1

I'm assuming that's part of the entire.

00:34:55 Speaker 1

Your disabilities.

00:34:56 Speaker 1

So while that specific issue may not be the subject of this appeal, I I have a feeling we'll be talking about it at the final hearing.

00:35:06 Speaker 2

Right.

00:35:06 Speaker 1

And because it dovetails again, it it's this one is not as clean.

00:35:12 Speaker 1

clear issues as some of the other appeals I have.

00:35:14 Speaker 1

And if we need to have a status conference later shortly before the hearing to address any issues, I'm happy to do that.

00:35:21 Speaker 1

But my understanding now is the only issues that I will be hearing is assistive technology and that deals with Adobe Acrobat.

00:35:30 Speaker 1

And you said you wanted the Surface Pro.

00:35:32 Speaker 1

And so we've got the orthopedic support issue with the ruptured Achilles tendon.

00:35:39 Speaker 1

What other issue do we need to address at the final

00:35:42 Speaker 1

hearing.

00:35:43 Speaker 2

On the actual coverage of my MSCS program.

00:35:53 Speaker 1

All right.

00:35:55 Speaker 1

Can you detail further?

00:35:58 Speaker 2

Sure.

00:35:59 Speaker 2

Basically, it's it's, you know, right now my my IPE is is basically in a state of of

00:36:05 Speaker 2

collapse.

00:36:06 Speaker 2

OK, and so.

00:36:09 Speaker 2

Or that has to do with the the the the education program that I'm currently in at Texas State University, which I've fully documented and supplied countless evidentiary

documents in support of that where they're not complying with with their basic responsibility to finding an accessible education environment.

00:36:31 Speaker 2

And so that falls under the jurisdiction of Texas Workforce Commission responsibility to effectively monitor the the education agencies and that that is that is one of their cores.

00:36:46 Speaker 2

So.

00:36:47 Speaker 1

That's outside my jurisdiction, but the IPE, if there's an issue with the IPE, I do have jurisdiction over that.

00:36:56 Speaker 1

The inner workings between Texas Workforce Commission and the state universities.

00:37:00 Speaker 1

I have no jurisdiction.

00:37:03 Speaker 2

OK.

00:37:03 Speaker 2

And I.

00:37:04 Speaker 2

Well, good as far as.

00:37:05 Speaker 1

So tell me.

00:37:05 Speaker 1

So as far as the IP with the IPE, tell me what's wrong or how there's been a.

00:37:09 Speaker 1

Again, I'm going to back to I have to make a determination concerning the denial reduction suspension.

00:37:17 Speaker 1

of or termination of your services.

00:37:19 Speaker 1

So what is wrong with the IPE that you're being denied reduced services have been reduced or suspended?

00:37:28 Speaker 2

OK.

00:37:28 Speaker 2

First of all, I I did request a change to my IPE in March basically to to formally add in some things that weren't in there.

00:37:37 Speaker 2

One was a transition to an MSCS program.

00:37:43 Speaker 2

OK.

00:37:44 Speaker 1

OK.

00:37:45 Speaker 2

And I did get a denial on that.

00:37:47 Speaker 2

However, it was verbal.

00:37:50 Speaker 1

All right, so you're requesting changes to the IPE that were denied?

00:37:58 Speaker 2

Yes.

00:37:59 Speaker 1

OK.

00:38:01 Speaker 1

Is there anything else with regard to the IPE?

00:38:04 Speaker 2

Transition to a academically accessible program.

00:38:11 Speaker 2

OK, one that's actually compliant with the federal

00:38:15 Speaker 2

accessibility laws.

00:38:17 Speaker 2

I mean, I want to say federal because I know that's outside, but also the Texas accessibility laws.

00:38:21 Speaker 2

So basically a compliant education program.

00:38:27 Speaker 1

So what is not being afforded to you now through accessibility that you need?

00:38:32 Speaker 1

Can you explain?

00:38:33 Speaker 1

I need to understand so I can formulate an issue in a manner that addresses your concerns.

00:38:42 Speaker 2

OK.

00:38:44 Speaker 2

I have like an an an ongoing disability investigation complaint that's been lasting since since December.

00:38:54 Speaker 2

Now that December is within the 180 days, so so I want to make sure that we get that identified.

00:39:00 Speaker 2

Ralph back.

00:39:01 Speaker 1

But again, that's that's through Texas Workforce Commission.

00:39:05 Speaker 1

And that has no, I have no jurisdiction of that.

00:39:07 Speaker 1

If there's a complaint through the Texas Workforce Commission, that's through a different process.

00:39:12 Speaker 1

I don't have any jurisdiction over that.

00:39:15 Speaker 1

I can't make that determination.

00:39:17 Speaker 2

So everything is in the guise of basically the IPE, is that right?

00:39:20 Speaker 2

Pretty much everything that you do as far as your jurisdiction.

00:39:26 Speaker 1

Not necessarily, but you're telling me that you requested a change in your IPE and that was denied.

00:39:32 Speaker 1

That is something that I can I can hear.

00:39:35 Speaker 2

OK, very well then.

00:39:37 Speaker 1

If that was done within 180 days prior to the filing of your appeal and you believe that you were denied services, I can hear that.

00:39:45 Speaker 2

OK, for the record, pretty much everything else I raise is going to be from December 2025 till now.

00:39:51 Speaker 2

OK, so that's definitely going to be within the 180 day time limit?

00:39:55 Speaker 1

If you have any other complaints or investigations through the Texas workforce or through other processes and procedures, I do not have any any control over those no jurisdiction.

00:40:07 Speaker 1

I cannot consider this matters.

00:40:09 Speaker 1

So and this goes back to the subpoena.

00:40:12 Speaker 1

So when we're looking at these issues.

00:40:16 Speaker 1

I don't believe that a subpoena is appropriate for Texas State University employees because we're talking about assistive technology, orthopedic support, and an IPE.

00:40:28 Speaker 2

Well, an IPE for training program.

00:40:30 Speaker 2

And basically, they are a training program vendor.

00:40:34 Speaker 2

OK.

00:40:35 Speaker 1

But again, let's go back to.

00:40:38 Speaker 1

being denied services.

00:40:40 Speaker 1

So the issue is between you and Texas Workforce Commission has nothing to do with their vendor.

00:40:47 Speaker 1

If TWC is denying you some sort of program, the MSCS program or something else, and you believe that was denied, we don't bring in Texas State University employees.

00:40:59 Speaker 1

It's between you and TWC.

00:41:03 Speaker 2

Okay, so then what, how do I raise that then with TWC?

00:41:09 Speaker 1

I can't give any legal advice because I'm sorry, I can't.

00:41:12 Speaker 1

That shows that I'm giving you preference over TWC.

00:41:15 Speaker 1

So there's mechanisms, there's other procedures.

00:41:19 Speaker 1

I just I can't give any.

00:41:21 Speaker 2

Let me just say then that that I've already attempted those procedures and mechanisms and that they've all been exhausted.

00:41:26 Speaker 2

OK, so in that context, basically the entire IPE that that stands before you basically is is defunct.

00:41:32 Speaker 2

OK, so I mean we should be able to address everything then if if that's the case, I mean because I should have some type of effective viable IPE, correct?

00:41:43 Speaker 1

I don't know what the status of the IPE.

00:41:45 Speaker 1

What was the latest IPE that was signed by both parties?

00:41:49 Speaker 2

November 2025.

00:41:50 Speaker 2

Do.

00:41:51 Speaker 1

You agree with that, Mr.

00:41:52 Speaker 1

Marler.

00:41:53 Speaker 3

Yeah, I do.

00:41:54 Speaker 1

OK, and what was the exact date in November?

00:41:58 Speaker 3

I can tell you in just a moment.

00:42:14 Speaker 3

The.

00:42:14 Speaker 3

It was signed on November the 4th, 2025.

00:42:19 Speaker 2

That sounds that sounds about right.

00:42:21 Speaker 1

Alright.

00:42:23 Speaker 1

So, Mr.

00:42:23 Speaker 1

Marler, I mean, Mr.

00:42:25 Speaker 1

Short, let me ask you this.

00:42:26 Speaker 1

How long have you been in the program at Texas State University?

00:42:30 Speaker 2

Since January 2025.

00:42:34 Speaker 1

And what is your goal?

00:42:38 Speaker 1

What is your degree?

00:42:40 Speaker 2

As stated in my IP, it was a BS in electrical engineering.

00:42:46 Speaker 1

The reason I'm asking that again, I have no documentation.

00:42:49 Speaker 1

So I when I ask these questions, I truly have nothing to look at.

00:42:52 Speaker 1

OK.

00:42:52 Speaker 2

Yeah.

00:42:53 Speaker 2

And that's kind of it's a little frustrating for me too, ma'am, because I've already submitted all this stuff to you guys.

00:42:58 Speaker 1

And it it's was not appropriate time to do it and it was outside the scope of my jurisdiction and that's why things were being denied.

00:43:07 Speaker 1

Not because I don't want to see it.

00:43:10 Speaker 1

It's because if it's something I cannot consider, I cannot consider it.

00:43:14 Speaker 1

All right.

00:43:15 Speaker 1

So

00:43:18 Speaker 1

That's the three issues that we have.

00:43:21 Speaker 1

Assistive technology, orthopedic support, and your IPE, which you assert you requested a change and the services you were requesting were denied by TWC and the services were not being provided, correct?

00:43:40 Speaker 2

If that's all you're willing to consider, because also, I mean, there's also issues over the actual, the maintenance that's been provided.

00:43:52 Speaker 1

Which is part of the IPE.

00:43:55 Speaker 2

Yes, it is.

00:43:56 Speaker 1

Okay.

00:43:56 Speaker 1

So will this roll back into the November 4th IPE?

00:44:01 Speaker 2

Yes, it will.

00:44:02 Speaker 1

All right, so you were denied services and are you claiming that services that were on the IPE have not been provided?

00:44:10 Speaker 2

Yes, that's what I'm claiming.

00:44:11 Speaker 1

Okay, I want to make sure I understand.

00:44:14 Speaker 1

So there was a failure to amend and provide additional services that you requested, and then you're saying that the agency failed to abide by the IPE?

00:44:25 Speaker 2

That's correct.

00:44:26 Speaker 1

Okay, understood.

00:44:31 Speaker 1

And what specifically have they failed to do?

00:44:36 Speaker 2

Uhm?

00:44:38 Speaker 2

You're asking me to kind of go back and refer to documentation that I haven't been able allowed to submit or so you know in support of my comments.

00:44:47 Speaker 2

You're asking me to do all this from memory?

00:44:51 Speaker 1

If you know I can be more generic and the issue, but if there is specific things that you can recall.

00:45:00 Speaker 2

Not at this time, not with not with what clarity.

00:45:04 Speaker 2

I would need to actually go back and reference the documents to, you know, because I'm not going to make blind accusations without something that actually support what I'm telling you.

00:45:14 Speaker 2

So that's that's that's the quandary I'm at right now is how do I we address these things without me having a foundation for me to actually support what I'm claiming?

00:45:29 Speaker 1

No.

00:45:29 Speaker 1

So the purpose of today's hearing is to determine, in part, to determine the issues, your evidence to support those issues.

00:45:37 Speaker 1

I mean, you've got whatever evidence you have to support those issues and that will be submitted at a later time.

00:45:44 Speaker 1

As the hearing officer, I need to make sure I understand what the issues are so that your evidence will fall into those issues.

00:45:52 Speaker 1

So I'm not asking you, there's nothing in the record at this point because I've not allowed in any evidence.

00:45:58 Speaker 1

It's not appropriate until after the pre-hearing conference to even consider any evidence.

00:46:04 Speaker 1

And the evidence will not be considered prior to the hearing.

00:46:08 Speaker 1

So even though typically it's submitted no later than one week prior to the hearing that's provided to Ms.

00:46:16 Speaker 1

Collins, just because it's submitted doesn't mean it's submitted into the record.

00:46:21 Speaker 2

No, no, I do understand.

00:46:23 Speaker 1

That like a regular court of law.

00:46:24 Speaker 1

So I do understand that part.

00:46:26 Speaker 1

OK, so just because it's submitted doesn't mean it's actually part of the record.

00:46:30 Speaker 1

All right, so we've got the three main issues that assistive technology, the orthopedic support and the IPE.

00:46:38 Speaker 1

First there was a request to change it to include additional services which were denied.

00:46:44 Speaker 1

And then you're saying that TWC has failed to abide by the November 4th, 2025 IPE?

00:46:50 Speaker 2

That's correct.

00:46:51 Speaker 1

OK, so I think those are the four issues that I can formulate.

00:46:56 Speaker 1

And how this works, Mr.

00:46:58 Speaker 1

Short, is I will issue a pre-hearing order with those four issues.

00:47:02 Speaker 1

If you disagree with the wording, either you or TWC can come back and ask for a clarification.

00:47:08 Speaker 1

Not that you just object, but if you want it worded differently, then tell me exactly how you want it worded.

00:47:19 Speaker 1

So you have been in the program since January 2025.

00:47:25 Speaker 1

I do not see that there is an immediate urgent need for the assistive technology.

00:47:31 Speaker 1

You have made it more than a year now and we will have an expeditious hearing on this and I will issue a prompt ruling.

00:47:39 Speaker 1

So I will deny the motion for expedited consideration of the assistive technology and at this point I will deny the motions

00:47:48 Speaker 1

For subpoenas, I'd like for you to talk to Mr.

00:47:51 Speaker 1

Marler after today's pre hearing conference.

00:47:55 Speaker 1

If there's someone at TWC that you want to testify as your witness.

00:48:00 Speaker 1

TWC, I've never had to issue a subpoena for TWC.

00:48:04 Speaker 1

If it's an employee, they have always allowed that employee to appear, work with Mr.

00:48:09 Speaker 1

Marler.

00:48:10 Speaker 1

If, however, Mr.

00:48:12 Speaker 1

Marler, you identify a TWC employee that you want to testify on your behalf and and he says they're not available, then you might want to request a status conference and we will consider a subpoena at that point.

00:48:24 Speaker 1

So do you understand, Mr.

00:48:25 Speaker 1

Short, do you have any questions regarding my rulings?

00:48:29 Speaker 2

No, you're going to issue a formal, I guess, judgment basically on those two motions, denying both of them.

00:48:35 Speaker 2

That's correct.

00:48:36 Speaker 1

Yeah.

00:48:36 Speaker 1

Yes.

00:48:37 Speaker 1

And I will explain what I just put on the record so that you have that for the record.

00:48:41 Speaker 1

I I'd like to have a very clean record.

00:48:44 Speaker 1

And so yes, there will be orders that follow.

00:48:48 Speaker 1

All right.

00:48:48 Speaker 1

Is there anything else regarding the issues?

00:48:52 Speaker 2

I thought at some point I was supposed to be able to give like an opening statement, but I haven't been prompted to do that here, so I'm confused about that.

00:49:02 Speaker 1

You're not confused.

00:49:03 Speaker 1

I will let you make the opening statement.

00:49:05 Speaker 1

We've gone out a little out of order, but I do want to hear your opening statement.

00:49:08 Speaker 1

I know you sent something in writing to Miss Collins this morning, and I do want to have you read that into the record later.

00:49:15 Speaker 1

But let's go ahead before we do that.

00:49:18 Speaker 1

Talk about dates for the your honor.

00:49:20 Speaker 3

I'm so sorry.

00:49:21 Speaker 3

Can can I interrupt here?

00:49:22 Speaker 3

I I I may be able to save us some time and and and trouble everyone.

00:49:30 Speaker 3

The the issues that we're talking about are a denial of assistive technology, a denial of orthopedic service, a denial of an IPE that or that you want and no maintenance.

00:49:48 Speaker 3

since the newest IPE in November.

00:49:52 Speaker 3

And so as I stated already, and I have the authority to talk about this on the VR side and to issue directives to staff if necessary.

00:50:07 Speaker 3

With regard to the assistive technology, nothing has been denied.

00:50:11 Speaker 3

Right now, when I look at the system, it is still out there and available.

00:50:17 Speaker 3

But we do.

00:50:17 Speaker 3

We always have to determine whether or not it is an is appropriate.

00:50:23 Speaker 3

There's not it.

00:50:23 Speaker 3

That doesn't mean, hey, it's it's not appropriate until we say it's appropriate.

00:50:28 Speaker 3

It we don't know.

00:50:29 Speaker 3

OK.

00:50:30 Speaker 3

And there may be more information that I'm able to garner from your counselor and anybody else who's been involved in this.

00:50:37 Speaker 3

And so the agency as a representative of the agency is very willing to try to work that out.

00:50:43 Speaker 3

That's a, for me, that's a simple thing for us to work out.

00:50:47 Speaker 3

With regard to your, the orthopedics, you, the doctor that you went and saw ordered an MRI.

00:50:56 Speaker 3

However, in the paperwork that the doctor submitted, it said X-ray.

00:51:01 Speaker 3

They made a mistake.

00:51:03 Speaker 3

we're it's currently in motion we're trying to get that corrected we're trying to get the doctor to send us the order for the MRI soon as we have the order for the MRI boom

you're in we're going to do that so that's not been denied you as far as I'm concerned as far as I understand the situation today

00:51:24 Speaker 3

All they need is to coordinate that with the doctor.

00:51:27 Speaker 3

The doctor says, oh, sorry, we made a mistake and send the appropriate order for an MRI.

00:51:34 Speaker 3

So that hasn't been denied.

00:51:36 Speaker 3

An IPE, you are always the chief collaborator with the counselor on what your IPE goal is going to be and what services you need.

00:51:50 Speaker 3

I don't know of any denial of a service for you.

00:51:53 Speaker 3

If that has happened, I would really be interested in taking a look at that so that I can see if I can work on your behalf because that's part of my job and talk to your counselor and talk to their supervisor.

00:52:07 Speaker 3

So that's not off the table either.

00:52:09 Speaker 3

If it if it is for some reason, something we're just not able to do, then I can think of it.

00:52:15 Speaker 3

I can take think of several reasons why it might.

00:52:18 Speaker 3

be something we're not able to do, availability of the program, accreditation of the program, something like that.

00:52:29 Speaker 3

But that's challenging for me right here to think that somebody would tell you, no, you can't do that program.

00:52:37 Speaker 3

That being said, you have done the program that's on the IPE for the last two years, it looks like, or last year, year and a half.

00:52:45 Speaker 3

And the maintenance, well, we can talk about the maintenance.

00:52:48 Speaker 3

You've recently received maintenance, so you are receiving the maintenance since this past November.

00:52:57 Speaker 2

No, it didn't start until March.

