**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| **MARK L. SHORT,**<br><br>Plaintiff,<br><br>v.<br><br>**TEXAS WORKFORCE COMMISSION,**<br><br>**MICHAEL MARLER,** in his official capacity as Interim Deputy Regional Director,<br><br>**TANISHA PICKNEY,** in her official capacity as Vocational Rehabilitation Counselor**,**<br><br>Defendants. | Civil Action No: 1:26-cv-01174-ADA-DH |

# PLAINTIFF'S EXPEDITED MOTION FOR SANCTIONS AND RETURN OF SEIZED PROPERTY

## TO THE HONORABLE COURT:

Plaintiff Mark L. Short, proceeding pro se, respectfully files this "Motion for Sanctions and the Return of Seized Property" against the Defendants and their Vendor-Agents.

## I. JURISDICTION AND AUTHORITY

Pursuant to Fed. R. Civ. P. 37(b)(2) (governing sanctions for failure to obey discovery obligations, including requests to prohibit contradictory evidence) and Fed. R. Civ. P.

37(e) (governing the failure to preserve tangible evidence when a party acts with an "intent to deprive"), Plaintiff seeks immediate relief.

Furthermore, the Court possesses the inherent power to fashion punitive sanctions for bad-faith conduct outside direct discovery orders. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–51 (1991). The Fifth Circuit broadly authorizes severe spoliation sanctions when a party alters or destroys evidence in pending or reasonably foreseeable litigation. *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015). Such bad-faith intent to conceal adverse evidence via destruction can be established through circumstantial evidence, such as ignoring explicit written preservation notices. *Van Winkle v. Rogers*, 2023 WL 5994138 (5th Cir. Sept. 15, 2023).

## II. BAD ACTS

Accordingly, Plaintiff is seeking sanctions based on the following:

### 1. Spoliation of Physical and Documentary Evidence

The intentional destruction, discard, and unauthorized conversion of your BVI vocational assets, academic records, and environmental evidence removed from Balcones Unit 3414 after July 17, 2026. This includes seeking an adverse inference instruction and monetary penalties for the failure to preserve evidence despite explicit, repeated written preservation notices and pending federal litigation holds.

### 2. Willful Violation of Discovery and Preservation Obligations

The State has continued to refuse to provide an itemized inventory log, transit manifests, or chain-of-custody accounting for the items seized and partially destroyed by Texas State University Residence Life and the University Police Department (UPD).

### 3. Bad-Faith Obstruction and Retaliatory Displacement

Based on the State's refusal to provide emergency freight funding or neutral case management while simultaneously weaponizing Plaintiff’s lack of physical presence (caused by the manufactured account deficit pretext for the May 20 eviction) to execute a fraudulent "abandoned property" disposal.

## III. NATURE OF EMERGENCY

- Judicial intervention is required immediately to halt the ongoing, documented spoliation of evidence and to prevent the imminent destruction of the remaining seized property.
- On July 21, 2026, Defendants admitted in writing to the permanent disposal of Plaintiff's property categorized internally by the State as "low value," which included specific physical evidence of an inaccessible environment and federally protected Blind/Visually Impaired (BVI) vocational assets. [ECF 26-1]
- Furthermore, Defendants formally stated that all remaining property transferred to the University Police Department (UPD) will be permanently discarded after a 60-day hold period initiated on **July 17, 2026**
- This artificial, state-mandated destruction deadline expires on or about **September**

**15, 2026.**

- Standard federal briefing schedules under Local Rule CV-7 cannot arrest this timeline before the Defendants execute the final destruction of the evidentiary record.
- This expedited relief is necessary to freeze the 60-day UPD disposal clock, secure the surviving assets, and sanction the State for the willful spoliation already executed in direct defiance of an active federal litigation hold.