00:53:01 Speaker 2

It was on my IP since November.

00:53:04 Speaker 3

But I didn't start receiving.

00:53:05 Speaker 3

Again, these are things that you were...

00:53:10 Speaker 3

Because it's a standard thing that we do and and your honor, if I'm out of line, you know, please tell me, but I'm just trying to help the situation, make it make it easier for the customer, the appellant.

00:53:23 Speaker 3

These are things that through me, you can come and talk to me and I can try to work these out on your behalf.

00:53:31 Speaker 3

These are things that if you feel like that's just not appropriate or you're not getting what you need, you can go to the CAP program, the Client Assistance Program.

00:53:39 Speaker 3

which has been a standard operating procedure.

00:53:42 Speaker 3

That information has been provided to you.

00:53:44 Speaker 3

It's provided to everyone.

00:53:47 Speaker 3

And you can talk to them about taking a case and or just getting some guidance from them on this.

00:53:53 Speaker 3

So there's there's a couple of different ways that we can very easily resolve this.

00:53:59 Speaker 3

If that's not appealing to you, then we do the appeal.

00:54:02 Speaker 2

I'm more than happy to work with you, sir, on this, but some of the things I think you're aware of, the CAP program's been defunded.

00:54:09 Speaker 2

OK, they don't have the resources to take.

00:54:11 Speaker 3

We use that.

00:54:12 Speaker 3

We use the CAP program all the time.

00:54:15 Speaker 2

Really?

00:54:15 Speaker 2

Well, I've got written notification where they're defunded and also I've got notification of the bills that show they're not getting any funding.

00:54:24 Speaker 3

They are still in business and they are still doing their job.

00:54:28 Speaker 2

Well, okay, well then that's news to me and I would be very interested to bring that up and bring that to their attention because the documents that I have from them basically tell me that they do not have the resources to take on this matter.

00:54:39 Speaker 2

So I've already attempted to reach out to them for the record and I've already been turned down due to lack of resources, not due to the the merit to the case or the matter, but solely because of lack of resources.

00:54:50 Speaker 2

OK, so but if you think that they have plenty of resources.

00:54:54 Speaker 3

I know because they have to deal with me whenever they have a cap case.

00:54:59 Speaker 2

Well, you said I'm very, I'm very happy to basically, I guess correct the record on on your behalf.

00:55:04 Speaker 2

It'd be very helpful for me again that I actually have a real

00:55:08 Speaker 2

Copy of my case file so that way I can.

00:55:11 Speaker 2

I can definitely correct.

00:55:13 Speaker 3

I've made a direction for you to get that.

00:55:18 Speaker 3

That's already in motion.

00:55:19 Speaker 1

All right.

00:55:21 Speaker 1

So I I appreciate if the parties can again resolve any of the issues.

00:55:26 Speaker 1

I I will not be disappointed if you can reach an agreement on anything that just means less.

00:55:30 Speaker 1

I mean, it's always better if two parties can reach an agreement and resolve things among themselves rather than have a.

00:55:36 Speaker 1

a third party make that decision.

00:55:39 Speaker 1

So, Mr.

00:55:40 Speaker 1

Shaw, I just want to make sure you understand.

00:55:42 Speaker 1

I don't have any authority to give any compensation.

00:55:45 Speaker 1

I know that you had a number of matters that you have submitted regarding

00:55:54 Speaker 1

monetary reimbursement.

00:55:56 Speaker 1

I I don't have any authority to award any compensation.

00:56:00 Speaker 1

I just want to make sure.

00:56:01 Speaker 2

I am aware of that part, you know, but again, that was important to also frame the context of some of this in that manner.

00:56:07 Speaker 2

So no, if I if I I realize that I have to seek other jurisdiction for that.

00:56:12 Speaker 2

So and that that does not fall within your district jurisdiction.

00:56:15 Speaker 1

Alright, I just want to make sure you you understand that so that we.

00:56:20 Speaker 1

are on the same page.

00:56:21 Speaker 1

All right, so let's talk about the hearing date.

00:56:24 Speaker 1

So I have time the week of May.

00:56:32 Speaker 1

I'm available on May 12th, 13th, and 14th, and that is within our 60 days.

00:56:43 Speaker 1

Are any of those, are you available?

00:56:46 Speaker 1

And this question to both of you are

00:56:48 Speaker 1

Both of you available on all those days, or do you have any conflicts on the 12th, 13th, or 14th of May?

00:56:56 Speaker 2

I'm available.

00:56:57 Speaker 3

Go ahead.

00:56:58 Speaker 2

I'm sorry, I was just going to say I'm available for any of those.

00:57:01 Speaker 3

I'm available for any of those mornings.

00:57:03 Speaker 3

All.

00:57:05 Speaker 1

Right, Mr.

00:57:06 Speaker 1

Short, you said you are available?

00:57:07 Speaker 1

Yes.

00:57:09 Speaker 1

All right, Mr.

00:57:10 Speaker 1

Marler, I don't know that this will be done in four hours, so we can start in the morning, but I will let you know that I don't know how much evidence Mr.

00:57:20 Speaker 1

Short will be presenting.

00:57:21 Speaker 1

He doesn't have his case file yet.

00:57:25 Speaker 1

So I don't know.

00:57:26 Speaker 3

I have hope that Mr.

00:57:27 Speaker 3

Short and I can have a conversation and try to resolve some of this.

00:57:32 Speaker 1

Right.

00:57:32 Speaker 3

Or all of it.

00:57:34 Speaker 1

So let's set it for May 12th 30 in the morning.

00:57:44 Speaker 1

And we will proceed through if we need to take a short break.

00:57:48 Speaker 1

If it looks like it's going to be lengthy, we can take a short 30 minute break for lunch.

00:57:54 Speaker 1

And typically these are held virtually.

00:57:56 Speaker 1

Is that acceptable, Mr.

00:57:57 Speaker 1

Short.

00:57:58 Speaker 2

Yes, that's fine.

00:58:00 Speaker 1

So we'll handle it virtually.

00:58:01 Speaker 1

And typically, Mr.

00:58:02 Speaker 1

Short, what we do is if you have witnesses, we keep all of the witnesses off camera.

00:58:08 Speaker 1

They don't have access.

00:58:10 Speaker 1

And as each person testifies and they come in that way, no one is listening to each other's testimony.

00:58:15 Speaker 1

And I get true and accurate testimony from everybody and they have no idea what anyone else testified to.

00:58:21 Speaker 1

And then again, you'll be responsible for.

00:58:25 Speaker 1

making sure that your witnesses will give you the link connection.

00:58:29 Speaker 1

Ms.

00:58:29 Speaker 1

Collins will provide that to you.

00:58:32 Speaker 1

If you talk to Mr.

00:58:33 Speaker 1

Marler and now that we've narrowed the issues, if you feel like you need a subpoena again from someone at TWC and you can't work it out with Mr.

00:58:42 Speaker 1

Marler, let me know.

00:58:43 Speaker 1

I will issue a subpoena.

00:58:45 Speaker 1

Is there anyone else other than TWC employees at this point and yourself that you would anticipate calling as a witness?

00:58:55 Speaker 2

Other than the ones that I already had on my request for subpoena, no, not at this time.

00:59:02 Speaker 1

And the list that you submitted, were they all current TWC employees?

00:59:08 Speaker 2

Yes.

00:59:09 Speaker 1

OK.

00:59:09 Speaker 1

I wanted to make sure that there wasn't anyone that had left the agency.

00:59:12 Speaker 1

All right, then, then again, work with Mr.

00:59:14 Speaker 1

Marler.

00:59:15 Speaker 1

I don't think I've never had a TWC employee refuse to testify or tell me they're not available, but if that's the case, Mr.

00:59:21 Speaker 1

Short, I would sign a subpoena.

00:59:23 Speaker 1

Mandating if they appear.

00:59:25 Speaker 1

All right.

00:59:26 Speaker 1

So we the hearing will be set for the 12th.

00:59:29 Speaker 1

Typically the deadline for submission of exhibits is the seven days beforehand.

00:59:36 Speaker 1

So that would be five o'clock on May 5th.

00:59:46 Speaker 1

And this one is a little unusual.

00:59:48 Speaker 1

And again,

00:59:50 Speaker 1

Mr.

00:59:50 Speaker 1

Short does not have his case file, so I typically don't do that.

00:59:54 Speaker 1

But for this particular case, I will ask that no exhibits be filed prior to April 21st because I want Mr.

01:00:06 Speaker 1

Short to have all of his records and I don't want to have him have to supplement.

01:00:10 Speaker 1

It's better that he has everything he needs so he can organize his exhibits and submit them at one time.

01:00:19 Speaker 1

Pre-hearing order, Mr.

01:00:20 Speaker 1

Short will set forth how the exhibits are to be submitted.

01:00:24 Speaker 1

Typically the appellant letters all of their exhibits.

01:00:28 Speaker 1

So your exhibits will be ABCDEF and then like AA, BB, depending on how many exhibits.

01:00:35 Speaker 1

And then the agency always is asked to number theirs.

01:00:39 Speaker 1

That way we have a very clear record and we don't get exhibits mixed up, which is always a good thing.

01:00:47 Speaker 1

I think that's let me see if there's anything else with regard to the exhibit.

01:00:52 Speaker 1

I do ask for a witness list and if you can give me a short one or two sentence what that person's testimony will be just so I get an idea.

01:01:03 Speaker 1

If at any point the two of you reach an agreement on any of the issues, you can file a written notice to me and send that to Ms.

01:01:13 Speaker 1

Collins and let her know that one or more of the issues has been resolved.

01:01:17 Speaker 1

So I need to read into the record the official notice and then I will take Mr.

01:01:25 Speaker 1

Short's

01:01:27 Speaker 1

Opening statement.

01:01:29 Speaker 1

I think we've talked through everything, but I want to make sure I hear his opening statement.

01:01:32 Speaker 1

Mr.

01:01:32 Speaker 1

Marler, if there's anything else that you want to say, we'll go through confidentiality and then we'll close the hearing.

01:01:38 Speaker 1

All right, so let me read the mandated official notice.

01:01:42 Speaker 1

regarding the laws.

01:01:43 Speaker 1

So there are certain laws, rules, regulations and documents that I will accept into evidence without them being physically presented or read into the record.

01:01:52 Speaker 1

If you have a document or law that you think applies to this case in which we are all aware, you can bring it to my attention for consideration, but you don't.

01:02:01 Speaker 1

You do not need to give me copies of the CFRs or or the VR rules.

01:02:06 Speaker 1

I am already familiar with those and I have those already in a notebook.

01:02:10 Speaker 1

So agency rules that 40 Texas

01:02:12 Speaker 1

Administrative Code Chapter 850 set forth the laws rules regulations and policies which are officially noted and which include the following the Rehabilitation Act of 1973 is amended 29 USCA uh

01:02:28 Speaker 1

Section 701, et cetera, the Department of Education Regulations, the CFRs, the TWC Combined State Plan for Vocational Rehabilitation Services, the TWC Vocational Rehabilitation Services Manual for Appeals and Hearings, Chapter A-204, the Texas Labor Code.

01:02:49 Speaker 1

Section 352.001, et cetera.

01:02:53 Speaker 1

And the TWC rules for informal and formal appeals by applicants, clients and decisions by rehabilitation counselor or agency official.

01:03:03 Speaker 1

All right, so we will conclude with just a few more things.

01:03:07 Speaker 1

But Mr.

01:03:08 Speaker 1

Short, I do want to take your opening statement and there's I I know this is a little out of order, but I wanted to kind of corral to figure out where we were and then

01:03:18 Speaker 1

Mr.

01:03:18 Speaker 1

Marler, do you have anything else you want to add?

01:03:21 Speaker 1

Mr.

01:03:21 Speaker 1

Short, do you want to go ahead and start reading your opening statement?

01:03:25 Speaker 2

Do I need to wait for Mr.

01:03:26 Speaker 2

Marler to add his things yet or?

01:03:31 Speaker 2

I'm sorry, I got confused there with your long narrative.

01:03:36 Speaker 1

I know, we have all these notices.

01:03:38 Speaker 1

We have to make sure.

01:03:39 Speaker 1

Again, everything is in writing, you'll get things in writing, and then we go over it many, many times, but I wanna make sure everyone understands.

01:03:45 Speaker 1

So if you would put into the record your opening statement, and then I will allow Mr.

01:03:51 Speaker 1

Marler later after you finished if he wants any final comments.

01:03:58 Speaker 2

Good morning, Honorable Judge Mann, Director Marler.

01:04:02 Speaker 2

And Ms.

01:04:02 Speaker 2

Collins, I said, before I begin, I want to formally acknowledge the receipt of the court orders transmitted last night.

01:04:08 Speaker 2

I completely respect the court's ruling to strike my preliminary exhibit filings.

01:04:13 Speaker 2

I understand that I understand our administrative procedure is improper for the court to review evidentiary materials prior to the establishment of the formal deadlines.

01:04:21 Speaker 2

And I withhold my consolidated record until the deadline has been established by the court today.

01:04:28 Speaker 2

I want to frame exactly why we are here today.

01:04:31 Speaker 2

This docket is ultimately about a broken promise and a broken system.

01:04:35 Speaker 2

I came to Texas Workforce Commission Vocational Rehabilitation Services with a clear vocational goal in mind.

01:04:43 Speaker 2

I was directed to and encouraged to attend Texas State University by the agency with reasonable expectations that the state-funded vendor would comply with basic civil rights.

01:04:53 Speaker 2

I held at my end of the plan, the vendor did not.

01:04:57 Speaker 2

Just this past December, when I reported my course contact was structurally unintelligible, I was immediately punished with a zero grade and told I would have to retake the entire course just to stay in the engineering program.

01:05:08 Speaker 2

When I sought remedy for this retaliation, the university sent me unarmed into a preconstructed administrative labyrinth.

01:05:17 Speaker 2

I was sent into a closed loop system where the Dean told me to go to the Office of Equal Opportunity.

01:05:23 Speaker 2

only for the OEO to abruptly disavow jurisdiction and claim systemic issues were outside their scope.

01:05:29 Speaker 2

When I requested federally mandated interim ports to protect my academic standing during the investigation, ABP Alexandra Hatcher formally denied those ports, explicitly saying they were outside of her scope.

01:05:43 Speaker 2

She then immediately used the denial to try to pressure me into an informal resolution.

01:05:48 Speaker 2

Effectively potentially extort a waiver of my civil rights just in exchange for basic administrative relief.

01:05:54 Speaker 2

As it like Moses, I've been left to wonder a bureaucracy designed for attrition.

01:05:59 Speaker 2

But I spent my time mapping every single dead end and now I have the map.

01:06:04 Speaker 2

The internal grievance process is dead, structurally engineered for non-feasance.

01:06:08 Speaker 2

It fragments compliance to run out the clock so that students gives up.

01:06:12 Speaker 2

When the university keeps the state, while the university keeps the state's money,

01:06:17 Speaker 2

Texas State's Electronic Information System Resources Program, despite all the rhetoric on their web pages, is nothing but a Patokum Village.

01:06:27 Speaker 2

It's hot.

01:06:30 Speaker 2

Because the local VR office chose to ignore notices to continue funding the hostile environment, this is no longer just a student grievance.

01:06:40 Speaker 2

This institutional non-feasance has a quantified price tag.

01:06:45 Speaker 2

It has cost a minimum of $60,000 in economic injury just due to the fourth six-month delay in my entering the workforce.

01:06:52 Speaker 2

Furthermore, the exact failure to monitor the vendor is now an active subject of legislature inquiry case regarding fiscal waste.

01:07:02 Speaker 2

The damage is compounding daily.

01:07:04 Speaker 2

Therefore, in accordance with your case management order regarding the discussion of pending motions, my objective today was the immediately adjudication of these two filings.

01:07:13 Speaker 2

However, you've already denied them.

01:07:16 Speaker 2

So in that case, that concludes my opening statement.

01:07:21 Speaker 1

Thank you.

01:07:21 Speaker 1

Thank you, Mr.

01:07:23 Speaker 1

Short.

01:07:23 Speaker 1

Mr.

01:07:24 Speaker 1

Marlar, anything you would like to tell me?

01:07:32 Speaker 3

The most important thing here is, Mr.

01:07:37 Speaker 3

Short, that you understand that we want to help you.

01:07:40 Speaker 3

That's what this agency is about.

01:07:43 Speaker 3

With regard to your petition, we don't agree that there's been constructive denial of appellate rights.

01:07:50 Speaker 3

There's been no 17 month long failure to provide assistive technology.

01:07:56 Speaker 3

We strongly reject any allegation of fraud or falsification of ledgers or anything else for that matter.

01:08:04 Speaker 3

The state does not agree with the assertion that maintenance has not been paid as agreed and according to agency policy.

01:08:13 Speaker 3

A state disagrees that there's been any material breach of contract.

01:08:18 Speaker 3

The state disagrees with the assertion that a withholding of maintenance resulted in medical harm.

01:08:24 Speaker 3

The state finds the assertion of due process obstruction to be invalid.

01:08:31 Speaker 3

You are eligible for services.

01:08:34 Speaker 3

The issue is ensuring the services are aligned with verified medical eligibility and delivered in accordance with agency procedures.

01:08:42 Speaker 3

Upon receipt of updated clinical information, the agency determined that the appellant does not meet the criteria for blind and visually impaired services.

01:08:52 Speaker 3

However, he does remain eligible for services based on diagnosis of diabetes.

01:08:58 Speaker 3

The agency does not agree that services were deliberately withheld, nor that this matter involves misconduct.

01:09:05 Speaker 3

Rather, this case involves service alignment, timeliness, and administrative process.

01:09:11 Speaker 3

The evidence shows that services were either not authorized, required about reevaluation, following updated medical information, or are currently in process.

01:09:22 Speaker 3

So we are prepared to proceed appropriately and in compliance with policy because we are here to support you in reaching and achieving your vocational goal.

01:09:36 Speaker 1

Thank you.

01:09:38 Speaker 1

All right, let's talk about confidentiality before we conclude today.

01:09:43 Speaker 1

So all parties are reminded that all client information disclosed as a result of this hearing process, it's confidential.

01:09:50 Speaker 1

And to ensure that I, as the hearing officer, maintains impartiality in this case, there will be no verbal or written communication by either party directly to me without the other party having access to the information.

01:10:04 Speaker 1

For that reason, all written communication

01:10:07 Speaker 1

that's sent to me must be through the hearings coordinator Melissa Collins you have her e-mail and her address already and when you send correspondence to Miss Collins always make sure you reference uh the uh docket number if you need any hearings uh prior to the evidentiary hearing that we've set for May 12th please reach out to Miss Collins we can uh

01:10:33 Speaker 1

conduct a status conference Mr.