## IV. INTRODUCTION

- Plaintiff is a qualified individual with a disability under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 et seq., as amended by the Americans with Disabilities Act Amendments Act of 2008 (ADAA).
- Plaintiff has been participating in the Texas Workforce Commission's Vocational Rehabilitation (TWC-VR) program, subject to an Individual Plan for Employment (IPE) [1] since 2024.
- Defendants have executed the destruction, permanent deprivation, and total spoliation of Plaintiff's physical property, previously seized and held at Balcones 3414 in San Marcos, Texas, following a forced eviction on May 20, 2026. **To be clear, approximately 99% of all physical property owned by Plaintiff was**

[1] An Individualized Plan for Employment ("IPE") is a statutory agreement under Title I of the Rehabilitation Act of 1973 (29 U.S.C. § 722) between a state vocational rehabilitation agency and an eligible individual with a disability, specifying the employment goals, required support services, accommodations, and funding commitments mandated to achieve competitive integrated employment.

**seized, held, and/or destroyed during this operation**.

- This total deprivation occurred during active federal litigation, well after Defendants were served with a formal litigation hold, and with full knowledge of Plaintiff's In Forma Pauperis (IFP) status and the active federal docket. This conduct constitutes textbook spoliation, deployed as an administrative tactic to cause maximum personal, physical, and vocational paralysis.

## V. FACTUAL BACKGROUND

### 1. Plaintiff Assets Subject to Seizure / Destruction

- **Critical Vocational and Educational Assets**

  Specialized equipment, tools, assistive technology and educational materials authorized under the Plaintiff's IPE necessary for academic and vocational completion.

- **Active Litigation Evidence**

  Physical documentation, education records, notes and digital storage devices and evidence directly tied to the institutional interference, accommodation denials, and civil rights claims.

- **Personal Effects and Housing Property**

  Clothing, kitchenware, luggage, bedding, electronics, books, family albums, toiletries, cleaning supplies, food, medication and other living effects.

### 2. Notice and Duty

- On March 20, 2026: Defendants were served with a formal 48-Hour Cure Notice and Statement of Loss,[2] which functioned as a strict litigation hold on all records, communications, and physical property connected to Plaintiff's Title II and Rehabilitation Act claims.[3]
- On May 19, 2026: Defendants and their agents were provided further explicit notice of the active federal docket and physical conditions immediately prior to the eviction. [ECF 14 at p.7] (DECLARATION OF PLAINTIFF MARK SHORT)
- On June 15, 2026: Plaintiff contacted Defendant for emergency transit maintenance funding.[4] [5] [ECF 22-1]

### 3. Seizure

- On May 20, 2026: Plaintiff was subjected to a forced eviction by a tactical squad of armed university police, resulting in the illegal search and seizure of Plaintiff's personal and assistive property, which was subsequently detained at Balcones 3414 and the issuance of a Criminal Trespass Warning to not return to TXST. Defendants were served with actual notice of this realized harm, and retaliatory lockout the following day. [ECF 16]

---

2 See Exhibit D, Exh_D_2026_03_20_Ntc_Lit_Hold_TWC_Hearing.pdf

3 *"This directive establishes the statutory obligations and discovery requirements triggered by the active Texas Workforce Commission (TWC) proceedings"*

4 *"I formally request that TWC-VR authorize and release emergency Transportation and Maintenance funds"*

5 *"This includes my personally purchased Blind/Visually Impaired (BVI) Assistive Technology (AT) academic records, and all standard collegiate living essentials currently seized at the Texas State University (TXST)"*

- On May 23, 2026: Following the eviction, Plaintiff immediately served a dedicated spoliation warning, legally binding the university to a strict federal litigation hold regarding all seized physical effects and suspending standard disposal policies.[6][7]
- On May 27, 2026: Plaintiff served a "NOTICE OF BAILMENT AND DEMAND FOR IMMEDIATE RETURN OF PERSONAL PROPERTY" on the Defendants.[8]
- On June 15, 2026: The state's designated agent formally threatened the unilateral disposal of the seized assets by June 18, 2026, while assessing artificial removal fees against the Plaintiff. [9]