01:10:35 Speaker 1

short if you need to file a motion for some reason please file the motion I ask that you confer with Mr.

01:10:41 Speaker 1

Marler to get his position before you actually file it with Miss Collins I want the parties to discuss it um if there's some possible resolution if there's no resolution we'll have a hearing

01:10:54 Speaker 1

As I stated earlier, a pre-hearing order will be issued.

01:10:57 Speaker 1

You'll probably get it tomorrow.

01:10:59 Speaker 1

It will set forth the four issues I think that we've identified today, and it will give a date by which you may ask for a clarification or restatement of the issues.

01:11:11 Speaker 1

So with that being said, I think we're near the end of the

01:11:15 Speaker 1

Pre hearing conference.

01:11:16 Speaker 1

Mr.

01:11:16 Speaker 1

Short, I know we may have gone a little out of order, but I wanted to get everything taken care of.

01:11:21 Speaker 1

So what questions, concerns do you have at this point?

01:11:26 Speaker 2

Nothing at this point.

01:11:27 Speaker 2

I mean, I don't have anything else to done.

01:11:31 Speaker 1

Right.

01:11:31 Speaker 1

Mr.

01:11:31 Speaker 1

Marler, anything else?

01:11:33 Speaker 1

Any questions, concerns?

01:11:34 Speaker 3

Nothing further, your honor.

01:11:36 Speaker 1

All right.

01:11:38 Speaker 1

It is now 1113 in the morning on March 31st.

01:11:44 Speaker 1

I will conclude today's hearing.

01:11:46 Speaker 1

You can expect my pre hearing order to be sent to you tomorrow.

01:11:51 Speaker 1

I hope everybody has a great week.

01:11:53 Speaker 3

While we're on while we're still on the call, Mr.

01:11:56 Speaker 3

Short, would you be available to talk tomorrow morning or Thursday morning?

01:12:01 Speaker 2

Yes, I'll be available.

01:12:02 Speaker 3

OK, I'll send you an invite for tomorrow morning.

01:12:05 Speaker 2

All right, take care.

# Transcript

00:00:05 Speaker 1
OK, recording has begun.
00:00:06 Speaker 1
All right, thank you.
00:00:08 Speaker 1
Good morning.
00:00:10 Speaker 1
This is a status conference and TWC VR case number 2026-27 Mark L Short versus the Texas Workforce Commission.
00:00:23 Speaker 1
And the time is now 10 08 in the morning on April 24th.
00:00:29 Speaker 1
My name is June Mann and I am the impartial hearing officer appointed by the Texas Workforce Commission to hear this matter.
00:00:37 Speaker 1
I requested that we have a status conference today because Mr.
00:00:41 Speaker 1
Short has filed a number of motions.
00:00:47 Speaker 1
Re-filing requirements were not met.
00:00:49 Speaker 1
There was a number of motions, so I wanted to address them because our administrative hearing is scheduled on May 12th, and I know your exhibits are due on May 5th.
00:01:00 Speaker 1
I issued a number of orders yesterday on Mr.
00:01:04 Speaker 1
Short's motions, and Ms.
00:01:06 Speaker 1
Collins will be forwarding copies of those orders to you shortly.
00:01:10 Speaker 1
I'm very concerned about some of the assertions made by Mr.
00:01:15 Speaker 1
Short.
00:01:16 Speaker 1
in his pleadings that he still does not have the case file.
00:01:20 Speaker 1

Mr.
00:01:21 Speaker 1
Short, I will go first to you.
00:01:22 Speaker 1
Will you please provide me with an update on where where you are on getting your case file?
00:01:30 Speaker 2
And there's been no progress made since around April the 1st or 2nd, I believe.
00:01:36 Speaker 2
And that's when I received a series of of data dumps that were not OCR readable or or.
00:01:46 Speaker 2
so basically it was just dead PDF files.
00:01:50 Speaker 2
I think that we even discussed this in one of the meetings where they agreed to provide OCR readable content.
00:01:58 Speaker 2
And I was very distressed about not having access to it.
00:02:04 Speaker 2
That severely limits my ability to read or process what, you know, what's been provided.
00:02:12 Speaker 2
And
00:02:13 Speaker 2
I think that was pretty clear on the record.
00:02:16 Speaker 2
Subsequently, I supplied an extensive omnibus e-mail requesting discovery, specifically addressing this as well, and that's gone unanswered.
00:02:26 Speaker 2
And so that's pretty much where we are.
00:02:28 Speaker 2
All.
00:02:29 Speaker 1
Right.
00:02:29 Speaker 1
Tell me what you have received so far.
00:02:32 Speaker 1
You have received some type of documentation.
00:02:35 Speaker 2
Yes, that's correct.
00:02:36 Speaker 1
Okay.

00:02:37 Speaker 1
Would you give for specifics so that I understand exactly what they produced?
00:02:43 Speaker 2
It looks like they produced like extracts from the rehab client or rehab works client application that were basically raw exports of various case notes.
00:02:59 Speaker 2
And from that, again, it was just like pictures basically of the data.
00:03:08 Speaker 2
There's nothing that I can search, there's nothing that I can organize.
00:03:11 Speaker 2
Even for me to read, it's very difficult, so I'm like having to use other tools to try to interpret it for me, and it makes a lot of errors and it doesn't get everything right.
00:03:21 Speaker 1
Alright, is it in a PDF format or a different format?
00:03:24 Speaker 2
Yes, it's a PDF, but inside of PDFs, basically you have two layers.
00:03:31 Speaker 2
of data.
00:03:31 Speaker 2
Basically, you have like the raw digital data, which is typically what when we create a PDF typically we use.
00:03:39 Speaker 2
But then you have basically like a scan copy image of the content, which that's what they produced.
00:03:48 Speaker 2
So basically, it's just like a TIFF file that's embedded inside of a PDF.
00:03:53 Speaker 2
So none of it's searchable, none of it's usable by any type of organizational tools.
00:04:01 Speaker 2
So even for me to go in and try to use other assistive technology, trying to make sense of it, it's very difficult.
00:04:08 Speaker 1
How many pages were produced?
00:04:11 Speaker 2
I wish I could tell you.
00:04:12 Speaker 2
I mean, it was broken up in several different files.
00:04:15 Speaker 2
And if I would have known ahead of time, I could have provided you a more analytic version.

00:04:19 Speaker 2
But I've got like 15, 20 different PDF files, I think.
00:04:26 Speaker 2
Let me double check here and see.
00:04:53 Speaker 2
Yeah, let me see.
00:04:54 Speaker 2
Here's like about, I would have to say about 20.
00:05:00 Speaker 2
And none of them are OCR readable.
00:05:04 Speaker 2
And.
00:05:04 Speaker 1
All right.
00:05:08 Speaker 1
And I didn't mean to catch you off guard.
00:05:10 Speaker 1
I just wanted to get an approximate amount of pages so that I understand what we're dealing with.
00:05:14 Speaker 1
So let me ask Mr.
00:05:15 Speaker 1
Marler, can you give me an update on behalf of TWC on where we are?
00:05:22 Speaker 1
production of the case file and any other documents.
00:05:25 Speaker 3
Absolutely.
00:05:26 Speaker 3
So first, we were asked for the entire case file.
00:05:33 Speaker 3
The entire case file is more than 500 documents.
00:05:37 Speaker 3
It may even be more than 600 documents.
00:05:41 Speaker 3
I was not the person counting.
00:05:45 Speaker 3
These are individual documents.
00:05:49 Speaker 3
We began
00:05:51 Speaker 3

The only way that we have to send them other than paper is via e-mail.
00:06:01 Speaker 3
So we began the process of creating PDF files of case notes, which is the standard operating procedure for all customers who ask for parts of their case file or all of their Rehab Works case file.
00:06:20 Speaker 3
And so we began creating that and piecemealed it to Mr.
00:06:30 Speaker 3
Short so he would have something and started sending that.
00:06:35 Speaker 3
And I don't know how many were sent to him.
00:06:40 Speaker 3
But during that long process of trying to send those and wait for them to load and upload and send,
00:06:51 Speaker 3
Mr.
00:06:51 Speaker 3
Short notified, I believe it was Ms.
00:06:56 Speaker 3
Menendez or Mendoza, that this was not acceptable and stated what he preferred.
00:07:07 Speaker 3
And we're not the people who create these documents.
00:07:12 Speaker 3
So we started trying to find out if it was possible to create
00:07:17 Speaker 3
a searchable file.
00:07:19 Speaker 3
We don't generally, from what I've been advised, we don't send out searchable documents.
00:07:25 Speaker 3
We just say, here you go, here's your case notes and here's your file.
00:07:32 Speaker 3
So over a course of days, because it happened just before a weekend, we were finally able to talk to somebody from our accommodations department who said,
00:07:47 Speaker 3
who wanted to know more details, wanted to know more details about what it was that Mr.
00:07:54 Speaker 3
Short needs.
00:07:56 Speaker 3

And to the best of our ability, not being subject matter experts on exporting documents in any other format than what we have, it took us a little while to try to converse back and forth and figure out what it was.
00:08:13 Speaker 3
And then they finally said, oh, yes,
00:08:18 Speaker 3
Let me take a look and see if this is something that we can do.
00:08:21 Speaker 3
It's not something they regularly do, apparently.
00:08:27 Speaker 3
Ms.
00:08:27 Speaker 3
Mendoza and I were then notified that, yes, it is something that they can do.
00:08:34 Speaker 3
So the process has begun with trying to get the people who have those files at the caseload level
00:08:45 Speaker 3
to get those files, all of them together, sent over to the accommodations department, who are then going to convert that into Mr.
00:08:57 Speaker 3
Short's preferred format.
00:09:00 Speaker 3
Now, I need to say that we immediately acted.
00:09:04 Speaker 3
We immediately acted to try to provide Mr.
00:09:09 Speaker 3
Short exactly what it was we understood he needed.
00:09:13 Speaker 3
The reason that it is still not, he has not received everything in his preferred format is because we don't do this.
00:09:20 Speaker 3
And so it's had to be figured out.
00:09:23 Speaker 3
And it's a long process to, for someone like, who's just a lay person with regard to formatting of software and whatever's involved, it's taken those people quite a bit of time to
00:09:43 Speaker 3
get all of that together and send to the accommodations people so they can then do whatever it is they do to put it into the format that Mr.
00:09:52 Speaker 3

Short wants it.
00:09:53 Speaker 3
So it's kind of a long process.
00:09:55 Speaker 3
Ordinarily, we send it out as we did.
00:09:59 Speaker 3
We would have continued sending it, but Mr.
00:10:01 Speaker 3
Short let us know that was not his preferred format.
00:10:06 Speaker 3
And so we stopped sending him what he was not
00:10:10 Speaker 3
able to use or enjoy or search the way he wanted to.
00:10:19 Speaker 3
So it's a process.
00:10:22 Speaker 1
So how much longer will it take?
00:10:25 Speaker 3
I have no idea.
00:10:26 Speaker 3
I'd have talked to the accommodations.
00:10:28 Speaker 3
If I would have known that this is what you were going to want to talk about today, then I would have gotten greater details.
00:10:36 Speaker 1
Ms.
00:10:36 Speaker 1
Collins sent out an e-mail saying all pending matters.
00:10:39 Speaker 1
I consider
00:10:41 Speaker 1
Mr.
00:10:41 Speaker 1
Short's motions pending matters, including the case file, any pre-hearing issues to be discussed today, we may need to have a subsequent hearing.
00:10:52 Speaker 1
I want to know when Mr.
00:10:55 Speaker 1
Short will receive that documentation.
00:10:58 Speaker 3

And I can't tell you right now, but I'll find out during the course of this meeting, hopefully, depending on how long we're here.
00:11:05 Speaker 1
In the past, when we've had a
00:11:10 Speaker 1
a appellant who's had visual issues, the entire file's been printed and sent to them.
00:11:17 Speaker 1
So, Mr.
00:11:18 Speaker 1
Short, is that something that we can accommodate you in the meantime?
00:11:22 Speaker 2
No, I needed electronic.
00:11:25 Speaker 2
You know, what I'm asking for is not just my preference.
00:11:28 Speaker 2
It's actually required by law.
00:11:30 Speaker 2
So it isn't something that I'm just like saying that I need this just because of
00:11:37 Speaker 2
I'd like this better.
00:11:38 Speaker 2
No, it's just even when I get ready to file a document in federal court, I have to actually comply with these, restrictions as well.
00:11:47 Speaker 2
Everything that I submit and file has to be OCR readable, you know, for them too.
00:11:52 Speaker 2
So this is not something that I just pulled out of the air at the last minute.
00:11:58 Speaker 1
That wasn't what I asked.
00:12:01 Speaker 1
Okay.
00:12:01 Speaker 1
I understand what the law is.
00:12:02 Speaker 1
I'm asking you.
00:12:04 Speaker 1
In the meantime, before they're able to produce the OCR file, do you need a printed copy so that you can work on it on the interim?
00:12:13 Speaker 1
All right.

00:12:14 Speaker 2
No, I don't work on print either.
00:12:16 Speaker 2
You know, I would end up having to scan it and, you know, try to make sense of it as well, which is give me the same version that I already have that they provided, which is nothing but a scanned image of the text file.
00:12:29 Speaker 1
All right.
00:12:32 Speaker 1
And do you need that information, Mr.
00:12:34 Speaker 1
Short, to proceed with the administrative hearing.
00:12:38 Speaker 2
Today.
00:12:40 Speaker 1
No, on the 12th.
00:12:41 Speaker 2
Oh, yes, absolutely.
00:12:43 Speaker 2
Absolutely.
00:12:45 Speaker 1
I'm trying to make it very clear for the record where we are on matters.
00:12:48 Speaker 1
I want to make sure that your request is addressed and that you have sufficient time in which to prepare for the administrative hearing.
00:12:59 Speaker 1
All right, so.
00:13:01 Speaker 1
We don't know when the entire file will be provided in a format that you can work with.
00:13:09 Speaker 1
And I know Mr.
00:13:10 Speaker 1
Marler said he can get that information to you.
00:13:13 Speaker 3
I've put in the request right now.
00:13:15 Speaker 1
Okay.
00:13:15 Speaker 1
So that's my first issue is will we be ready to proceed on May 12th?
00:13:23 Speaker 1

And I guess that.
00:13:25 Speaker 1
Questions first going to go to you, Mr.
00:13:27 Speaker 1
Short.
00:13:27 Speaker 1
If they can get you the file next week, does that give you sufficient time?
00:13:31 Speaker 1
You are the appellant, so you are the only person that can extend the deadlines and or make decisions regarding how we proceed.
00:13:43 Speaker 2
OK.
00:13:46 Speaker 1
You understand my dilemma, don't you?
00:13:48 Speaker 2
No, I do.
00:13:48 Speaker 2
And I'm trying to answer.
00:13:51 Speaker 1
I need to make sure that it's a fair and impartial.
00:13:55 Speaker 1
Hearing and I need to make sure that you're able to adequately prepare.
00:13:59 Speaker 1
I need to protect everyone's rights.
00:14:02 Speaker 2
So I think we're going to have to extend the hearing.
00:14:05 Speaker 2
OK, I mean, honestly, because even even if I was to get it today, which I doubt that's going to happen, that only gives me what that gives me less than 20 days to review it.
00:14:18 Speaker 1
Yes.
00:14:19 Speaker 2
OK.
00:14:20 Speaker 2
And see, that would if I had 20 days to review it, I would probably be OK.
00:14:23 Speaker 2
But I don't even think it, you know, like I said, I don't think they're going to have it ready today.
00:14:29 Speaker 2

I'm probably not going to be ready till next week sometime, which is definitely going to eat in to my time to review and prepare.
00:14:36 Speaker 2
So no.
00:14:38 Speaker 1
All right.
00:14:38 Speaker 1
So let's go ahead, Mr.
00:14:41 Speaker 1
Muller.
00:14:42 Speaker 3
I just have a question, and you know, I'm new to this, so forgive me if I'm.
00:14:48 Speaker 3
asking silly questions.
00:14:50 Speaker 3
But we agreed to meet and do informal mediation the day after the pre-hearing, which we did, because we agree.
00:15:04 Speaker 3
VR agrees with the things that need to be provided.
00:15:08 Speaker 3
There's no argument.
00:15:10 Speaker 3
The things that were being argued about was getting an MRI for orthopedic issue, getting some help with Texas State University through DRT, which we completely agree with.
00:15:29 Speaker 3
Getting the laptop and Adobe Pro, that you, these are the things that you said you were the issues.
00:15:36 Speaker 3
Getting you the laptop and Adobe Pro, we agree.
00:15:38 Speaker 3
I agree.
00:15:39 Speaker 3
I'm going to see that happens.
00:15:44 Speaker 3
We asked, you asking for maintenance.
00:15:49 Speaker 3
We agreed that if you can provide us receipts that show that those were things that we should have covered, then we will.
00:15:59 Speaker 3

You asked for a case transfer, but we didn't transfer your case yet because you asked us to abide by a state put provision that really doesn't apply to the situation.
00:16:10 Speaker 3
situation, but we honored it anyway.
00:16:12 Speaker 3
And so your case hasn't been transferred.
00:16:14 Speaker 3
That's the only issue.
00:16:16 Speaker 3
And as far as your BVI diagnosis goes in our system, and as far as we're concerned, I've upheld that.
00:16:25 Speaker 3
I'm in agreement with you that you have a visual impairment that qualifies.
00:16:29 Speaker 3
So there's, we're saying yes to everything that you're wanting.
00:16:35 Speaker 3
It's just that it is taking a little time to get this huge case file to you.
00:16:43 Speaker 3
Other than that, we're I don't understand.
00:16:46 Speaker 3
I'm.
00:16:47 Speaker 2
I mean, yeah, I responded to you in writing basically that after our meeting that, yeah, we made some progress and that verbally you've agreed to a lot of things.
00:16:56 Speaker 2
OK, but so far you've yet to provide any of them.
00:16:59 Speaker 2
OK, and so basically what I said is, yes, so that's.
00:17:02 Speaker 3
What have I not what have I not provided?
00:17:05 Speaker 3
I told you that you're going to get the MRI.
00:17:07 Speaker 3
Now we're just waiting for the doctor.
00:17:09 Speaker 3
We're waiting on the doctor.
00:17:10 Speaker 3
I can't.
00:17:11 Speaker 2
Control that.