## 4. Destruction/Deprivation

- Despite actual knowledge of the pending federal action (Cause No. 1:26-cv-01174-ADA-DH) and ongoing communications regarding the Individualized Plan for Employment (IPE), Defendants permitted the destruction or permanent, unrecoverable deprivation of this property.
- On July 14, 2026: The Defendants were served with an "Urgent Notice of Intent to Spoliate Evidence" regarding Cause No. 1:26-cv-1174-ADA-DH. This notice explicitly designated the physical items located at Balcones 3414 as protected litigation evidence and formally requested the immediate rescission of the administrative July 17 destruction deadline. [ECF 22-2]

---

[6] See Exhibit D, Exh_D_2026_03_20_Ntc_Lit_Hold_TWC_Hearing.pdf

[7] See Exhibit E, Exh_E_2026_05_23_Ntc_Lit_Hold_Spoliation_Warning.pdf

[8] *See* Exhibit F, Exh_F_2026_05_27_Ntc_Bailment_and_Dmd_for_assets.pdf

[9] See Exhibit G, Exh_G_2026_06_15_TXST_Aban_Prop_Ltr.pdf

- On July 15, 2026: Response from AAG Elizabeth Bryan wherein states she does not represent TXST and defers action regarding the impending July 17, 2026, deadline.[10][11]
- On July 16, 2026: Rather than the Defendants providing any assistance, the Defendants responded with a Vocational Services Letter, grounded in circular logic - effectively terminating IPE services. [ECF 23-1]
- On July 16, 2026 (2:24 PM CDT): Plaintiff issued a formal written rebuttal to AAG Bryan, explicitly rejecting the State's circular logic that services remained "open" when they could not be utilized due to a lack of enrollment caused by TWC's own breach. Furthermore, Plaintiff formally rejected the appointment of VR Supervisor TeShawn Ferguson as a point of contact due to an active conflict of interest, noting that Ms. Ferguson is a named respondent in pending Due Process Complaint Case ID: 2029765. [12]
- On July 17, 2026: Plaintiff reiterated their demand for the transit of their assets. [ECF 24-1]
- On July 21, 2026: The Plaintiff issued a direct “Cease and Desist” directive asserting federal jurisdiction over internal university policies regarding the active spoliation and unlawful conversion of these assets. [ECF 25-1]
- On July 21, 2026: Despite possessing actual knowledge of the federal preservation

---

[10] See Exhibit I, Exh_I_2026_07_17_EmailFrom_AAG_Re_Spoliation.pdf

[11] *“I am writing to inform you that I do not represent Texas State University” … “To that end, I have spoken with the TWC about the inquiry you sent yesterday, and I hope to get a response to you by the end of the day tomorrow.”*

[12] See Exhibit K, Exh_K_2026_07_20_Re_VRSvc_Ltr.pdf

hold, TXST Residence Life confirmed in writing that the internal disposal protocols were fully executed. High-value items were transferred to the University Police Department (UPD) under UPPS 05.01.20, while all remaining specialized vocational and academic assets were permanently discarded. [ECF 26-1]

- On July 21, 2026: Plaintiff served a "Request for Itemized Property Inventory" on Defendants. To date, Defendants remain non-responsive.[13]
- On July 22, 2026: Two days post Plaintiff's forceful eviction, TWC-VR issued a **$9,382.58** payment to TXST covering the delinquent Spring 2026 meal-plan and Balcones apartment charges. [14]

## VI. THE UNIFIED STATE APPARATUS (TWC + TXST)

There exists a tightly integrated administrative, contractual, and operational nexus that binds the Texas Workforce Commission - Vocational Rehabilitation (TWC-VR) directly to the Texas State University's (TXST) housing and educational infrastructure.

### 1. The Joint Enterprise and Agency Doctrine

- **Shared Statutory Mandates**

  Under Title II of the ADA (42 U.S.C. § 12131 et seq.) and Section 504 of the Rehabilitation Act (29 U.S.C. § 794), public entities and state agencies receiving federal financial assistance cannot contract away their statutory obligations to

[13] See Exhibit J, Exh_J_2026_07_31_Req_TXST_Prop_Inv.pdf

[14] See Exhibit B, Exh_B_TXST_Acct_Stmnt_MShort_Spring_2026.pdf

accommodate individuals with disabilities.