00:17:12 Speaker 2
Right, I ask that you confirm this in writing.
00:17:15 Speaker 2
You know, and that's where.
00:17:16 Speaker 2
No, you didn't.
00:17:18 Speaker 2
I never got any type of confirmation that you were going to read any of this in writing.
00:17:21 Speaker 2
Everything has been basically through promises that I can't hold, you know, hold you to.
00:17:29 Speaker 3
So if I write you an e-mail that states what I just said, that is satisfactory.
00:17:35 Speaker 2
Yes.
00:17:36 Speaker 3
I thought in my summary of our informal mediation that that's what I said.
00:17:42 Speaker 2
No, I think in your informal, basically, you pretty much said that, no, you don't, you don't, you know, commit to any of this, but this, that you will do everything you can.
00:17:50 Speaker 3
Well, I can't, I can't, I can't promise that you're going to get like tomorrow.
00:17:56 Speaker 3
but we want to provide you everything that you're asking for.
00:18:00 Speaker 3
I have no qualms with it.
00:18:01 Speaker 3
The only thing that I need, I've asked you for receipts, we haven't gotten any receipts yet, so I can't act on that.
00:18:07 Speaker 2
Right.
00:18:07 Speaker 3
So everything else is in motion.
00:18:10 Speaker 2
Okay.
00:18:11 Speaker 2
I mean, and it sounds like we had a basis for some type of dialogue, you know, I mean, to work this out.
00:18:17 Speaker 2
So I'm happy about that, you know, and then I feel like that
00:18:21 Speaker 2

Yeah, you haven't really pushed back on anything, but as far as actually providing it, though, it's, I mean, y'all have promised me stuff that's on my IPE since 2024 that I've yet to receive.
00:18:33 Speaker 2
So I'm very leery about going off of just, you know, I understand.
00:18:38 Speaker 3
We're sitting here in front of what amounts to a judge.
00:18:42 Speaker 3
Okay.
00:18:43 Speaker 3
And this is being recorded.
00:18:45 Speaker 3
Okay.
00:18:46 Speaker 3
I'm in the position.
00:18:47 Speaker 3
I'm in a position, you're now talking to someone who's in a position to actually demand that things happen for you.
00:18:55 Speaker 3
And so I have, but it still takes time.
00:18:58 Speaker 3
It still takes some time to get these things done.
00:19:01 Speaker 3
But I'm telling you, we're going to do these things.
00:19:04 Speaker 3
So I'm just wondering, what do we even need the case file for if there's no argument?
00:19:09 Speaker 2
Well, I have a right to my case file.
00:19:12 Speaker 3
But yeah, you can have your case file.
00:19:14 Speaker 3
But if we don't have an argument, but we don't have an argument.
00:19:18 Speaker 2
OK, then let's make this happen then, provide me something right and saying yes, you agree to do like the, for example, like my IP hasn't been changed and I have to have something that definitely needs to be addressed, you know, so.
00:19:28 Speaker 3
Right, you wanted to stay put, so we honored that and we have stayed put until you tell us, because you are the customer who's in charge, OK?
00:19:38 Speaker 3

And so you tell us, stay put, don't change anything, don't do anything, then we haven't.
00:19:46 Speaker 3
We're ready to go, but I do need some receipts.
00:19:50 Speaker 2
Sir, sir.
00:19:51 Speaker 1
All right.
00:19:51 Speaker 1
Well, let me let me stop because I know that there were some informal discussions and as a hearing officer, I'm pleased if the parties can work through some of the issues, it's always better if the two parties can reach an agreement rather than having a hearing officer make a decision.
00:20:09 Speaker 1
It appears that we have additional time because the case file hasn't
00:20:15 Speaker 1
been produced yet to Mr.
00:20:17 Speaker 1
Short.
00:20:18 Speaker 1
And Mr.
00:20:19 Speaker 1
Short has acknowledged that he will need time in which to review that case file.
00:20:24 Speaker 1
That allows the two of you to try to work through some of these issues.
00:20:29 Speaker 1
One of the orders that you should now have in your inbox, and I don't know that we need to go through those orders today because I will be resetting the status conference for next week.
00:20:42 Speaker 1
And I'll give both of you homework assignments.
00:20:45 Speaker 1
But one of the orders is denying Mr.
00:20:47 Speaker 1
Short's restatement of the issues.
00:20:51 Speaker 1
We will be sticking with the issues that were in the pre hearing order.
00:20:56 Speaker 1
So those are the issues that will be set for the administrative hearing, the laptop, the Adobe Acrobat, and whether or not TWC is complied with the November 2025 IPE.
00:21:09 Speaker 1

So that's one of the orders.
00:21:10 Speaker 1
So that gives you a basis to understand what we will hear at the administrative hearing.
00:21:16 Speaker 1
Now, if it sounds as if the two of you have other matters outside of that, that I are outside the scope of this proceeding, I cannot consider anything involving Texas State University.
00:21:30 Speaker 1
One of my orders explains the Texas law that says I do not have authority, so I cannot consider that.
00:21:39 Speaker 1
I know that the two of you have mentioned that, and if that's something you wanna work out or you wanna reach out to Miss Collins and have a mediator to help you resolve that issue, although I don't have authority to hear it, the two of you can mediate that issue.
00:21:54 Speaker 1
You're if you have a mediation or the two of you have discussions, it can be well outside those matters over which I will have a a hearing.
00:22:05 Speaker 1
So at this point I.
00:22:09 Speaker 1
So let me ask this.
00:22:10 Speaker 1
So the case file was of concern and I know Mr.
00:22:12 Speaker 1
Short raised early on in the pre hearing subpoenas for witnesses.
00:22:18 Speaker 1
So have the two of you had an opportunity, if we go forward with the hearing, have the two of you discussed the availability of TWC witnesses for that hearing?
00:22:30 Speaker 2
We haven't addressed that.
00:22:31 Speaker 1
OK.
00:22:33 Speaker 1
I need for the two of you to address it before our next status conference.
00:22:36 Speaker 1
I want to make sure that we are on the same page.
00:22:39 Speaker 1
I know that Mr.
00:22:40 Speaker 1
Short had requested subpoenas during the pre before the pre hearing conference.

00:22:45 Speaker 1
And if I need to issue those, I will.
00:22:47 Speaker 1
But I suspect that the two of you will agree upon those witnesses that need to be need to testify and I and subpoenas will not need to be issued.
00:23:06 Speaker 1
I'm very concerned about communications between the two of you that are being filed in this proceeding, settlement negotiations.
00:23:18 Speaker 1
I know that was raised by Mr.
00:23:21 Speaker 1
Short in a pleading, and I believe I addressed that previously.
00:23:26 Speaker 1
I don't want to see the communications between the two parties.
00:23:33 Speaker 1
Regarding settlement of the issues.
00:23:36 Speaker 1
So emails back and forth, I don't attach them to pleadings.
00:23:39 Speaker 1
Don't attach them to your emails to Miss Miss Collins, unless it's something that the two of you have agreed on and it's signed document.
00:23:47 Speaker 1
Any questions regarding that?
00:23:51 Speaker 3
Well, I'm not sure what I sent that that I sent that was.
00:23:57 Speaker 1
I believe you attached.
00:24:00 Speaker 1
an e-mail that you had between you and Mr.
00:24:02 Speaker 1
Short regarding some communications, I'd have to go back and look at it.
00:24:07 Speaker 1
We can talk about it further next week.
00:24:09 Speaker 1
I just am asking, please do not do that because again, I should not be involved in discovery disputes unless you need a hearing.
00:24:19 Speaker 1
And if there's settlement communications, I should be left out of that.
00:24:28 Speaker 1

If you're making offers back and forth between that, if you have an agreement, you bring it to me, we can enter an order or it's one less issue we have to address.
00:24:43 Speaker 1
The reason I stopped, I issued an order for no more motions is because I wanted to have a status hearing, so I understood where we are.
00:24:54 Speaker 1
It is not productive.
00:24:56 Speaker 1
for continued motions to be filed without a hearing.
00:25:01 Speaker 1
I believe one of the orders I issued indicated if there were discovery disputes, someone needed to request a hearing.
00:25:08 Speaker 1
No hearing was requested.
00:25:10 Speaker 1
I just kept getting motions.
00:25:12 Speaker 1
So that is the reason why I stopped and put a hold on any motions.
00:25:18 Speaker 1
So I know I've put it through today, but I will extend that until sometime next week when we have a continued status conference.
00:25:27 Speaker 1
I want to deal with the motions that Mr.
00:25:29 Speaker 1
Shore has filed to date.
00:25:31 Speaker 1
We need to make sure that we address each of his motions.
00:25:35 Speaker 1
And again, if the two of you reach an agreement in the interim period of time, that's fine.
00:25:40 Speaker 1
But having a continued status conference next week will allow Mr.
00:25:44 Speaker 1
Marler to give us an update.
00:25:46 Speaker 1
Mr.
00:25:46 Speaker 1
Short can and the both of you can review the orders I've entered.
00:25:50 Speaker 1
And Mr.
00:25:50 Speaker 1

Short, your homework assignment for next week is let me know what motions you believe I have not yet ruled on that you still need relief.
00:26:01 Speaker 2
I can tell you now.
00:26:04 Speaker 1
If you would put it in writing, that would be great.
00:26:07 Speaker 1
You can send it in an e-mail.
00:26:08 Speaker 1
You don't have to do a particular motion, but look at the orders that I entered yesterday.
00:26:15 Speaker 1
And then if you'll send Ms.
00:26:17 Speaker 1
Collins a list of those matters that you think are still pending.
00:26:21 Speaker 1
That was the purpose of today's session.
00:26:24 Speaker 1
status conference was to address those and then to figure out where we were with regard to the production of documents and where we were with regard to the hearing that's currently set for May 12th.
00:26:41 Speaker 1
So I will hold off on issuing other any other rulings until I get that e-mail from Mr.
00:26:49 Speaker 1
Short.
00:26:52 Speaker 1
Mr.
00:26:53 Speaker 1
Short, I know that you sent a letter to our statement to Ms.
00:26:58 Speaker 1
Collins yesterday that she did forward to me.
00:27:02 Speaker 1
We will discuss that letter next week at the continued status conference.
00:27:07 Speaker 1
I want you to have an opportunity to look at the orders and we will address that at that point.
00:27:13 Speaker 1
If you felt it's still appropriate to read it into the record, we can and we will address each of the items therein.
00:27:25 Speaker 1
Questions or concerns, Mr.

00:27:27 Speaker 1
Short, with what we've discussed today.
00:27:29 Speaker 2
No, not this time.
00:27:32 Speaker 1
Anything else that you need today between now and sometime next week when we have a continued status conference?
00:27:40 Speaker 2
No, I don't.
00:27:41 Speaker 1
Okay.
00:27:42 Speaker 1
Mr.
00:27:42 Speaker 1
Marler, same question to you.
00:27:44 Speaker 1
Are you, do you have any questions, concerns?
00:27:46 Speaker 1
Is there something that you need from me between now and sometime next week when we can reconvene?
00:27:51 Speaker 3
Nothing that I need right now.
00:27:53 Speaker 1
Okay.
00:27:54 Speaker 1
So once we figure out when the entire case law can be produced in Mr.
00:28:02 Speaker 1
Short in an appropriate format, then Mr.
00:28:05 Speaker 1
Short next week, I want you to be able, based upon when we believe you'll get it, to let me know when we can set the hearing.
00:28:14 Speaker 1
I wanna make sure you have sufficient time to prepare.
00:28:18 Speaker 3
I am getting feedback right now.
00:28:24 Speaker 3
they're describing the need to put together an entire team of people, all hands on deck, to try to get all of these documents developed.
00:28:40 Speaker 3
It's apparently going to take hours of multiple people to do this.

00:28:48 Speaker 3
And the accommodations person is trying to see how they can
00:28:53 Speaker 3
work on expediting this as quickly as possible.
00:28:56 Speaker 1
All right.
00:28:56 Speaker 1
Well, again, I appreciate that you're getting feedback, but having a continued status conference next week will allow you sufficient time to talk to them.
00:29:06 Speaker 1
And if there's something in writing that you and Mr.
00:29:08 Speaker 1
Short can agree on as to when if if if TWC is agreed to provide the Surface Pro to Mr.
00:29:15 Speaker 1
Short and the Adobe Acrobat and that can be effectuated, that's that's one less thing I have to hear.
00:29:21 Speaker 1
So having a continued status conference, I think will allow us a better grasp on what we have.
00:29:28 Speaker 1
So let's look at availability for next week.
00:29:33 Speaker 1
Let me ask Ms.
00:29:34 Speaker 1
Collins first, since she's the one who records this.
00:29:36 Speaker 1
Ms.
00:29:36 Speaker 1
Collins, is there any date next week that you can't have a continued status conference?
00:29:50 Speaker 1
Yes, the only dates I can is the 29th or the 1st.
00:29:55 Speaker 1
All right, let me look.
00:29:59 Speaker 1
The first I am scheduled to be at a conference, the 29th,
00:30:08 Speaker 1
I have no court hearings that day.
00:30:11 Speaker 1
I am free anytime on the 29th.
00:30:13 Speaker 1

Mr.
00:30:13 Speaker 1
Short, Mr.
00:30:14 Speaker 1
Marler, are you available on the 29th?
00:30:17 Speaker 3
I'm available the morning of the 29th.
00:30:22 Speaker 1
Mr.
00:30:23 Speaker 1
Shore, are you available on the 29th?
00:30:24 Speaker 2
Yes, that can be available that morning.
00:30:26 Speaker 1
Okay.
00:30:27 Speaker 1
Is 10 o'clock acceptable?
00:30:29 Speaker 2
Yes.
00:30:29 Speaker 1
All right.
00:30:30 Speaker 1
Ms.
00:30:31 Speaker 1
Collins, is that acceptable?
00:30:34 Speaker 1
Yes, ma'am.
00:30:35 Speaker 1
All right, so I will issue an order that we will have a continued status conference on Wednesday, April 29th at 10:00 AM.
00:30:45 Speaker 1
I will continue the hold on the filing of any pleadings based upon the representations by Mr.
00:30:53 Speaker 1
Shore and Mr.
00:30:54 Speaker 1
Marler today that there's nothing urgent that needs to be addressed between now and next Wednesday.
00:30:59 Speaker 1
We have a plan, Mr.

00:31:01 Speaker 1
Marler, I'm going to expect from you.
00:31:03 Speaker 1
very specific information as to when we will get that file.
00:31:07 Speaker 1
And Mr.
00:31:08 Speaker 1
Short, based on that, I will ask you when you want to reset the administrative hearing to allow you sufficient time.
00:31:16 Speaker 1
And that'll allow you opportunity to review the orders that have been entered.
00:31:21 Speaker 1
Mr.
00:31:21 Speaker 1
Short, again, if you will provide that list of outstanding motions or matters that you think I've not yet addressed to Ms.
00:31:28 Speaker 1
Collins, that would be helpful.
00:31:30 Speaker 1
Okay.
00:31:31 Speaker 1
Anything else?
00:31:37 Speaker 1
All right, gentlemen, I appreciate your time this morning.
00:31:41 Speaker 1
I know we're making some progress, but I look forward to seeing you on the 29th and hopefully we can wrap this up and start moving forward with the hearing.
00:31:50 Speaker 1
And this will give you some, I'd suggest the two of you talk if you can to finalize any other matters that you can get resolved in the interim.
00:32:01 Speaker 1
All right, have a great weekend.
00:32:02 Speaker 1
It's now 1039 on April 24th and we are concluding today's status conference.
00:32:07 Speaker 1
Thank you.
00:32:08 Speaker 3
Thank you.

## Transcript

00:00:10 Speaker 1
This call is here on mute.
00:00:11 Speaker 1
Did you start the recording?
00:00:13 Speaker 1
Yes, recording has begun.
00:00:14 Speaker 1
All right, thank you.
00:00:17 Speaker 1
Good morning.
00:00:19 Speaker 1
This status conference will come to order.
00:00:21 Speaker 1
This is the TWC administrative hearing captioned Mark Al Short versus Texas Workforce Commission, and it's filed as TWC docket 2026-27.
00:00:33 Speaker 1
This status conference is a continued status conference and today is Wednesday, April 29th, 2026 at exactly 10 A.m.
00:00:41 Speaker 1
This is a continuance of a status conference that we had last Friday, April 24th, also at 10 A.m.
00:00:49 Speaker 1
My name is June Main and I am the impartial hearing officer appointed by the Texas Workforce Commission to hear this matter.
00:00:57 Speaker 1
This conference is being audio recorded by a hearings coordinator.
00:01:00 Speaker 1
The original copy of the audio recording will be kept as a part of the files in this appeal.
00:01:06 Speaker 1
No other recording may or will be made of this hearing.
00:01:09 Speaker 1
Any other recording of this hearing is not authorized by the Texas Administrative Code.
00:01:15 Speaker 1
If a party desires a copy of the audio recording, one copy will be provided to the party at no charge by Ms.
00:01:22 Speaker 1
Collins, just e-mail Ms.
00:01:23 Speaker 1

Collins and she can provide that to you.
00:01:26 Speaker 1
Before we begin, I'd like for all parties present to identify themselves for the record.
00:01:32 Speaker 1
We have the hearings coordinator, Ms.
00:01:34 Speaker 1
Collins, participating and recording.
00:01:37 Speaker 1
Would Mr.
00:01:38 Speaker 1
Short please make his appearance.
00:01:41 Speaker 2
This is Markel Short as appearing as the appellant.
00:01:47 Speaker 1
Thank you.
00:01:48 Speaker 1
And who is here on behalf of the agency?
00:01:50 Speaker 3
Michael Marler, Deputy Regional Director.
00:01:53 Speaker 3
for Vocational Rehabilitation Division of TWC.
00:01:57 Speaker 1
All right, thank you.
00:01:59 Speaker 1
All right, at this point, I want Mr.
00:02:02 Speaker 1
Marler and Mr.
00:02:02 Speaker 1
Short, both of you to raise your hand.
00:02:04 Speaker 1
I want to swear you in.
00:02:05 Speaker 1
So any statements or arguments you make today, I can confirm that they're true and correct.
00:02:11 Speaker 1
So if each of you will raise your right hand.
00:02:14 Speaker 1
Do each of you solemnly swear that the testimony or the statements that you make to me today will be the truth and nothing but the truth?
00:02:21 Speaker 3