- **The IPE Bridge**

TWC-VR funded and formulated your educational path *at* TXST. The agency cannot claim that the physical campus, university housing (Balcones 3414), and university-administered support systems are alien entities when those exact locations were the designated operational environment mandated by the signed Individual Plan for Employment (IPE). By utilizing TXST housing and facilities to execute state-sponsored vocational rehabilitation, TXST and its personnel functioned directly as agents, instrumentalities, and administrative extensions of TWC-VR's service delivery framework.

## 2. Spoliation and Vendor/Agent Control

- **Direct Control Over Assets**

Approximately 99% of Plaintiff's physical property and BVI assistive technology were seized and is currently held or destroyed by TWC's designated education vendor/agent. Under federal law, Defendants cannot escape spoliation sanctions by delegating custody of Plaintiff's property to a third party or a co-defendant university.

- **Control and Custody Standard**

Under Fed. R. of Civ. P. 37, the duty to preserve extends to property in a party's possession, custody, or control. Because TWC-VR mandated Plaintiff's placement at Balcones 3414 via the IPE, TWC-VR shares joint operational custody of the physical assets housed therein.

## 3. The Legal Basis for Unifying TWC + TXST

- **Integrated State Program Delivery**

  TWC-VR and TXST function as a unified apparatus executing the (IPE). The State relies directly on TXST infrastructure, housing, and support services to deliver mandatory Title II and Section 504 rehabilitation benefits, establishing joint liability for operational and procedural defaults.

- **Causal Chain and Administrative Directives**

  The May 20, 2026, eviction and subsequent property disposition at Balcones were not isolated university actions; they were the direct downstream consequence of TWC-VR's administrative default, denial of accommodations, and failure to facilitate required transition support. TWC cannot hide behind university housing actions that were triggered by TWC's own service cuts and eligibility manipulations.

- **Joint Action / State Actor Nexus**

  Under federal civil rights frameworks, when a state agency (TWC) and a public university (TXST) coordinate to manage a student's education and support services, actions taken by university police or housing directors in tandem with or resulting from agency defaults are part of a continuous, unified transaction under color of state law.

## 4. Conclusion: TWC + TXST = A Unified Apparatus

- TXST operates as the contracted educational vendor and operational agent of

Defendant (TWC-VR) for the execution of Plaintiff's federal Individualized Plan for Employment (IPE).

- TWC-VR established this non-delegable agency relationship by issuing direct financial disbursements to TXST and formally conditioning the activation of IPE services entirely on TXST enrollment. The administrative and financial pipeline between the State and the University is indisputable; TWC-VR is formally invoiced as the paying entity for Plaintiff's education.[15]
- Even to the point of where TXST is continuing to fraudulently bill the Plaintiff **$6,190** for Fall 2026 dorm fees even post the May 20, 2026, forceful eviction and near total seizure of Plaintiff's entire personal estate.[16]
- Furthermore, TWC-VR directly funded the exact location of the spoliation, issuing a **$9,382.58** payment on May 22, 2026, which covered the Balcones apartment charges—a transaction completed a mere 48 hours after Plaintiff was forcefully evicted by the university.
- As TWC-VR's implementing agent, TXST's documented institutional interference, seizure of critical vocational assets at Balcones Unit 3414, and the May 20, 2026, forceful eviction constitutes direct, material breaches of the IPE.
- Furthermore, TWC-VR's systemic failure to cure these breaches upon formal notice constitutes legal ratification of its agent's conduct, permanently fusing the liability of both entities and exposing all named state and university personnel to joint and several liability for the resulting ADA Title II and constitutional violations.

---

[15] See Exhibit A, Exh_A_TXST_TWCVR_Invoice_MShort_Spring_2025.pdf

[16] See Exhibit C, Exh_C_TXST_Acct_Stmnt_MShort_Fall_2026.pdf

## VII. LEGAL STANDARD

Federal courts possess the inherent authority to sanction a party for the spoliation of evidence. In the Fifth Circuit, severe spoliation sanctions—such as adverse inferences, striking of pleadings, or default judgment—require a showing that:

1. The party having control over the evidence had a duty to preserve it at the time it was destroyed;
2. The evidence was destroyed in bad faith; and
3. The destruction prejudiced the innocent party.