I do.
00:02:21 Speaker 3
I do.
00:02:23 Speaker 1
Thank you.
00:02:24 Speaker 1
All right, Mr.
00:02:25 Speaker 1
Marlowe, let's start with you.
00:02:26 Speaker 1
As I recall from our status conference last week, you were tasked with providing an update on providing the case file to Mr.
00:02:38 Speaker 1
Short.
00:02:38 Speaker 1
So that's why I'm going to you first.
00:02:39 Speaker 1
Please give me an update.
00:02:42 Speaker 3
So first, I don't remember if I've said if I said this, but we first attempted to give Mr.
00:02:50 Speaker 3
Short
00:02:52 Speaker 3
the PDF copies of the case file, which is standard operating procedure.
00:02:59 Speaker 3
And that was halted because Mr.
00:03:02 Speaker 3
Short stated that was not accessible to him.
00:03:08 Speaker 3
And we take the appellant's request for access to his case file very, very seriously.
00:03:13 Speaker 3
And we've been actively evaluating how to provide the records in an accessible format.
00:03:20 Speaker 3
Multiple departments had to be consulted about the possibility of producing the case file in the format that he requested.
00:03:29 Speaker 3
At this time, we are able to provide the full case file in standard PDF format, as well as in printed hard copy, if preferred.
00:03:41 Speaker 3

We also explored converting the entire file into fully OCR searchable and intermediated PDFs
00:03:48 Speaker 3
using specialized software.
00:03:51 Speaker 3
Based on that assessment, this would require approximately 3 staff working full-time for a minimum of two weeks, the purchase of additional software licenses, and an estimated cost of at least $10,000.
00:04:09 Speaker 3
Given the scale of the request and the associated resource impact,
00:04:15 Speaker 3
we've determined that producing the entire file in that format would constitute an undue administrative and financial burden under applicable federal accessibility standards.
00:04:27 Speaker 3
That said, we remain committed to ensuring effective access to the records and are willing to work with the appellant to identify specific documents that may require enhanced accessibility formatting.
00:04:48 Speaker 1
Thank you for the update.
00:04:49 Speaker 1
Mr.
00:04:49 Speaker 1
Short, your response.
00:04:52 Speaker 2
I have questions about, I think he said something, the standard PDF format.
00:04:57 Speaker 2
What exactly is, do you consider the standard PDF format?
00:05:02 Speaker 3
What we started sending you.
00:05:05 Speaker 2
Okay.
00:05:07 Speaker 2
Are you aware of the
00:05:09 Speaker 2
Texas laws that's associated with how this information is supposed to be made available to Texas citizens across the state.
00:05:18 Speaker 3
Well, what I do know is that the ADA nor the Rehabilitation Act requires that records be provided in any format requested.
00:05:28 Speaker 3

As long as the information provided is accessible, we have no obligation to create a new process to make the new information available that is already accessible.
00:05:40 Speaker 2
I can test that it's already accessible and I also can test that I'm specifying like a brand new format.
00:05:47 Speaker 2
Basically, the format I'm asking or needing inquiring is that that's specified in the Texas Administrative Code.
00:05:53 Speaker 2
That's just standard PDA slash A format.
00:05:58 Speaker 2
which includes the actual text data of the content.
00:06:04 Speaker 2
This is something that's required across the state for all the organizations, including the universities and all the state entities.
00:06:11 Speaker 2
So to act like this is a new process or something totally new, it hasn't.
00:06:17 Speaker 2
This has been codified for years.
00:06:20 Speaker 2
So I'm not asking the state to undergo an additional burden.
00:06:23 Speaker 2
This is something that should already be inherent within the system to begin with.
00:06:27 Speaker 3
What we sent you was standard PDF format.
00:06:31 Speaker 3
And what I have been advised with from the people who understand what our technological capabilities are, have said is we can send you PDF format, standard PDF format.
00:06:44 Speaker 3
That's all that's required.
00:06:46 Speaker 3
But what you requested was fully OCR searchable and remediated PDFs.
00:06:53 Speaker 3
And that requires specialized software.
00:06:56 Speaker 3
And that specialized software requires licenses.
00:07:03 Speaker 3
That is not our standard operating procedure for dispensing this information.
00:07:08 Speaker 3

We print it out, box it up, and mail it to a customer or have it delivered or picked up by the customer, or we e-mail piecemeal a little at a time because only so much will fit into an e-mail.
00:07:23 Speaker 3
PDF files, which is what we were trying to do for you in the beginning.
00:07:29 Speaker 2
Do I need to remind you that we actually discussed this at the pre-hearing conference where you offered and agreed to provide this in OCR format?
00:07:39 Speaker 3
Yeah, I said I would investigate it and see if it was possible.
00:07:43 Speaker 2
Okay, that's the state requirement.
00:07:45 Speaker 2
OK, and whether or not you want to agree to or not, I can easily pull up the state statute references and send them some to help you understand what the requirement because what you're providing now, it does not meet any standard.
00:07:58 Speaker 2
OK, I mean, that that's definitely I don't know how you service any other type of blind, low vision client with that because they can't they won't be able to make any sense of that either.
00:08:10 Speaker 3
Well,
00:08:12 Speaker 3
Luckily, we're very blessed to have in our accessibility department people who are blind and who have provided this information to me.
00:08:22 Speaker 3
But here's what I can ask.
00:08:24 Speaker 3
Can you identify what program that you used to read the first transmission in which you found certain things?
00:08:33 Speaker 2
Sure.
00:08:34 Speaker 2
I used, just like in my disclosure, I used a Google Gemini basically to go through it and read it for me.
00:08:40 Speaker 2
And so it goes through and it makes an attempt, okay, to try to decode this into a format that I can process and understand.
00:08:50 Speaker 2
And even it makes mistakes.

00:08:52 Speaker 2
So that's why the issues that I've uncovered took me 20-something days to find, okay?
00:08:59 Speaker 2
I mean, if I would have had it in a format that was almost easily accessible, which is like the PDF/A standard format, I would have found that on day one.
00:09:12 Speaker 3
Actually, you found it on day three.
00:09:15 Speaker 2
One of them I did.
00:09:16 Speaker 3
One of them I found.
00:09:17 Speaker 3
Actually, you found it on the day that we sent you the original P test.
00:09:21 Speaker 2
The other one, the other one I didn't.
00:09:22 Speaker 2
The other one took 20 days.
00:09:24 Speaker 3
It didn't take you, Mr.
00:09:25 Speaker 3
Short, it didn't take you 20 days to find what you did.
00:09:31 Speaker 3
You found and sent to me something that you had found in one day, which leads me to understand.
00:09:44 Speaker 3
It appears that you can read those PDFs that we sent you.
00:09:48 Speaker 2
I did not read that.
00:09:50 Speaker 2
And like I said, I went on a record.
00:09:52 Speaker 2
That was done through Google Gemini.
00:09:54 Speaker 2
And I got lucky that it was able to find it for me.
00:09:58 Speaker 3
Your honor, under Texas Rules of Civil Procedures 196.4 for electronic or magnetic data, it says that the respondent, if the respondent is required to send it to him in a format that causes an undue burden on us, then he has to pay for it.
00:10:20 Speaker 3
He has to be willing to pay for it.

00:10:22 Speaker 3
So if you're willing to pay for it, then we will get this thing rolling for you right away.
00:10:28 Speaker 1
All right.
00:10:29 Speaker 1
I think I've heard enough.
00:10:31 Speaker 1
So I appreciate your statement today, Mr.
00:10:34 Speaker 1
Marler, but I am trying to make this efficient as possible and keep encountering obstacles.
00:10:45 Speaker 1
I believe it would be appropriate for TWC to file a formal motion with the contents of what you've stated today, and then allow Mr.
00:10:54 Speaker 1
Short an opportunity to respond.
00:10:56 Speaker 1
He says he has statutes he wants to reference.
00:11:00 Speaker 1
For the record, it's better if we have a motion and Mr.
00:11:05 Speaker 1
Short files a response.
00:11:08 Speaker 3
Okay.
00:11:09 Speaker 1
Mr.
00:11:10 Speaker 1
Marler, I believe that either of the
00:11:13 Speaker 1
status hearing last week, or maybe in the pre-hearing conference, I'd have to go back and listen to the audio.
00:11:18 Speaker 1
You referenced that there were at least 500 documents.
00:11:22 Speaker 1
Is that correct?
00:11:24 Speaker 3
There are more than 600 documents.
00:11:27 Speaker 1
What is the total number of pages?
00:11:30 Speaker 3

The total number of what?
00:11:32 Speaker 1
Approximate, if you can tell me.
00:11:35 Speaker 3
Let me check the note that I have here.
00:11:44 Speaker 3
835.
00:11:47 Speaker 1
835 pages.
00:11:49 Speaker 3
835 documents.
00:11:54 Speaker 1
And do we know what the total number of pages is?
00:11:57 Speaker 3
Yeah, it's 835.
00:12:01 Speaker 1
So each page, each document is only one page.
00:12:09 Speaker 3
There are.
00:12:10 Speaker 3
A total number of pages are 1,132.
00:12:16 Speaker 3
In Mr.
00:12:17 Speaker 3
Short's virtual file pages, there are 297, and the case notes in Rehab Works are 835 for a grand total of 1,132.
00:12:34 Speaker 1
I will be issuing an order that requires TWC to print out
00:12:39 Speaker 1
the 1,132 pages and provide those to Mr.
00:12:43 Speaker 1
Shore.
00:12:44 Speaker 1
If he doesn't want them, that's fine.
00:12:48 Speaker 1
I want that sent to him as soon as possible in the interim period of time while we allow TWC to file the motion and Mr.
00:12:59 Speaker 1
Shore to respond to it.
00:13:04 Speaker 1

I will be issuing an order.
00:13:05 Speaker 1
How long?
00:13:06 Speaker 1
One week.
00:13:11 Speaker 3
I don't know how long it takes to print out 1,130 pages and prepare them for mailing, but sure, it seems like a week should do.
00:13:22 Speaker 3
I can't imagine that it takes.
00:13:24 Speaker 3
Now, that's, it may take a few days for us to get it mailed out, so I don't know how long it will be in the mail.
00:13:31 Speaker 1
I understand.
00:13:31 Speaker 1
I'm just asking that a big mail.
00:13:32 Speaker 1
I will hardly be smuggled.
00:13:34 Speaker 1
Yes, ma'am, I would.
00:13:36 Speaker 1
Tell me about PDF documents as Mr.
00:13:42 Speaker 1
Short describes in dead PDFs were being sent to him.
00:13:46 Speaker 1
How many of those documents were sent to Mr.
00:13:49 Speaker 1
Short before he stopped, asked that they be stopped.
00:13:54 Speaker 3
Mr.
00:13:54 Speaker 3
Short can probably get to that information faster than I do.
00:13:57 Speaker 3
I we have sent.
00:14:00 Speaker 2
It's about 20 or so, and I never really asked them to stop.
00:14:04 Speaker 2
They just they just stopped.
00:14:06 Speaker 3

So, you said that it wasn't any use to you, so that's why we're going to continue to bombard you with it.
00:14:11 Speaker 2
Right.
00:14:12 Speaker 2
So it was about 20, I believe.
00:14:17 Speaker 1
Okay.
00:14:19 Speaker 1
And Mr.
00:14:20 Speaker 1
Marler, was TWC using SharePoint or just e-mail?
00:14:25 Speaker 3
E-mail.
00:14:29 Speaker 1
I would ask that those be continued to be sent if they're already in PDF format.
00:14:37 Speaker 1
They should be sent as soon as possible, Mr.
00:14:39 Speaker 1
Short, pending the filing of the motion and receiving Mr.
00:14:43 Speaker 1
Short's response.
00:14:46 Speaker 1
Mr.
00:14:46 Speaker 1
Short, are you still with us?
00:14:47 Speaker 1
You went off camera.
00:14:48 Speaker 2
Oh, I'm sorry.
00:14:49 Speaker 2
I've got multiple large screen monitors that I'm trying to manage and keep up with stuff and look for the actual specifics that you're inquiring about.
00:14:58 Speaker 1
All right.
00:15:00 Speaker 1
I just want to make sure you were still with us.
00:15:03 Speaker 3
May I make sure I understand what you've directed me to do.
00:15:09 Speaker 3

Print out 1132 pages and send to Mr.
00:15:12 Speaker 3
Short and also continue sending the remainder of the PDFs.
00:15:18 Speaker 3
The standard PDF to Mr.
00:15:19 Speaker 3
Short via e-mail, okay.
00:15:20 Speaker 1
Yes, which are those same documents.
00:15:23 Speaker 1
So they'll be provided to Mr.
00:15:24 Speaker 1
Short pending a ruling on TWC's request not to produce them in an OCR fashion for the reason stated that you said it on the record.
00:15:36 Speaker 1
I want that in a formal motion so that Mr.
00:15:38 Speaker 1
Short can respond to it, but in the interim, yes.
00:15:41 Speaker 3
Yes, ma'am.
00:15:42 Speaker 1
Provide those documents that we've just discussed in two formats to Mr.
00:15:46 Speaker 1
Short, one by physical paper,
00:15:48 Speaker 1
copies and also by PDF.
00:15:52 Speaker 1
Mr.
00:15:52 Speaker 1
Marler, how long do you need to file that motion?
00:15:54 Speaker 3
I believe I can have it done.
00:16:01 Speaker 3
What is today?
00:16:02 Speaker 3
4/29.
00:16:03 Speaker 3
I believe that I can have it done in the next 24 hours.
00:16:11 Speaker 1
Let's make it deadline of May 1st, Friday at 5:00 PM.

00:16:22 Speaker 1
Mr.
00:16:22 Speaker 1
Chair, how long do you need to respond?
00:16:25 Speaker 2
24 hours.
00:16:26 Speaker 1
All right, well, that's a Friday.
00:16:30 Speaker 1
So if you need 24 hours, let me give you until the 4th, which is that Monday, that's a business day, one full business day.
00:16:40 Speaker 1
So that'll be May 4th at 5 P.m.
00:16:50 Speaker 1
And after I receive both the motion and the response, if I believe that another hearing is necessary, I will issue an order of setting a hearing.
00:17:00 Speaker 1
If not, I will just roll on the motion.
00:17:03 Speaker 1
Mr.
00:17:04 Speaker 1
Short, please include any of the statutory authority that you indicated that you have.
00:17:10 Speaker 1
Sure.
00:17:13 Speaker 1
Same thing with you, Mr.
00:17:14 Speaker 1
Momer.
00:17:14 Speaker 1
Any statutory authority, any statutory authority, any case law, anything that you've got to support your position.
00:17:21 Speaker 1
I know you've referenced the Texas rules, et cetera.
00:17:25 Speaker 1
Whatever authority you each are relying upon, please include that in the motion in the response.
00:17:43 Speaker 1
I had hoped that we would be able to set the administrative hearing today, but it's -- Mr.
00:17:52 Speaker 1
Short still doesn't have everything in his case file.

00:17:54 Speaker 1
So I don't know that that's possible.
00:17:56 Speaker 1
Do you agree, Mr.
00:17:57 Speaker 1
Short.
00:17:58 Speaker 2
Yes, I agree.
00:17:58 Speaker 1
All right.
00:18:00 Speaker 1
So we're running up against the deadline.
00:18:09 Speaker 1
Mr.
00:18:09 Speaker 1
Short, are you willing to send an e-mail to the hearings coordinator to ask at least a 30-day extension of the 60-day hearing deadline at this point?
00:18:20 Speaker 2
Yes, I will.
00:18:20 Speaker 1
If you will do that today, then I will issue an order that gives us some time for me to rule on the motion and consider other matters.
00:18:35 Speaker 1
Anything else with regard to the case file at this point before I move on to other matters.
00:18:42 Speaker 2
I have a statement I want to read into the record.
00:18:44 Speaker 2
All right.
00:18:46 Speaker 1
Is that the statement from last week?
00:18:49 Speaker 2
No, it's not.
00:18:50 Speaker 2
It's actually an updated statement.
00:18:54 Speaker 1
I want to talk about the statement made from last week.
00:18:57 Speaker 1
All right.
00:18:58 Speaker 1

I will allow you to make that statement if we can handle some other preliminary matters first.
00:19:02 Speaker 1
This morning you should have received
00:19:05 Speaker 1
the orders that I issued yesterday.
00:19:07 Speaker 1
I was not aware that Mr.
00:19:09 Speaker 1
Short had filed several motions until yesterday.
00:19:13 Speaker 1
I received them.
00:19:15 Speaker 1
As both of you know, I'm not a full-time independent hearing officer.
00:19:20 Speaker 1
I do this part-time in between TWC
00:19:24 Speaker 1
them being able to process and getting it to me, I don't, sometimes it takes one to two days.
00:19:29 Speaker 1
So I received those yesterday and that's why the orders were not issued until yesterday because I was not aware of them.
00:19:37 Speaker 1
So I made it very clear, I went back and listened to the audio from last Friday.
00:19:42 Speaker 1
I made it very clear that no motions or notices should be filed before today's pre-hearing.
00:19:48 Speaker 1
As a result, I struck all of the pleadings that have been filed by Mr.
00:19:53 Speaker 1
Short in the interim.
00:19:54 Speaker 1
I was very clear and I made sure on the record that both of you understood.
00:20:00 Speaker 1
So that's why those were stricken.
00:20:05 Speaker 1
I'm very concerned, Mr.
00:20:07 Speaker 1
Short, that you continue to include matters that should not be considered by me or cannot be considered by me.

00:20:15 Speaker 1
I am also concerned that you were including filings with other agencies.
00:20:22 Speaker 1
And I wanted to ask you about those because it appears that you may be trying to influence the outcome of this appeal or taking action to influence my decision.
00:20:34 Speaker 1
And I am an independent hearing officer.
00:20:37 Speaker 1
You may file as many complaints with other agencies that you want, but those should not be referenced.
00:20:45 Speaker 1
in this proceeding?
00:20:46 Speaker 1
Why are you continuing to reference other matters in this in this proceeding?
00:20:52 Speaker 1
I thought we've gone over this before.
00:20:57 Speaker 2
Are you wanting me to respond at this point?
00:21:00 Speaker 1
Please.
00:21:00 Speaker 1
Yes, I am.
00:21:01 Speaker 1
I'm asking for a response.
00:21:03 Speaker 2
Okay, well, it's all included in my statement.
00:21:05 Speaker 2
If I'm allowed to read my statement, I can just, which should answer your questions as well.
00:21:10 Speaker 1
All right.
00:21:11 Speaker 1
All right.
00:21:12 Speaker 1
Again, I have a few matters before we go into your statement.
00:21:16 Speaker 1
So you will address that.
00:21:20 Speaker 1
Also, you have referenced in emails on more than one occasion that you've been involved in previous litigation and administrative matters.