   *See Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 615-16 (S.D. Tex. 2010). [17]

## VIII. ARGUMENT

### 1. "Abandoned Property" Defense Voided by June 17 Record

- Defendants rely exclusively on the administrative classification of Plaintiff's property as "abandoned" to justify the July 2026 destruction of active litigation evidence.
- This defense is <u>factually false</u> and <u>legally void</u>, as the documentary record establishes that Plaintiff actively claimed the property, negotiated its retrieval, and placed Defendants on explicit notice that the retrieval delay was <u>caused entirely</u>

---

[17] See https://law.justia.com/cases/federal/district courts/texas/txsdce/4:2007cv00405/489947/450/

by the State's own logistical blockade.

- **Explicit Claim of Ownership and Directed Coordination**
  - Under well-established law, property is not abandoned when the owner actively communicates an intent to retain it and coordinates its recovery.
  - On June 17, 2026, at 4:34 PM CDT, TXST issued a written directive instructing Plaintiff to *"provide a date by which you will retrieve your personal belongings"*.
  - Within eighteen minutes, Plaintiff complied with this directive, designating Friday, July 17, 2026, as the formalized retrieval date. [18]
- **Actual Notice of State-Created Logistical and ADA Barriers**

  In that same June 17, 2026, communication, Plaintiff provided TXST with the exact administrative and physical reasons necessitating the 30-day extraction window, placing the State on actual notice of its own compounding liability.
- **Withheld Freight Funding**

  Plaintiff explicitly stated the timeline was the

  > *"minimum required operational window to allow the Office of the Attorney General (OAG) and TWC-VR to process the pending emergency freight funding required to extract this property to my current emergency relocation in Texas City, TX."*
- **Distance and ADA Barriers**

  Plaintiff placed TXST on the federal record that he was left without vehicle transportation 210 miles away due to the initial eviction. Furthermore, Plaintiff documented that physical mobility limitations—specifically requiring a leg-brace and paid physical assistance during the initial move-in—**rendered unassisted**

---

[18] See Exhibit H, Exh_H_2026_07_17_Re_TXST_Retr_Directive.pdf

**retrieval impossible**.

- **The Destruction Was an Act of Spoliation, Not Standard Policy**
  - Plaintiff successfully satisfied TXST's administrative requirement to designate a retrieval date on June 17, 2026. The State cannot intentionally withhold the mandatory ADA Title II transition services and freight funding required to move the physical assets, and then weaponize the resulting immobility to execute an "abandoned property" disposal policy.
  - The July 17, 2026, date was established on the record as a State-processing window to cure logistical barriers, not an abandonment expiration. TXST's subsequent disposal of these items constitutes intentional, bad-faith spoliation of known evidence.

## 2. Defendants Breached an Absolute Duty to Preserve

- The duty to preserve evidence arises when a party knows or should know that the evidence is relevant to pending or future litigation.
- Defendants held exclusive physical control over the items at Balcones 3414 and possessed an absolute duty to safeguard them.
- On May 27, 2026: Defendants were formally served with a Notice of Bailment, explicitly demanding the insured freight transit of the property to Plaintiff's emergency relocation address in Texas City, Texas, definitively proving the State knew exactly how and where to return the seized assets.[19]

[19] See Exhibit F, Exh_F_2026_05_27_Ntc_Bailment_and_Dmd_assets.pdf

Defendants had actual, documented notice of this litigation as early as March 20, 2026, and formal notice via the May 4, 2026, verified complaint. The property seized on May 20, 2026, is central to Plaintiff's claims of continuous displacement and material breach of the Rehabilitation Act. Defendants held exclusive physical control over the items at Balcones 3414 and possessed an absolute duty to safeguard them.

### 3. The Destruction Constitutes Bad Faith

Bad faith is established when a party intentionally destroys evidence to deprive the opposing party of its use. Defendants did not lose this property through routine, automated administrative purging; they actively seized it during an eviction and subsequently destroyed or disposed of it. This demonstrates a calculated, institutional decision to leverage physical deprivation against a disabled litigant.