00:21:28 Speaker 1
I believe that your e-mail that you, one of the emails that you sent to Ms.
00:21:32 Speaker 1
Collins in the last two days said, this is not my first administrative or civil proceeding.
00:21:38 Speaker 1
I was an active participant with the Texas Judicial Committee of Information Technology, JCIT, over 10 plus years ago.
00:21:46 Speaker 1
What relevance does that have to this proceeding that I'm handling?
00:21:51 Speaker 2
I have its relevance as far as regarding to the actual electronic data that we're dealing with and actually being a subject matter expert on what is considered an accessible PDF file.
00:22:02 Speaker 1
Okay.
00:22:02 Speaker 1
And why are you a subject matter expert on PDFs?
00:22:09 Speaker 2
Because this was one of the core things that we did in the Judicial Committee on Information Technology is how to actually address formatting of these matters and what constitutes a viable mechanism in order to support the judicial processes in the state.
00:22:31 Speaker 1
And what years were you on that committee?
00:22:35 Speaker 2
That was back in 2014.
00:22:41 Speaker 1
Was it more than one year or just one year?
00:22:44 Speaker 2
I would have to go back and check.
00:22:45 Speaker 2
I mean, right now I'm just pulling up, but I know 2014 I was active with the committee.
00:22:51 Speaker 1
Okay.
00:22:51 Speaker 1
And what bearing does it have on this appeal that this is not my first administrative or civical proceeding?
00:22:59 Speaker 2
I'm sorry, I think that's just me, just in the heat of the moment, matter of frustration.
00:23:03 Speaker 2
Okay.

00:23:05 Speaker 1
Understood.
00:23:07 Speaker 1
I just want to make sure if there's something that bears on this appeal, I'm aware of it.
00:23:12 Speaker 2
That's really, that's not really, again, I think it's just a moment of frustration there.
00:23:18 Speaker 1
Okay, understood.
00:23:19 Speaker 1
All right.
00:23:20 Speaker 1
I have a few other matters I want to discuss, but Mr.
00:23:23 Speaker 1
Short, if you want to make a statement, why don't we go ahead and take that statement at this point?
00:23:28 Speaker 2
All right.
00:23:29 Speaker 2
For the record, I formally object to the April 28th order striking my filings, and I note my exception for federal review.
00:23:36 Speaker 2
The premise of this order is factually void and legally unenforceable.
00:23:40 Speaker 2
First, the administrative stray referenced in this order was never formalized in writing.
00:23:44 Speaker 2
Following the April 24th conference, a retroactive written order cannot legally strike pleadings that were properly filed while the docket was officially open.
00:23:53 Speaker 2
Second, I was denied the opportunity to read my statement on April 24th,
00:23:57 Speaker 2
and I was not provided notice of the May 1st housing liability deadline until April the 27th.
00:24:02 Speaker 2
It is factually impossible for me to have agreed on April 24th that there was no urgent matters.
00:24:09 Speaker 2
An unformalized retroactive stay cannot gag a litigant from reporting systemic data breach, nor can it suppress an emergency motion for deadline that materialized after the stay was verbally proposed.
00:24:22 Speaker 2

I object to the arbitrary contritious nature of these proceedings and I note my exception.
00:24:28 Speaker 2
I formally move for the immediate stay of the hearing officer's April 28th order.
00:24:32 Speaker 2
A procedural freeze cannot be used to bypass mandatory provisions of interim services under 34 CFR 361.57B4.
00:24:45 Speaker 2
I'm orally renewing my emergency motion for interim relief.
00:24:49 Speaker 2
I'm facing imminent irrepatable financial harm due to a May 1st housing liability deadline, directly caused by the agent's 58-day refusal to issue a notice of decision regarding my MSCS transfer.
00:25:05 Speaker 2
If this
00:25:06 Speaker 2
The tribunal refuses to stay its gag order and refuses to grant the interim relief required to prevent my May 1st housing liability.
00:25:13 Speaker 2
I required this denial be on the record right now and I'm providing formal notice that I will immediately escalate this to seek temporary restraining order and preliminary injunction.
00:25:25 Speaker 2
Finally, regarding equal access to the tribunal's official record, yesterday, April 28th, hearings coordinator Melissa Collins informed me that I must obtain my own transcriber for these proceedings.
00:25:37 Speaker 2
I'm formally objecting to this directive.
00:25:40 Speaker 2
Shifting the logistical financial burden of a transcription onto a visually impaired litigant is a refusal to provide a reasonable accommodation under Title II of the ATA and Section 504 of the Rehabilitation Act.
00:25:53 Speaker 2
I require a ruling on the record regarding whether this tribunal will provide a text searchable transcript at no cost to the appellant, or if it intends to uphold just a directive denying its accommodation.
00:26:06 Speaker 2
That's it.
00:26:07 Speaker 1
Okay.
00:26:08 Speaker 1
All right.

00:26:08 Speaker 1
What is your housing?
00:26:10 Speaker 1
Your housing situation is not an issue on this appeal.
00:26:14 Speaker 1
Why do you keep bringing this matter to my attention?
00:26:20 Speaker 2
Because it was one of the items that was covered under the IPE.
00:26:26 Speaker 2
And the fact that it's not being considered, I was not, that's confusing to me.
00:26:33 Speaker 2
So I thought the IPE was a core issue that we were considering or looking at.
00:26:39 Speaker 1
No, you have not connected those dots in any pleading.
00:26:42 Speaker 1
You have filed a multitude of pleadings, but there's been no connecting of the dots.
00:26:46 Speaker 1
Mr.
00:26:47 Speaker 1
Marler, is the housing situation covered by the IPE?
00:26:50 Speaker 1
No, but I have not seen the IPE.
00:26:53 Speaker 3
I am not looking at the IPE right now.
00:26:55 Speaker 3
If I'm given a moment, I can go to the IPE and I can tell you precisely what it says.
00:27:01 Speaker 3
We have thousands of- Thank you.
00:27:08 Speaker 1
Mr.
00:27:09 Speaker 1
Merlin, one second.
00:27:09 Speaker 1
Mr.
00:27:10 Speaker 1
Shorter, can you pull up your IPE as well, the November IPE so that both of you are looking at the same document?
00:27:17 Speaker 3

So he has on his current IPE with an end date of May 31st, 2027, room and board required to complete degree in accordance with the TWC best value purchasing at Texas State University on campus housing.
00:27:36 Speaker 3
So his IPE covers him being able to have room and board at Texas State University as long as he's enrolled full-time in classes.
00:27:47 Speaker 3
I don't know what the issue is.
00:27:50 Speaker 1
Mr.
00:27:50 Speaker 1
Short, I need an explanation.
00:27:53 Speaker 1
Your pleadings are vague.
00:27:56 Speaker 1
I don't understand.
00:27:57 Speaker 2
Well, first of all, most of my pleading's been stricken from the record, okay?
00:28:01 Speaker 2
So I was just saying that they're vague.
00:28:02 Speaker 2
I don't even think you've read most of them.
00:28:04 Speaker 2
So second of all.
00:28:06 Speaker 1
That's a, that is a very negative comment and that is directly in violation of my order establishing rules for decorum.
00:28:15 Speaker 1
And you violated that more than once already.
00:28:18 Speaker 1
So I warn you.
00:28:19 Speaker 1
The derogatory comments against anyone, including the hearing officer, are not appropriate to allude or state that I've not read your pleadings when I specifically have addressed the contents of those pleadings in my orders is not appropriate.
00:28:37 Speaker 2
Okay.
00:28:39 Speaker 2
Pardon me then, because I just presumed that you struck the pleadings without reading them.

00:28:45 Speaker 2
So if you've read them, then
00:28:48 Speaker 2
I'm very happy.
00:28:50 Speaker 2
And that is a surprise to me.
00:28:53 Speaker 2
However, the issue of the housing, like I said, May the 1st is just a couple of days away.
00:29:01 Speaker 2
I mean, regardless of, you're asking for me to agree to these extensions.
00:29:07 Speaker 2
However, these are issues that's coming up that's critical right now.
00:29:13 Speaker 2
And so at the same time, if we're going to extend these proceedings,
00:29:18 Speaker 2
to, accommodate the issues with the records, then there needs to be something in place to actually ensure that I'm not, unduly harmed as a result.
00:29:34 Speaker 1
All right.
00:29:36 Speaker 1
I will ask this again, Mr.
00:29:37 Speaker 1
Short.
00:29:37 Speaker 1
I don't believe that you understand what I'm asking.
00:29:41 Speaker 1
I am not clear
00:29:44 Speaker 1
what the issue is with regard to May 1st, considering that Mr.
00:29:48 Speaker 1
Marler has just told me that as long as you're enrolled as a full-time student, your housing is paid for.
00:29:54 Speaker 1
I don't understand what the issue is.
00:29:57 Speaker 2
They require me to actually commit to the extension of that throughout the next year on May 1st.
00:30:07 Speaker 2
Okay, so that's what's coming up on May 1st, is that if I do not say
00:30:14 Speaker 2

I have to decide whether or not I'm going to continue with that, with staying here or not.
00:30:19 Speaker 2
And so that's what's coming up.
00:30:21 Speaker 2
If I don't say anything, then they're going to automatically extend it.
00:30:25 Speaker 2
And so that's going to work against any type of transfer or anything regarding to an issue that I've also raised with the IPE.
00:30:33 Speaker 2
So again, I don't, again, this is putting me in an awkward position where I don't even know how to respond to the university regarding this right now.
00:30:45 Speaker 1
Does the IPE anticipate a transfer to a different school?
00:30:50 Speaker 2
No, that's one of the issues that's supposed to be resolved through this due process.
00:30:59 Speaker 3
That is the issues to be resolved by the due process are the issues that are established by the IHO.
00:31:05 Speaker 3
And I don't recall that is an issue that
00:31:12 Speaker 3
you established.
00:31:18 Speaker 1
My recollection is we were talking about the November 2025 IPE.
00:31:25 Speaker 1
When was there, has there been a request for, Mr.
00:31:27 Speaker 1
Short, did you make a request for transfer and when was that made?
00:31:32 Speaker 2
Absolutely.
00:31:33 Speaker 2
I've made a request of that since at least February of 2026 and all the way up through February, I mean, March 2026, April 2026.
00:31:47 Speaker 2
That's one of the key issues that I've raised is that never receiving an NOD on this.
00:31:53 Speaker 2
Okay.
00:31:54 Speaker 2
So basically, I will get verbal denials,
00:31:58 Speaker 2

But at the same time, I also get assurances from Mr.
00:32:01 Speaker 2
Marler previously telling him that he didn't contest any of this, that he's perfectly fine with all this.
00:32:07 Speaker 2
So.
00:32:08 Speaker 3
With the issues established by the IHO.
00:32:14 Speaker 1
Where is it, Mr.
00:32:15 Speaker 1
Short, that you want to be transferred to.
00:32:17 Speaker 2
Any university right now, they actually provide equitable access to their education program, which is Texas Tech, University of Boston,
00:32:28 Speaker 2
Pretty much any other Texas University that has a viable Masters of Science in Computer Science program.
00:32:34 Speaker 2
So I'm totally open.
00:32:36 Speaker 2
So.
00:32:38 Speaker 3
Ma'am, this is not part of this appeal.
00:32:44 Speaker 3
This is something that needs to be worked out with a VR counselor.
00:32:49 Speaker 3
This is something that will require an amendment to an IPE.
00:32:53 Speaker 3
We currently have an IPE that's valid until 2027.
00:32:56 Speaker 3
If changes are needing to be made to it, then that's done through the VR counselor amending an IPE in a collaborative manner with Mr.
00:33:06 Speaker 3
Short.
00:33:06 Speaker 3
And that is that is not related specifically to the issues that have been identified.
00:33:15 Speaker 1
I understand.
00:33:16 Speaker 1

I understand the agency's position.
00:33:17 Speaker 1
I was trying to understand why Mr.
00:33:21 Speaker 1
Short thinks or believes or is asserting that those issues are something within this appeal.
00:33:33 Speaker 2
They were core issues that I raised with the complaint to begin with.
00:33:37 Speaker 2
So the idea that they're not there, I think I even filed a pleading contesting.
00:33:44 Speaker 2
They're not being included.
00:33:45 Speaker 2
All right.
00:33:46 Speaker 2
Which I don't understand how, you know, how we reached a point where they're not an active issue on the table right now, considering as many times as I've raised it in the pleadings that you've said you've read.
00:34:01 Speaker 2
So I mean, I'm at a loss of this too.
00:34:04 Speaker 2
So.
00:34:06 Speaker 2
what do we need to do to fix this?
00:34:14 Speaker 3
I have things to say, but I don't know if it's appropriate for me to say so.
00:34:19 Speaker 1
You may.
00:34:21 Speaker 3
As I've said all along, these are very easily resolvable issues that you, Madam IHO, have identified during the pre-hearing.
00:34:35 Speaker 3
the MRI, the maintenance, which we still have received no receipts.
00:34:43 Speaker 3
Mr.
00:34:43 Speaker 3
Short, if you would just send me the receipts for what it is you're requesting to be reimbursed for, I will happily have those reviewed and we will assess if it is, what the amount is, what is appropriate to be reimbursed to you.
00:35:03 Speaker 3

your case transfer.
00:35:05 Speaker 3
I am ready and willing to transfer your case whenever it is you decide, although I would ask you to hear me out on what the two forks, the fork in the road would look like going this way or that way.
00:35:19 Speaker 3
But all of this that was identified in the original issues in the pre-hearing, we've been very willing to resolve.
00:35:29 Speaker 3
It takes a little bit of time,
00:35:32 Speaker 3
But we've been very, very willing to resolve this.
00:35:34 Speaker 3
And who knew that the case file, I certainly didn't.
00:35:37 Speaker 3
I didn't know that was going to turn into what it has.
00:35:42 Speaker 3
We're very, we sit here willing to help you, Mr.
00:35:45 Speaker 3
Short.
00:35:46 Speaker 3
We want to help you.
00:35:48 Speaker 3
We want to help you be successful and be able to move on with your life and do all the things that you want to do.
00:35:54 Speaker 3
But we have to be able to work collaboratively together instead of having a negative relationship.
00:36:03 Speaker 3
And so whatever you would like to do, we can do one of two things.
00:36:06 Speaker 3
We can keep your case where it is right now, and I will order the staff in that office to immediately comply with the current IPE, to immediately meet with you to amend your IPE to include whatever the two of you can agree to.
00:36:23 Speaker 3
Of course, it has to be an agreement between both of you, and it has to be justifiable.
00:36:30 Speaker 3
But we can get these services that you're wanting.
00:36:33 Speaker 3
We can get them resolved.

00:36:35 Speaker 3
We can do it that way where your case is already in one place and we can get that done pretty quickly.
00:36:41 Speaker 3
Or we can transfer it, which you have said that you wanted.
00:36:45 Speaker 3
We can transfer it to a different office and to a different counselor.
00:36:49 Speaker 3
We'll need a little bit of time to be able to get the transfer completed and to be able to bring the counselor, the new counselor up to speed
00:36:58 Speaker 3
on your situation so that they can address your needs appropriately.
00:37:06 Speaker 3
We can do either one, but either one results in you being able to have the things that we agreed to on your IPE and then include new things like the laptop and the Adobe Pro on a new IPE.
00:37:20 Speaker 3
And we will continue if you will just send the receipts to resolve the matter with your maintenance.
00:37:26 Speaker 3
And we're here, we are not adversarial or trying to stand in your way of success.
00:37:32 Speaker 3
We want to help clear the way to your success.
00:37:41 Speaker 1
Well, I'm sorry.
00:37:43 Speaker 2
I have sent receipts to them multiple times regarding some of these issues.
00:37:47 Speaker 3
I asked you to send me the receipts so they don't, so there's no if, ands or buts about.
00:37:52 Speaker 3
about it, I can take a look at it myself and help you.
00:37:56 Speaker 3
I'm giving you, I am giving you my word of honor that I will look at those and I will make an assessment and I will determine whether or not you can be reimbursed.
00:38:07 Speaker 3
I of course can't make that decision.
00:38:09 Speaker 3
That's above my level.
00:38:11 Speaker 3
But I can make the argument for why we need to do it and I'm generally listened to.

00:38:16 Speaker 3
I haven't yet to not be.
00:38:18 Speaker 3
So.
00:38:19 Speaker 1
Mr.
00:38:19 Speaker 1
Short, can you get those receipts?
00:38:21 Speaker 1
Do you have those receipts readily available?
00:38:23 Speaker 1
And can you get those to Mr.
00:38:25 Speaker 1
Marvel by Monday at 5.
00:38:27 Speaker 3
Yes.
00:38:28 Speaker 1
Okay.
00:38:29 Speaker 3
Perfect.
00:38:30 Speaker 1
All right.
00:38:32 Speaker 1
Let's go back to the May 1st issue.
00:38:34 Speaker 1
So I looked at what the issues are in the pre-hearing order.
00:38:38 Speaker 1
Has the agency provided to appellant all of the vocational rehabilitation services?
00:38:42 Speaker 1
services that are identified in the IPE dated November 4th, 2025?
00:38:47 Speaker 1
And if not, has there been a denial, reduction or suspension of or termination of vocational rehabilitation services?
00:38:57 Speaker 3
Is that for me?
00:38:59 Speaker 1
No, that's what the issue is.
00:39:00 Speaker 1
That is the third issue.
00:39:02 Speaker 1

So.
00:39:03 Speaker 3
There's been no denial.
00:39:05 Speaker 3
No denial.
00:39:06 Speaker 1
Well, we're not at the evidentiary stage, but I'm trying to link that to what Mr.
00:39:10 Speaker 1
Short is telling me today about he has a May 1st deadline.
00:39:14 Speaker 1
Mr.
00:39:14 Speaker 1
Marler, can someone meet with Mr.
00:39:16 Speaker 1
Short today to go over this issue regarding the May 1st deadline.
00:39:25 Speaker 3
That depends on what Mr.
00:39:27 Speaker 3
Short wants to stay with the current counselor and the current office that his case is currently in or a transfer.
00:39:35 Speaker 3
Either way, at this time of day, I doubt very seriously that there's anybody who is free to be able to do it today.
00:39:42 Speaker 3
Tomorrow?
00:39:44 Speaker 3
Very likely.
00:39:45 Speaker 1
Mr.
00:39:46 Speaker 1
Short.
00:39:48 Speaker 1
Are you wanting to stick with the current counselor and try to work on an amended IPE?
00:39:53 Speaker 1
Anytime there's a transfer, there's a delay.
00:39:55 Speaker 1
Tell me what your thoughts are.
00:39:58 Speaker 2
Absolutely not staying with the current counselor.
00:40:01 Speaker 2

As you've read in my pleadings, that there's been an ongoing history of retaliation and prejudicial downgrade of my BVI status.
00:40:10 Speaker 2
If Mr.
00:40:11 Speaker 2
Marler is familiar with my case file, he will see it in there as well.
00:40:15 Speaker 2
So they initiated a downgrade on my case file before I even filed for due process.
00:40:24 Speaker 2
OK, before I even obtained basically a new medical record, eye doctor's record.
00:40:28 Speaker 2
Are.
00:40:29 Speaker 1
You are you asking for a change of counsel within that in that division?
00:40:33 Speaker 1
Are you looking to move it to a different?
00:40:35 Speaker 2
Entirely different division.
00:40:37 Speaker 3
But whoa, whoa, whoa, whoa, there is no, there isn't, there's no other division.
00:40:41 Speaker 3
There's only us.
00:40:43 Speaker 2
Okay, I mean, out of that particular office.
00:40:47 Speaker 2
Office, right?
00:40:48 Speaker 3
And let me just say, since we're putting things on the record, that there has been no denial and there has been no change in your status as a person with a visual impairment.
00:41:00 Speaker 3
You are still on a visual impairment caseload.
00:41:04 Speaker 3
You are still considered visually impaired.
00:41:07 Speaker 3
And as far as I'm concerned, you will continue to be.
00:41:12 Speaker 3
So that's a non-issue.
00:41:14 Speaker 3
That's completely moot.