### 4. Severe Prejudice to Plaintiff

- The prejudice to Plaintiff is absolute. Defendants did not merely misplace isolated items; **they seized, withheld, and/or destroyed approximately 99% of Plaintiff’s entire personal estate**. This comprehensive deprivation physically erased the tangible assets and specialized BVI assistive technology necessary for career progression, daily living, and academic survival, directly violating the vocational objectives outlined in Plaintiff's TWC-VR IPE. Furthermore, it artificially forced severe physical displacement while stripping Plaintiff of the critically needed assistive technology, vocational assets and supportive evidence of the retaliatory seizure.

- The destruction of this evidence was not the result of routine administrative negligence; it was effectuated through the calculated, unauthorized conversion of Plaintiff's physical property. By seizing and refusing to return the assistive technology, Defendants simultaneously destroyed vital evidentiary assets and inflicted continuous economic damages, establishing clear bad faith.

### 5. Intent to Deprive Through Conscious Disregard of Preservation Holds

- **The Bad-Faith Calculus**

  To impose severe, case-dispositive sanctions, the Court may infer an "intent to deprive" from circumstantial data demonstrating that a party executed the destruction of evidence after receiving explicit, documented preservation directives. The governmental record establishes that the spoliation of Plaintiff's custom-configured vocational assets was not a systemic oversight or administrative anomaly. Rather, it was a calculated administrative action executed in conscious disregard of active federal litigation and mandatory preservation holds.

- **Chronology of Calculated Spoliation**

  The administrative timeline (*See Factual Background - Destruction/Deprivation*), confirms the Defendants possessed precise, actual knowledge of the items' protected evidentiary status prior to their conversion and destruction.

- **The Inference of Intent and Crystallization of Liability**
  - The affirmative administrative decision to proceed with the property disposal

protocols, despite verified, written warnings of the assets' evidentiary value, satisfies the standard for intentional spoliation. The conscious refusal of university housing directors and state personnel to halt internal property disposal mechanisms permanently destroyed the Plaintiff's irreplaceable BVI tools and specialized academic data.

- The conscious prioritization of university policy over an active federal preservation hold is the exact definition of an intent to deprive. It forecloses any defense of simple or gross negligence. By deliberately neutralizing tangible evidence of the forced eviction and subsequent material breaches of the Individualized Plan for Employment (IPE), the Defendants cemented individual-capacity liability. The administrative failure to institute a litigation hold was a calculated risk that now warrants maximum judicial sanctions.

## 6. The State's Bad-Faith Circular Logic to Shield Liability

- On July 16, 2026, precisely 24 hours before the TXST's destruction deadline, AAG Elizabeth Bryan issued a formal response acknowledging that Plaintiff's IPE "remains open and valid". [ECF 23-1] However, the State explicitly refused to authorize emergency transit, arguing that because the authorized services are "specific to Texas State," and cannot be utilized while Plaintiff is "not currently enrolled".

- As demonstrated in Plaintiff's July 16, 2026 written response to the Office of the Attorney General (See Exhibit K), the State's claim that services are "active" is a sham. Telling a BVI student whose assistive technology and housing were seized

that services are open—while simultaneously refusing to fund transit or fix the enrollment barrier—constitutes a constructive denial.

- The intentional administrative paradox: TWC-VR and its vendor-agent:
    - (1) manufactured an artificial payment deficit;
    - (2) executed a forced eviction;
    - (3) seized Plaintiff's vocational assets, and then
    - (4) weaponized the resulting forced non-enrollment to legally justify withholding the exact emergency logistical services required to recover the seized assets.

In closing, Defendants' total failure to preserve, account for, or facilitate the return of Plaintiff's property—despite full knowledge of Plaintiff's BVI accommodation needs, an active litigation hold, and over 30 days of post-eviction custody—establishes a textbook record of deliberate indifference under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

## IX. PRAYER FOR RELIEF

Defendants' actions represent a calculated procedural and physical escalation. Plaintiff respectfully requests that the Court exercise its inherent authority to penalize this spoliation and order the following sanctions:

### 1. Adverse Inference

An Adverse Inference instruction stipulating that the destroyed property contained assistive technology and vital personal assets directly relevant to Defendants' ongoing Title II and Section 504 violations.