00:41:16 Speaker 3
We acknowledge that you are visually impaired.
00:41:21 Speaker 1
I do.
00:41:22 Speaker 2
Appreciate those reassurances.
00:41:23 Speaker 2
I'm sorry.
00:41:25 Speaker 3
I've given them before.
00:41:27 Speaker 1
Mr.
00:41:27 Speaker 1
Short, I don't know that I can grade anything that you're asking.
00:41:31 Speaker 1
If you need to go to court and get a TRO or take other action against TWC, I can't stop you.
00:41:39 Speaker 1
I can't advise you.
00:41:42 Speaker 1
That specific issue regarding whether or not you state Texas State or move to a different university, I don't believe it's encompassed within issue #3.
00:41:53 Speaker 1
I don't know that I have authority to issue any orders.
00:41:58 Speaker 1
So if you need to go to court or pursue your rights elsewhere.
00:42:04 Speaker 3
The agency is not opposed to Mr.
00:42:07 Speaker 3
Short transferring to a different university.
00:42:11 Speaker 3
That can be justified.
00:42:13 Speaker 3
I don't know what the justification particularly is right now.
00:42:15 Speaker 3
I understand we've got, I've gotten some information from Mr.
00:42:18 Speaker 3
Short on that.
00:42:19 Speaker 3
And initially I'm at least, well, I'm very willing to consider it.

00:42:27 Speaker 3
We do have to have good, clear justification.
00:42:29 Speaker 3
But that's, there's been no denial for that either.
00:42:36 Speaker 1
I see this very simplistically.
00:42:38 Speaker 1
Mr.
00:42:38 Speaker 1
Short says there's a deadline.
00:42:40 Speaker 1
He doesn't want the current counselor.
00:42:45 Speaker 1
The two of you need to discuss this issue and it doesn't need to be in front of me, but we've got a deadline of May 1st is what I'm hearing Mr.
00:42:55 Speaker 1
Short say.
00:42:56 Speaker 1
So either the current counselor can work through this issue with the supervisor, that's between the two parties.
00:43:03 Speaker 1
I shouldn't be involved in that, but I don't believe that I have any authority to take action.
00:43:13 Speaker 1
Again, I'm asking the two parties to get together.
00:43:15 Speaker 1
It shouldn't be that difficult.
00:43:17 Speaker 1
I know that there may not be that level of trust, but again, there has to be effective communication.
00:43:23 Speaker 1
The VR program in itself is a collaborative effort between customers and the agency.
00:43:31 Speaker 3
Yes, ma'am.
00:43:33 Speaker 1
I'm not serving as a mediator, I'm serving as the hearing officer, but I'm telling the two of you, there should have been some discussion regarding this issue.
00:43:40 Speaker 1
Mr.
00:43:41 Speaker 1
Short is saying he's raised it and I don't have any evidence.

00:43:44 Speaker 1
I don't have to make any rulings on that.
00:43:46 Speaker 1
I don't know what communications.
00:43:48 Speaker 1
I'm imploring the two of you to address this as soon as possible.
00:43:53 Speaker 1
Mr.
00:43:53 Speaker 1
Short has identified an issue and needs to be addressed.
00:43:57 Speaker 1
I'm not the one to address it.
00:44:00 Speaker 3
Thanks.
00:44:01 Speaker 3
This is pertinent, now that it's been raised, and I realize you don't want us to discuss it with you, but you are directing me to do some things here.
00:44:10 Speaker 3
So let me just say this.
00:44:12 Speaker 3
Mr.
00:44:12 Speaker 3
Short is secure in where he currently is according to his IPE.
00:44:18 Speaker 3
His IPE has him attending Texas State University and wherein he has housing available to him.
00:44:27 Speaker 3
Okay.
00:44:28 Speaker 3
It paid for by the vocational rehabilitation program as well as a meal plan.
00:44:34 Speaker 3
And so that is secure.
00:44:36 Speaker 3
Nothing's going to happen to May 1st.
00:44:38 Speaker 3
Nothing's going to happen June 1st as long as Mr.
00:44:40 Speaker 3
Short remains
00:44:42 Speaker 3
in school full-time.

00:44:44 Speaker 3
That is all.
00:44:45 Speaker 3
Summer school, fall and spring.
00:44:49 Speaker 3
As long as he's in school, then that continues.
00:44:52 Speaker 3
If at some point he decides, I want to transfer somewhere else, then that can be discussed between Mr.
00:44:59 Speaker 3
Short and a counselor, a VR counselor, and they can together make a decision about how that's going to happen.
00:45:06 Speaker 3
I don't know if you've applied to other schools already and you've been accepted somewhere to meet some timeline that you believe needs to be made by May the 1st.
00:45:19 Speaker 3
If that has already happened, I'd be interested in knowing where you've been accepted and that they're ready for you to come.
00:45:25 Speaker 3
If that's so, then has there been no discussion with counselor about your housing there?
00:45:32 Speaker 3
because before we're going to pay for you to go there, we'd want to discuss how you're going to do housing yourself.
00:45:39 Speaker 3
Are we going to help?
00:45:39 Speaker 3
What's it going to be?
00:45:42 Speaker 3
So and all that takes time.
00:45:43 Speaker 3
That takes time for planning.
00:45:46 Speaker 3
So I don't understand what the emergency is.
00:45:55 Speaker 3
I'm willing to understand what the emergency is if there is one, but I don't know that there is one.
00:46:00 Speaker 3
And so
00:46:01 Speaker 3

And we do want to act quickly on your behalf where it's appropriate and where we're able.
00:46:09 Speaker 3
But right now, as far as we're concerned, I'm looking at your IPE and you're covered through May of 2027.
00:46:17 Speaker 3
As long as you remain in school at Texas State University, there's no, I don't see an issue.
00:46:26 Speaker 2
Well, I've sent correspondence to you.
00:46:29 Speaker 2
several different times regarding this, including attempts to actual settlement and negotiation, which have gone unanswered.
00:46:38 Speaker 3
Mr.
00:46:38 Speaker 3
Short, do you really want me to address what you've sent me here in front of the IHO right now?
00:46:43 Speaker 3
Because it won't make you look very good.
00:46:46 Speaker 1
I will stop that.
00:46:47 Speaker 1
I will tell you right now, both of you have filed my orders and provided me with
00:46:52 Speaker 1
e-mail communications that are not appropriate for me to have on the record or to consider.
00:46:57 Speaker 1
And I will not consider them.
00:46:59 Speaker 1
I will not consider settlement negotiations.
00:47:02 Speaker 3
That's why I asked the question.
00:47:04 Speaker 1
There will be probably in my decision if we ultimately go to a hearing, there will be a statement there.
00:47:09 Speaker 1
I did not consider any settlement negotiations, whether or not they were filed in violation of my order.
00:47:17 Speaker 1

What I'm telling you to is please try to work this out.
00:47:22 Speaker 1
I understand that Mr.
00:47:23 Speaker 1
Short's IPE is through May of next year.
00:47:26 Speaker 1
He has housing at Texas State.
00:47:29 Speaker 1
As long as he's a full-time student, he believes there's a deadline he needs to do something.
00:47:33 Speaker 1
I need for the agency to work with Mr.
00:47:36 Speaker 1
Short off the record after this hearing.
00:47:40 Speaker 1
I don't think I have authority to take action based on what Mr.
00:47:43 Speaker 1
Short is telling me.
00:47:45 Speaker 1
And if he has to file something with the court, I can't even give him authority for that.
00:47:52 Speaker 1
He can do what he needs to do to protect his rights.
00:48:02 Speaker 1
All right, so Mr.
00:48:05 Speaker 1
Short, in your statement,
00:48:07 Speaker 1
You also indicated that you were asking for a transcript.
00:48:11 Speaker 1
Is that correct?
00:48:12 Speaker 1
And you're asking the state to pay for it.
00:48:15 Speaker 2
Well, yes, basically all you have to do is turn on a button on your software and auto generates A transcript for you.
00:48:23 Speaker 2
So I don't think that's an unusual or it says a burden for the state.
00:48:28 Speaker 1
All right.
00:48:29 Speaker 1

So it's my understanding that Ms.
00:48:31 Speaker 1
Collins provided you with a copy of Florida Texas Administrative Code Rule 850.78 yesterday.
00:48:40 Speaker 1
And it provides, this is not the agency, this is the Texas law legislature.
00:48:46 Speaker 1
If you've got a problem, talk to the legislature.
00:48:51 Speaker 1
But it requires only
00:48:53 Speaker 1
an audio recording and you have the right to get a transcript Mr.
00:48:58 Speaker 1
short but it's at your cost so if you're asking that there be a transcript from today's proceeding I don't get a transcript you don't get a transcript I have to listen to the audio again as as I did when I read all the motions yesterday I went back and listened to the entire status conference that we held on the 24th um so you're asking me to
00:49:23 Speaker 1
set aside Texas law.
00:49:26 Speaker 1
And I don't think I have the authority to do that.
00:49:31 Speaker 1
You have the right to, you have the audio, correct?
00:49:34 Speaker 1
You were provided with the audio of the pre-hearing conference and last week's status conference, is that correct?
00:49:40 Speaker 2
No, I don't actually have the file itself.
00:49:43 Speaker 2
So that's something else I could generate the transcript myself if I actually had access to the file.
00:49:48 Speaker 2
But what I'm given is I'm given like remote access to the playback.
00:49:53 Speaker 2
Okay, so which isn't even, doesn't even meet the requirements under the current.
00:49:58 Speaker 1
That is the official record.
00:50:00 Speaker 1
If you look at 850.78, that is the official recording.
00:50:05 Speaker 1

So I don't understand.
00:50:07 Speaker 1
If you were provided with that through SharePoint, it was too large to just send by e-mail.
00:50:12 Speaker 1
Did you not download it?
00:50:14 Speaker 2
It won't let me download it.
00:50:15 Speaker 2
That's the problem.
00:50:16 Speaker 2
If I could download it, I could do this myself.
00:50:20 Speaker 1
All right.
00:50:21 Speaker 1
So will you reach out to Ms.
00:50:23 Speaker 1
Collins or she can have the IT department?
00:50:27 Speaker 1
You need to be able to have access to that.
00:50:29 Speaker 1
I didn't realize that was an issue.
00:50:31 Speaker 1
I thought you had been able to download the audio.
00:50:35 Speaker 1
All right.
00:50:36 Speaker 1
So you're telling me that if you get the audio, you'll be able to have your own transcription done?
00:50:42 Speaker 1
Perfect.
00:50:43 Speaker 1
I think that solves the problem that you've raised.
00:50:49 Speaker 1
So a separate transcript will not be provided.
00:50:53 Speaker 1
And so to the extent there's that request, that's denied.
00:50:55 Speaker 1
But yes, we need to have a copy of the audio.
00:51:00 Speaker 2

Ms.
00:51:00 Speaker 2
Collins has a question, I think.
00:51:03 Speaker 1
Yes, Ms.
00:51:03 Speaker 1
Collins.
00:51:04 Speaker 1
I provided the audio to Mr.
00:51:06 Speaker 1
Short.
00:51:07 Speaker 1
I'm not sure what else I can do to help him obtain access to that.
00:51:13 Speaker 1
So Mr.
00:51:14 Speaker 1
Short, maybe you can give me a little bit of a description as to I've used SharePoint before when appellants file large documents and they can't be sent by e-mail.
00:51:25 Speaker 1
I'm able to access it.
00:51:26 Speaker 1
Tell me why you...
00:51:28 Speaker 2
I don't know why.
00:51:29 Speaker 2
I mean, that's even what I, you know, sent to Ms.
00:51:32 Speaker 2
Collins herself.
00:51:33 Speaker 2
Basically, I can play it back remotely, but there's no, it will not let me download a copy of it.
00:51:40 Speaker 2
So that's from that's where my impasse is coming, is that the tools I have that can generate a transcript actually need to have the physical file itself, not some type of remote viewer, which is kind of like I'm presenting like a remote viewer.
00:51:55 Speaker 2
So I can replay the entire conference without actually having the file itself, which I've never encountered this in SharePoint either.
00:52:05 Speaker 2
So apparently there's some type of a permission setting.

00:52:09 Speaker 2
That's denying me the ability to download the file.
00:52:11 Speaker 1
All right, Ms.
00:52:15 Speaker 1
Collins, you still have your hand raised.
00:52:17 Speaker 1
Is there anything?
00:52:19 Speaker 1
Yes.
00:52:19 Speaker 1
That is correct.
00:52:20 Speaker 1
There is, it is locked from editing and that's to protect the integrity of the recording.
00:52:28 Speaker 2
But I should still be able to take a snapshot or a copy of what currently exists.
00:52:32 Speaker 2
I mean, I definitely don't have any need to edit or change, you know, the recording itself.
00:52:41 Speaker 1
Mr.
00:52:42 Speaker 1
Short, do you have a program where you can run the audio recording and also record it on a different program so that you can then transcribe it?
00:52:54 Speaker 2
I don't think I can do that right now with the permission settings that's currently in place.
00:52:58 Speaker 1
So if you have on your screen, I know you said that you have multiple monitors.
00:53:02 Speaker 1
So if I were to play an audio and I have other programs that could, as that audio was playing through my computer and all my, through my computer, I can record it via another device.
00:53:17 Speaker 1
Do you need another program?
00:53:19 Speaker 2
I haven't tried that because I felt like that was almost in violation of what your...
00:53:24 Speaker 2
process was.
00:53:25 Speaker 2
I mean, I'm not trying to, because I think we have some rules and they're saying we're not supposed to make separate copies or recordings.

00:53:31 Speaker 2
And so I was trying to adhere to the letter or the liberal there.
00:53:34 Speaker 2
But if there's a way to do it, I'm more than happy to explore it.
00:53:39 Speaker 1
I don't have a problem with that.
00:53:40 Speaker 1
It is a problem when we're having the here and to this now and you and someone is audio recording it or video recording it.
00:53:48 Speaker 1
That's the problem.
00:53:51 Speaker 1
All right, I will confer with Ms.
00:53:53 Speaker 1
Collins, if you can, Mr.
00:53:56 Speaker 1
Short, see what you can do on your end.
00:53:58 Speaker 1
There's gotta be a way that we can get you what you need so that you can see it in writing.
00:54:04 Speaker 1
Let me go back to my outline of things that we still need to address.
00:54:17 Speaker 1
All right.
00:54:18 Speaker 1
Mr.
00:54:19 Speaker 1
Short, as I have requested last week, you did provide me with a list of pending motions.
00:54:24 Speaker 1
My records correspond to your records.
00:54:28 Speaker 1
The case file has not been produced to you in full yet, so I will carry those motions and the agency's response.
00:54:38 Speaker 1
Your motion to require them to produce it, sanctions, et cetera, those will be carried to another hearing.
00:54:48 Speaker 1
I'm not ready to rule on this yet because we're not at a, I think they're premature at this point.
00:54:56 Speaker 1

Mr.
00:54:56 Speaker 1
Short, what other matters have we not discussed yet?
00:55:03 Speaker 2
Other than what I've already sent you in that correspondence, I have nothing else for you to add at this point.
00:55:11 Speaker 1
All right.
00:55:12 Speaker 1
Let's let's talk about your letter before we end.
00:55:15 Speaker 1
Let's talk about your letter or your e-mail that was sent to Miss Collins on April 23rd, 2026 at 5:17 in the morning.
00:55:24 Speaker 1
It was addressed to June Mann, Impartial Hearing Officer, Office of the General Counsel, Melissa Collins, be our Hearings Coordinator, Michael Marler, Interim Deputy Regional Director, and
00:55:39 Speaker 1
Is it Selah Mendoza?
00:55:44 Speaker 1
All right, so there are a number of assertions in there that concern me and I wanted to get further input.
00:55:52 Speaker 1
First of all, Mr.
00:55:54 Speaker 1
Short, the Office of General Counsel should never be copied on anything that's sent to me and or to the hearings coordinator.
00:56:03 Speaker 1
I'm an independent hearing officer.
00:56:05 Speaker 1
They have no control over my decision or my rulings or
00:56:09 Speaker 1
any input whatsoever.
00:56:10 Speaker 1
I'm totally independent.
00:56:12 Speaker 1
So it was inappropriate.
00:56:14 Speaker 1
So please don't do that in the future.
00:56:17 Speaker 1