## 2. Mandatory Production of Inventory Log

An Order compelling Defendants to produce, within ten (10) calendar days of the Court's Order, a sworn, itemized audit log detailing all physical, personal, and assistive property seized from Balcones 3414 on or after May 20, 2026. Said log must disclose:

- A complete description of each item seized;
- The complete chain of custody and physical storage location history; and
- The exact date, method, authorized personnel, and administrative policy under which any item was discarded, auctioned, transferred, or destroyed.

## 3. Monetary Sanctions

Plaintiff compensation for the exact replacement value of the seized and destroyed items, to be assessed immediately and independently of the final global resolution matrix.

## 4. Immediate Release and Transit of Surviving Assets

An Order compelling the immediate release and insured freight transit, at Defendants' sole expense, of any surviving physical property, high-value assets, and digital storage devices that were not destroyed (including, but not limited to, those items transferred to the custody of the University Police Department under UPPS 05.01.20). These surviving assets must be immediately transported to Plaintiff's designated relocation address in Texas City, Texas;

## 5. Striking Order

An Order Striking any defensive pleadings or motions filed by Defendants attempting to mitigate their liability regarding the May 20, 2026, eviction and

subsequent property seizure.

6. **Any further relief to which Plaintiff is justly entitled.**

Respectfully submitted,

*/s/ Mark L. Short*

Mark L. Short, BSCS
Plaintiff, Pro Se
GENERAL DELIVERY
Texas City, TX 77590-9999
Phone: (940) 337-7005
Email: markl_short@yahoo.com

Dated: August 15, 2026

# CERTIFICATE OF CONFERENCE

Pursuant to Western District of Texas Local Rule CV-7(G), Plaintiff certifies a good-faith effort was made to confer with opposing counsel as follows:

- On August 13, 2026, at 8:46am CST, Plaintiff provided electronic notice of this administrative request to Assistant Attorney General Elizabeth Bryan, requesting a response by August 13, 2026, 5pm CST.
- On August 13, 2026, 2:37pm CST, Counsel for Defendants expressed they were OPPOSED to the motion for sanctions.

Respectfully Submitted,

*/s/ Mark L. Short*

Mark L. Short, BSCS
Plaintiff, *Pro Se*
GENERAL DELIVERY
Texas City, TX 77590-9999
Phone: (940) 337-7005
Email: markl_short@yahoo.com

Dated: August 15, 2026

# CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2026, a true and correct copy of the foregoing was served upon the Respondents via Electronic Mail as follows:

**Counsel for Defendants (TWC, Marler, Pickney):**

**Elizabeth Bryan**
Assistant Attorney General
General Litigation Division
Office of the Attorney General of Texas
P.O. Box 12548
Capitol Station, MC-019
Austin, TX 78711-2548
Phone: 737-230-4700
Email: elizabeth.bryan@oag.texas.gov

Additionally, to satisfy the "actual notice" requirements of Fed. R. Civ. P. 65(d)(2)(C) and legally bind non-parties acting in active concert and participation with the Defendants, a true and correct copy of this filing has been served via direct electronic mail transmission to the following university administrators and legal officers:

**Office of the General Counsel**
Texas State University System (TSUS)
O. Henry Hall
601 Colorado Street
Austin, TX 78701-2904
Phone: (512) 463-1808
Email: tsusgencoun@txstate.edu

**Kate Gannon-Cullinan, Ph.D.,**
Executive Director of Housing and Residential Life (DHRL)
Texas State University
Housing & Residential Life
515 N. Comanche
San Marcos, Texas 78666
Phone: 512.245.4663
Email: dhrldirector@txstate.edu

Respectfully Submitted,

*/s/ Mark L. Short*

______________________

Mark L. Short, BSCS
Plaintiff, *Pro Se*
GENERAL DELIVERY
Texas City, TX 77590-9999
Phone: (940) 337-7005
Email: markl_short@yahoo.com

Dated: August 15, 2026