You've indicated that either miss that TWC or its employees is concealing documents, motions, and that there's ex parte communication.
00:56:29 Speaker 1
So please explain what documents, motions are being concealed and what ex parte communications there are.
00:56:37 Speaker 2
I identified that in my pleading regarding this matter.
00:56:42 Speaker 1
I need you to tell me on the record, not in a pleading, but I want you to verbally tell me what documents motions are being concealed.
00:56:54 Speaker 2
I can't say what's being concealed if it's by definition if it's being concealed.
00:56:58 Speaker 2
So, but the fact is that I requested an index of what's currently on the record, which was denied.
00:57:07 Speaker 2
And so that was a shock to me.
00:57:09 Speaker 2
I've never had that happen before.
00:57:13 Speaker 2
The actual ex parte communications is in your own e-mail transcriptions.
00:57:18 Speaker 2
where Mr.
00:57:19 Speaker 2
Marler was or Director Marler was corresponding with the hearing coordinator and not including me in those in those correspondences.
00:57:31 Speaker 1
I went back and looked at him and you were copied on that correspondence that you were referencing.
00:57:36 Speaker 1
So I don't understand what ex parte communication there was.
00:57:42 Speaker 1
Your e-mail address was included and you had a copy of it.
00:57:48 Speaker 2
OK, give me a moment 'cause I wasn't realizing that I had to pull this up verbatim, but give me a moment, I'll find it.
00:57:56 Speaker 1
OK, Cortana.
00:58:44 Speaker 2

Sorry, this is a little bit of process because I have to open up each and every one of the emails that I received from the hearings coordinator.
01:00:13 Speaker 1
I believe you sent a filing on April 6th at 8:15 to Ms.
01:00:21 Speaker 1
Collins.
01:00:22 Speaker 2
Yes.
01:00:23 Speaker 1
And it references objection to ex parte communication.
01:00:30 Speaker 2
Yes.
01:00:30 Speaker 2
So it was during that timeframe of April the 3rd through April the 6th.
01:00:57 Speaker 1
All right, ex parte means that the other party is not aware of it.
01:01:01 Speaker 1
That's correct.
01:01:02 Speaker 1
So if you were included, so you were not included on an e-mail.
01:01:06 Speaker 2
Yes, that's correct.
01:01:10 Speaker 1
And what is the date and time of the e-mail from this tomorrow?
01:01:13 Speaker 2
I'm trying to go through and find it right now.
01:01:56 Speaker 2
I'm sorry, I don't need more time to find it.
01:01:58 Speaker 1
Okay, we can take, we're going to have another status conference.
01:02:02 Speaker 1
So yes, if you will be ready to address that.
01:02:05 Speaker 1
All right, the next item you said is that TWC, the Office of General Counsel or I are operating a shadow docket.
01:02:16 Speaker 1
And we have tainted evidentiary records.
01:02:18 Speaker 1
So please explain.
01:02:21 Speaker 1

What evidence do you have regarding a shadow docket or tainted evidentiary record?
01:02:26 Speaker 2
Well, the fact that you won't provide me an index of what you consider as like actually filed or not, that's what would actually help me be able to go through and identify what's being, you know, entered into the record that I'm not aware of.
01:02:39 Speaker 1
Mr.
01:02:40 Speaker 1
Short, you're the only one filing motions.
01:02:42 Speaker 1
I'm not aware of TWC filing a single motion up to this point.
01:02:46 Speaker 1
Are you not aware of what you filed on the record?
01:02:49 Speaker 2
I am aware of what I filed.
01:02:50 Speaker 2
I'm not aware of what's being considered filed by Director Marler, especially when, you know, it's items that he sends are all just or via e-mail.
01:03:02 Speaker 2
So they're actually on the record as well.
01:03:05 Speaker 2
And those are some of the items that
01:03:07 Speaker 2
where he's forwarded, actually, exact copies of my efforts to, just, for settlement terms.
01:03:18 Speaker 2
And so those are things that I need to see so that way I know.
01:03:20 Speaker 1
But you included them in the record and you're pleading.
01:03:24 Speaker 1
So I'm not sure.
01:03:26 Speaker 2
I have not included my settlement terms in anything I filed.
01:03:29 Speaker 1
But you've referenced and included his communications and discussed them at late.
01:03:34 Speaker 1
So you don't have any, what I'm hearing you say, if you don't have any evidence that there is a shadow docket or tainted evidentiary record, you're just making that assumption?
01:03:43 Speaker 2
That's correct.

01:03:44 Speaker 1
Okay.
01:03:45 Speaker 1
So you said there's a hidden case file.
01:03:47 Speaker 1
Again, do you have any evidence that there's a hidden case file?
01:03:51 Speaker 2
The only way I can have any conclusive evidence one another is actually have a listing of what's currently considered on the docket.
01:04:02 Speaker 1
Since I'm continuing to strike pleadings, it's not considered part of the docket.
01:04:06 Speaker 1
So, and in these proceedings, we typically, they don't, it's not like state court.
01:04:11 Speaker 1
I mean, I know you've referenced multiple times that you, this is not, as you said in your recent correspondence, this is not my first administrative or civil proceeding.
01:04:20 Speaker 1
This is an administrative proceeding.
01:04:22 Speaker 1
They don't keep an official docket.
01:04:24 Speaker 1
So I'm not going to require
01:04:29 Speaker 1
Miss Collins to create something.
01:04:31 Speaker 1
All of the evidence that I consider at the hearing will be included in my decision.
01:04:37 Speaker 2
Okay, so I wasn't aware that you didn't have an official docket or listing of what you have admitted and not admitted.
01:04:44 Speaker 2
So, you know, I wasn't aware.
01:04:48 Speaker 2
I presumed that you actually had some type of a formal record keeping system in place.
01:04:53 Speaker 1
I don't know.
01:04:56 Speaker 1
The records are kept by the Office of General Counsel.
01:04:59 Speaker 1

I know what's been filed in the case because I have my own notebook, but there's not, I'm not aware of any case file and this is not a case that has, as you, if you have been in federal court, a pacer, you could go on to pacer.
01:05:13 Speaker 1
We don't are in state court when you have an image docket.
01:05:16 Speaker 1
That's, it's not elector.
01:05:18 Speaker 1
That's not how it's handled.
01:05:24 Speaker 1
When I do my decision, I will list all of the pleadings that were considered by me, all the pleadings that were struck, that will all be included in my decision.
01:05:35 Speaker 1
There is no hidden file and no one is keeping anything from you.
01:05:40 Speaker 1
If you don't know what you have filed, you of course can always reach out to Ms.
01:05:44 Speaker 1
Collins and say, this is what I showed that's been filed, you know, is this what, do you have copies of all this?
01:05:52 Speaker 1
Other than the motion that I'm anticipating from Mr.
01:05:54 Speaker 1
Marler within the next two days that I've ordered the agency to file, they've not filed any motions.
01:06:01 Speaker 1
So the only motions on the record at this point for your motions.
01:06:05 Speaker 1
All right.
01:06:06 Speaker 1
You also referenced in that e-mail, again, dated April 23rd at 517 in the morning.
01:06:13 Speaker 1
that you will be filing a complaint with the United States District Court of the Western District of Texas, and you've already submitted a formal complaint to the US Department of Labor Civil Rights Center.
01:06:29 Speaker 1
Again, that should not be referenced in any pleadings.
01:06:34 Speaker 1
It appears, it makes it appear, Mr.
01:06:36 Speaker 1
Short, that you're trying to influence my decision or influence

01:06:40 Speaker 1
my impartiality.
01:06:43 Speaker 1
You have whatever rights you have.
01:06:45 Speaker 1
If you aren't happy with the decisions of the hearing officer or the process, you have your rights.
01:06:52 Speaker 1
You just don't need to tell me about it and put them of record on this case.
01:06:57 Speaker 2
Very well.
01:07:00 Speaker 1
All right, that was, I believe, the last thing that I wanted to discuss.
01:07:06 Speaker 1
Mr.
01:07:07 Speaker 1
Short.
01:07:09 Speaker 1
What other matters do we need to discuss today?
01:07:16 Speaker 2
If I can't think of any right now, does that waive my right to raise them later?
01:07:23 Speaker 1
It does not.
01:07:26 Speaker 2
Right now, I can't think of any off the top of my head.
01:07:29 Speaker 1
Mr.
01:07:29 Speaker 1
Marler, anything else that you can think of today?
01:07:32 Speaker 3
Yes, ma'am.
01:07:35 Speaker 3
We have two identical dockets open.
01:07:39 Speaker 3
We've got 27 and 31, and I was hoping that we could consolidate those.
01:07:46 Speaker 1
No, I've already issued an order saying no.
01:07:49 Speaker 3
Okay.
01:07:50 Speaker 1

If you need Ms.
01:07:53 Speaker 1
Collins, she can resend you the order.
01:07:55 Speaker 1
It's one of the orders that I entered.
01:07:57 Speaker 1
Mr.
01:07:58 Speaker 1
Short has filed a number of motions in this matter, and I believe that it's needlessly multiplying the complexity of this appeal, and it's causing increase in costs.
01:08:11 Speaker 1
I will not be expanding it.
01:08:13 Speaker 1
I believe that the issue in 2026-31
01:08:18 Speaker 1
is separate.
01:08:19 Speaker 1
It is a very limited period of time.
01:08:22 Speaker 1
The issue is whether when the appeal was filed in 2026-27, whether there was a denial, suspension, or termination of services regarding his visual impairment status.
01:08:37 Speaker 1
And that would have been from the date of the filing of this appeal to the date of the filing of that appeal.
01:08:45 Speaker 1
Very narrow.
01:08:46 Speaker 1
So we will hear that one separately.
01:08:48 Speaker 1
I will not consolidate.
01:08:53 Speaker 1
We could have the hearings back-to-back, but I want two different records.
01:09:01 Speaker 1
So I believe that we have a pre-hearing conference and that one's set for next week.
01:09:08 Speaker 1
That one's set for Tuesday, the 5th at 10 a.m.
01:09:12 Speaker 1
That should be a short pre-through conference.
01:09:20 Speaker 1
All right, so at this point, to summarize, Mr.

01:09:27 Speaker 1
Mormer, you are to file your motion by, I'm sorry if I'm not talking loud.
01:09:32 Speaker 1
You're typically by Friday.
01:09:35 Speaker 1
at 5 p.m.
01:09:36 Speaker 1
Mr.
01:09:37 Speaker 1
Short has indicated that you only needed 24 hours.
01:09:40 Speaker 1
I'm allowing him until Monday the 4th at 5 p.m.
01:09:43 Speaker 1
to file his response.
01:09:44 Speaker 1
If I determine a hearing on the motion and responses necessary, Ms.
01:09:50 Speaker 1
Collins will reach out to you next week.
01:09:51 Speaker 1
Otherwise, I will issue an order.
01:09:53 Speaker 1
Mr.
01:09:53 Speaker 1
Short has indicated today he will be requesting a 30-day extension of the 60-day hearing deadline so we can figure out where we are next week.
01:10:05 Speaker 1
I've requested the two of you to talk after this pre-hearing conference to address Mr.
01:10:12 Speaker 1
Short's issue regarding his tuition and whether or not he's staying at the school, et cetera.
01:10:17 Speaker 1
Again, I don't have any authority to rule on that.
01:10:19 Speaker 1
I don't think that's encompassed within this appeal, but I understand that Mr.
01:10:24 Speaker 1
Short believes this to be an urgent matter and I shouldn't have to tell the two of you to try to communicate to work through that issue.
01:10:32 Speaker 3
Absolutely.
01:10:34 Speaker 1

I we can address the audio recording again during the pre-hearing in the 312026-31 next week.
01:10:45 Speaker 1
I understand Mr.
01:10:46 Speaker 1
Schwartz concern about trying to get a transcription.
01:10:52 Speaker 1
I will talk to Ms.
01:10:52 Speaker 1
Collins.
01:10:54 Speaker 1
And if there's any update, we can discuss that next week.
01:10:58 Speaker 1
I think that's everything.
01:11:00 Speaker 1
Mr.
01:11:00 Speaker 1
Short, you may, if there's something that needs my attention, file something, but again, filing continuous, continuous motions, I believe that's just multiplying the complexity of this appeal and it's increasing cost and it's not helpful.
01:11:17 Speaker 1
So I warn you to be careful what you're filing.
01:11:21 Speaker 1
I will issue another order limiting pleadings if I have to.
01:11:27 Speaker 1
In other cases, I have
01:11:29 Speaker 1
Appellants have been required to file pleadings only one day of the week.
01:11:34 Speaker 1
And again, I ask both of your patience, I am not a full-time hearing officer.
01:11:39 Speaker 1
There may be a delay in the time that you file a motion and the time it gets to me.
01:11:44 Speaker 1
You need to allow me reasonable time to rule.
01:11:47 Speaker 1
So don't file multiple motions that I'm not ruling or Ms.
01:11:51 Speaker 1
Collins is not responding to something fast enough because this isn't the only thing she hears as well.
01:11:59 Speaker 1

Right.
01:12:00 Speaker 1
So with that being said, Mr.
01:12:02 Speaker 1
Short, we'll expect that e-mail from you.
01:12:06 Speaker 1
And again, we will figure out where we are next week once I see the motion and Mr.
01:12:10 Speaker 1
Short's response.
01:12:17 Speaker 1
Mr.
01:12:18 Speaker 1
Marler, you'll make sure that physical file and that physical file and the PDF files will be sent to Mr.
01:12:23 Speaker 1
Short as directed.
01:12:24 Speaker 3
Yes, ma'am.
01:12:25 Speaker 3
Yes, ma'am.
01:12:26 Speaker 1
All right, Mr.
01:12:27 Speaker 1
Short, last opportunity.
01:12:29 Speaker 1
Anything else we need to address today?
01:12:33 Speaker 2
I know you want to try to get this locked down, and I do understand that.
01:12:39 Speaker 2
I do.
01:12:40 Speaker 2
I do.
01:12:41 Speaker 2
Let me just point out that in my request, my motions for discovery, it didn't solely center on just my case file.
01:12:48 Speaker 2
There were some other issues, items also I needed as well that should already be in an accessible format that should have been easy for them to deliver.
01:12:56 Speaker 2

I can refresh the memory of the parties by sending you a new update of what I asked for or needed.
01:13:05 Speaker 1
Well, just tell me on the record.
01:13:06 Speaker 1
I don't want another pleading.
01:13:08 Speaker 1
I can go back and look at it, but if you've got that right in front of you on your monitor, if you could just.
01:13:13 Speaker 2
Do it.
01:13:13 Speaker 2
I don't have it, but I know there's things, for example, I asked for the manual for rehab works to actually see what the capabilities of that is as far as the export capabilities.
01:13:25 Speaker 2
in order to assist, getting things into a format that I could actually utilize.
01:13:31 Speaker 2
There's also a list of the financials that was associated with my account that I have not received.
01:13:37 Speaker 2
So as far as a list of essays and things of that nature, that should be like an Excel spreadsheet or something, I think.
01:13:45 Speaker 2
Okay, so.
01:13:46 Speaker 1
What are you talking about the financials?
01:13:48 Speaker 1
Because I don't remember that being part of the issue.
01:13:52 Speaker 1
on this appeal?
01:13:53 Speaker 1
What financial?
01:13:55 Speaker 2
Sure, it was clearly an issue that I raised in my filings.
01:14:03 Speaker 2
It has to do, and even, you know, Mr.
01:14:06 Speaker 2
Director Mara has even asked me for receipts, you know, that I've claimed that haven't been paid or covered.
01:14:12 Speaker 2

Okay, so part of it has to do with also the mischaracterization of some of the items that's in my
01:14:20 Speaker 2
records, which I can't see any of that.
01:14:23 Speaker 2
That's what's confusing to me is that whatever they sent me, you know, I don't see any financial recordings or organization that keeps track of this.
01:14:36 Speaker 2
But whenever I've raised the issue with TWCVR, they seem to quote something.
01:14:45 Speaker 2
That, and I don't know what it is.
01:14:47 Speaker 2
That's what's confusing to me is like, because whatever the quoting is false, so I know that there's something that's in there that I need to get corrected and fixed to actually get us back on the same sheet of music.
01:14:57 Speaker 1
So are you looking for a list of expenditures that were made in connection with your services on an Excel spreadsheet?
01:15:06 Speaker 2
Well, or anything really at this point, you know, so.
01:15:10 Speaker 3
This is part of this is part of us sending you your entire case file.
01:15:14 Speaker 2
Okay.
01:15:14 Speaker 3
This is coming.
01:15:18 Speaker 2
Okay.
01:15:18 Speaker 1
All right.
01:15:18 Speaker 1
So, Mr.
01:15:19 Speaker 1
Short, let's table that.
01:15:22 Speaker 1
As I said, you're right.
01:15:23 Speaker 1
I do want to wrap this up.
01:15:24 Speaker 1
I want to get to the administrative hearing if the issues cannot be resolved.

01:15:31 Speaker 1
This process was meant to be an expedient and efficient process, and we keep hitting speed bumps.
01:15:38 Speaker 1
I want to get to the final hearing so that we can resolve these issues and have a decision issued.
01:15:45 Speaker 1
But Mr.
01:15:46 Speaker 1
Short, if you will hold your concerns until Mr.
01:15:50 Speaker 1
Marler produces the physical file, the PDF files, and I rule on the motion that's going to be filed by Mr.
01:15:57 Speaker 1
Marler in the next two days.
01:15:59 Speaker 1
We can readdress it.
01:16:01 Speaker 1
If there's documents that you believe are not included in that, we can address that.
01:16:08 Speaker 1
I want to make sure you get what you need within reason.
01:16:12 Speaker 1
Not everything that an appellant may ask for, they may not get.
01:16:16 Speaker 1
And if we have to take it item by item, I'm happy to do that.
01:16:19 Speaker 1
I'm just not there yet.
01:16:20 Speaker 1
As I hear Mr.
01:16:21 Speaker 1
Marler saying, let's wait till it's produced and then we can just decide what may be missing, Mr.
01:16:27 Speaker 1
Short, that you need.
01:16:29 Speaker 1
Mr.
01:16:29 Speaker 1
Short, and I wanted to also say, I believe that I requested Mr.
01:16:35 Speaker 1
Short to produce those maintenance receipts by Monday, May 4th at 5 P.m.

01:16:42 Speaker 1
If you'll do that as well, Mr.
01:16:43 Speaker 1
Short.
01:16:44 Speaker 1
All right.
01:16:46 Speaker 1
We're in limbo.
01:16:48 Speaker 1
I will try to get a rolling on Mr.
01:16:53 Speaker 1
tomorrow's motion that's gonna be filed soon, you know, after considering Mr.
01:16:57 Speaker 1
Short's response.
01:16:59 Speaker 1
As I said, if we need hearing, we'll schedule that.
01:17:03 Speaker 1
Mr.
01:17:03 Speaker 1
Short, nothing else at this point?
01:17:05 Speaker 1
All right.
01:17:07 Speaker 1
It's now 1117 on April 29th, 2026.
01:17:13 Speaker 1
And this will conclude today's status conference.
01:17:15 Speaker 1
Thank you, gentlemen.
01:17:17 Speaker 3
Thank you.