**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| **MARK L. SHORT,**<br>Plaintiff,<br>v.<br>**TEXAS WORKFORCE COMMISSION,**<br>**MICHAEL MARLER,** in his official capacity as Interim Deputy Regional Director,<br>**TANISHA PICKNEY,** in her official capacity as Vocational Rehabilitation Counselor,<br>Defendants. | Civil Action No: 1:26-cv-01174-ADA-DH |

# OBJECTION TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTIONS FOR TEMPORARY RESTRAINING ORDERS

## TO THE HONORABLE COURT:

COMES NOW Plaintiff, Mark L. Short, pro se, and files these written objections pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. of Civ. P. 72(b), challenging the Report and

Recommendation (R&R) entered by United States Magistrate Judge Dustin M. Howell on August 11, 2026 [ECF Doc No. 30], specifically regarding the recommended denial of Plaintiff's motions for temporary restraining orders [ECF Doc No. 22], [ECF Doc No. 27]. In support thereof, Plaintiff respectfully shows the Court as follows:

## I. PRELIMINARY MOTION & SHOWING OF GOOD CAUSE FOR DISCRETIONARY CONSIDERATION OF SUPPLEMENTAL EVIDENCE PURSUANT TO FED. R. CIV. P. 72(b)(3)

Plaintiff respectfully moves the District Court, in conducting its *de novo* review of the Magistrate Judge's Report and Recommendation (R&R), to exercise its statutory discretion under Fed. R. Civ. P. 72(b)(3) to accept and consider the supplemental administrative exhibits attached hereto.

Rule 72(b)(3) explicitly provides that the District Judge *"may receive further evidence"* when reviewing an R & R. Extraordinary circumstances and compelling "good cause" exist to justify the consideration of these supplemental materials:

### 1. State-Created Obstruction & Physical Displacement

On May 20, 2026, Plaintiff was subjected to a forceful eviction and physical displacement from his residence, resulting in the constructive seizure and ongoing retention of Plaintiff's physical records, case files, assistive technology, and personal property by State actors and University officials (currently held at Balcones 3414, San Marcos, Texas). [ECF Doc No. 16]

### 2. Unsheltered Status & Severe Hardship

This state-created crisis rendered Plaintiff unsheltered, operating under extreme physical, financial, and logistical hardship with severely impaired access to printing, scanning, and file compilation tools. Plaintiff was forced to litigate this complex civil rights action on a single laptop under emergency conditions.

### 3. **Absence of Procedural Neglect**

The delayed assembly and formal indexing of these specific supplemental records—including certified federal performance disclosures (RSA-722 FY 2025 Submission #314) and contemporaneous agency communications—was the direct proximate result of State-inflicted displacement and property retention, not any lack of diligence or procedural neglect by Plaintiff. The specific compliance disclosures and evidentiary exhibits subsequently docketed as [ECF Doc No. 35-4],[ECF Doc No. 35-5], and [ECF Doc No. 35-9] were assembled and placed on the docket upon recovery of access, and are properly submitted for this Court's de novo consideration under Rule 72(b)(3) to cure the evidentiary gaps forced by State-created displacement.

### 4. **Substantive Relevance to *De Novo* Review**

These supplemental exhibits are essential to the Court's *de novo* determination. They directly refute central factual assumptions in the R&R regarding administrative exhaustion, the availability of meaningful internal due process, and the Defendants' deliberate indifference under Title II of the ADA and Section 504 of the Rehabilitation Act.

The doctrine of clean hands prevents the State from actively depriving a *pro se* litigant of his physical files, assets, shelter, and subsequently claiming procedural waiver when those exhibits are formally placed on the docket upon recovery. Justice requires that the Court exercise its discretion under Rule 72(b)(3) to consider the complete factual record attached hereto.

## II. INTRODUCTION: THE BINDING ADMINISTRATIVE FRAMEWORK AND REQUEST FOR JUDICIAL NOTICE

Before addressing the specific errors in the Magistrate Judge's Report and Recommendation (R&R), Plaintiff respectfully requests that this Court take judicial notice pursuant to Fed. R. Evid. 201 of the governing administrative frameworks that control this dispute.

The R&R's conclusion that the Texas Workforce Commission (TWC) and its Vocational Rehabilitation (VR) staff bear no liability for the actions of Texas State University (TXST) relies on a fundamental misapprehension of the highly regulated, inter-agency matrix of the federal Vocational Rehabilitation program. TWC is not a detached bystander to Plaintiff's university placement; it is the designated State unit legally bound by strict federal oversight and compliance mandates.

To properly conduct a *de novo* review of the Magistrate Judge's findings, the Court's analysis must be grounded in the following binding administrative directives and reports:

### 1. The U.S. Department of Education's FFY 2026 Monitoring and Technical Assistance Guide (MTAG)

Plaintiff formally requests the Court to take judicial notice of the MTAG.[1] The MTAG is the official federal compliance directive issued by the Rehabilitation Services Administration (RSA) to govern State VR agencies. It explicitly obliterates the defense that TWC lacks jurisdiction or control over its university vendors. The MTAG establishes the federal mandate that the RSA

> *"will ensure designated State units are carrying out nondelegable responsibilities for the administration of the VR and Supported Employment programs described in 34 C.F.R. § 361.13(c)(1)."*

Furthermore, the RSA dictates that the VR agency

> *"must monitor its activities on a consistent basis to assure compliance with applicable Federal requirements"*

across all contracts and purchased services.

### 2. The Texas WIOA Combined State Plan (Program Years 2024–2027)

Plaintiff formally requests the Court to take judicial notice of the Texas WIOA Combined State Plan.[2] This document is TWC's own federally certified operational blueprint. It serves as a direct, written admission contradicting TWC's defense that it

---

[1] *See The U.S. Department of Education's FFY 2026 Monitoring and Technical Assistance Guide (MTAG): https://rsa.ed.gov/about/programs/vocational-rehabilitation-state-grants/monitoring-of-vocational-rehabilitation-program*

[2] *See The Texas WIOA Combined State Plan (Program Years 2024–2027): https://www.twc.texas.gov/sites/default/files/ogc/mtg23/commission-meeting-material-112123-item11b-py2024-2027-wioa-csp-twc.pdf*

lacks jurisdiction over civil rights enforcement at its vendor sites. The Plan explicitly states that TWC's Division of Fraud Deterrence and Compliance Monitoring (FDCM)

> *"ensures that TWC's customers have equal opportunity (EO) and equity of access to all services by monitoring and enforcing TWC's compliance with federal EO laws and regulations,"*

and expressly confirms that this monitoring mandate covers operations *"performed by its contractors and grantees."* Furthermore, the Plan formally recognizes "colleges" and "service providers" as integrated delivery agents under the VR program, cementing the administrative nexus.

### 3. [TWC-VR] U.S. Department of Education RSA-722 Federal Performance Data (FY 2025 Submission #314)

Plaintiff formally requests the Court take judicial notice of TWC-VR's verified federal performance disclosures,[3] certified under penalty of perjury by VR Division Director Tammy Ames on December 30, 2025. This official federal reporting data establishes the absolute financial and operational nexus binding TWC-VR to strict federal compliance metrics regarding service delivery.

Furthermore, the FY 2025 data statistically substantiates Plaintiff's claims regarding the futility and adversarial nature of TWC-VR's internal administrative remedies. The data reports 74 requests for impartial hearings with no established process for the review of IHO decisions, allowing those rulings to overwhelmingly favor the agency (6

---

[3] See [TWC-VR]'s U.S. Department of Education RSA-722 Federal Performance Data (FY 2025 Submission #314): https://rsa.ed.gov/webform/rsa_722_for_fy_2022/submissions/26832

to 1) without substantive oversight.

This verified federal data irrefutably proves that TWC-VR operates as a heavily monitored, primary administrative conduit that cannot legally shed its Title II and Section 504 liability by outsourcing the execution of the IPE to an educational vendor.

Because TWC operates under a **non-delegable federal duty** to administer Plaintiff's Individualized Plan for Employment (IPE), it cannot legally farm out Plaintiff's accommodations to a university vendor, allow that vendor to spoliate evidence and execute a retaliatory eviction, and then claim a lack of jurisdiction. The Magistrate Judge's failure to apply this binding statutory framework resulted in the erroneous legal conclusions addressed in the specific Objections below.

## III. THE ADMINISTRATIVE NEXUS AND JOINT LIABILITY

Plaintiff is a qualified individual with a disability under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 et seq., as amended by the Americans with Disabilities Act Amendments Act of 2008 (ADAA).

While Plaintiff acknowledges and appreciates the Court's ruling granting his application to proceed in forma pauperis and ordering the United States Marshals Service to execute service of process on the named Defendants, Plaintiff must formally object to the Magistrate Judge's legal conclusion that Plaintiff:

> *"fails to carry his burden of persuasion as to whether he is likely to succeed on the merits" because his claims are allegedly "leveled against TWC-VR and its staff, not against the University"*

based on the premise that his claims are allegedly *"leveled against TWC-VR and its staff,*

*not against the University."*

The Magistrate Judge's Report and Recommendation (R&R) rests on a fundamental misapprehension of the documented administrative nexus between the named Defendants. This premise relies on an artificial, legally unsustainable segregation of Texas State University (TXST) from the Texas Workforce Commission (TWC). The R&R incorrectly isolates the actions of university housing directors and university police from the underlying vocational rehabilitation framework. In reality, TXST and TWC-VR operate as an interdependent, joint administrative enterprise delivering federally funded educational and vocational programs under Title II of the ADA and Section 504 of the Rehabilitation Act.

By evaluating TWC and TXST in isolated vacuums, the R&R improperly excuses their mutual nonfeasance, treating them as distinct entities with no cross-agency duties.

The existing record proves otherwise. The Defendants operated not as separate actors, but as joint architects of Plaintiff's civil rights deprivation through:

### 1. An Interlocking Machinery of Retaliation

TWC and TXST operated in administrative symbiosis to enforce compliance through displacement. TWC's deliberate financial paralysis—withholding authorized living maintenance and stripping critical Blind and Visually Impaired (BVI) support services—<u>served as the anvil</u>, while TXST's May 20, 2026, spoliation event and physical eviction <u>served as the hammer</u>.

### 2. A Concerted Campaign of Attrition

The Defendants' actions were not administrative misunderstandings, but a calculated strategy of exhaustion. Armed with actual notice of federal "stay-put" violations and medical endangerment, both agencies leveraged retaliatory status downgrades and coordinated property seizure to constructively and permanently deny Plaintiff’s rights under the Rehabilitation Act.

### 3. A Jurisdictional Shell Game

To defeat federal oversight, the Defendants utilized an administrative shell game. TXST executed the physical civil rights abuses, while TWC actively shielded the University by abdicating its non-delegable statutory mandate under 34 C.F.R. § 361.13. Instead of intervening, TWC:

A. **disclaimed jurisdiction;**[4]

B. **stripped Plaintiff's protected status;** [ECF Doc No. 11-4] and

C. **withheld the specific federal funds designated to ensure his protection.**[5]

Because the R&R completely disregards this concerted, inter-agency deliberate indifference, its conclusions regarding administrative exhaustion and liability are fatally flawed as a matter of law.

## IV. FACTUAL BASIS AND ADMISSION OF CONTEMPORARY RECORDS

[4] See Exhibit E, Exh_E_TWCEO_Ntc_of_Lack_of_Jurisdiction.pdf (April 14, 2026)

[5] See Exhibit B, Exh_B_TWCVR_Formal_Pets_for_Due_Process_Hearing.pdf (March 2026)

Under 28 U.S.C. § 636(b)(1) and Fed. R. of Civ. P. 72(b), a District Judge must determine de novo any part of the Magistrate Judge's disposition that has been properly objected to, and may receive further evidence in making this determination.

Furthermore, pursuant to WDTX Local Rule CV-7, Plaintiff submits the appended factual basis to substantiate the administrative nexus, deliberate indifference, and joint liability detailed above. The claims are not mere allegations, but are anchored in a verified, contemporaneous administrative record. Plaintiff respectfully directs the Court's attention to the following appended exhibits:

1. **Exhibit A - Texas State University: Documented Pattern of Non-Compliance & Coercion (Items 1–94) (Dec 2025 – April 2026) (Exh_A_TXST_Pattern_of_NonCompliance_Items_1_94.pdf)**

This comprehensive, 15-section forensic catalog establishes the chronological factual record of institutional non-compliance, statutory breach, and vendor default spanning December 2025 through April 2026.

- Items 1–10: The December 9, 2025, accessibility crisis and resulting 52-hour administrative communication blackout.
- Items 11–56: Systemic grievance failures, administrative coercion, retaliatory grading, and EIT non-compliance.
- Items 57–62: Electronic Information Resources (EIR) fraud, failure to provide Equally Effective Alternate Access (EEAA), and default on mandatory technical audits.
- Items 63–90: Executive ratification, repudiation of state-contracted TWC-VR vendor obligations, and default on the March 20, 2026, 48-Hour Cure Notice.

- Items 91–94: The April 2026 OEO final determination failure, institutionalization of the "equal treatment" defense, and complete exhaustion of administrative remedies under TSUS Rules.

2. **Exhibit B - Formal TWC-VR Due Process Petitions and Notice of Retaliation (March 16, 2026 & March 31, 2026) (Exh_B_TWC_VR_Formal_Pets_for_Due_Process_Hearing.pdf)**

These verified administrative filings establish the chronological timeline of TWC-VR's bad faith. The record proves that Plaintiff filed a formal Due Process petition on March 16, 2026, regarding withheld living stipends and the 17-month failure to deliver authorized Assistive Technology. Exactly seven days later, on March 23, 2026, TWC-VR retaliated by stripping Plaintiff's BVI status without conducting a valid Humphrey Field Analyzer (HFA) test, directly violating the "stay put" protections of 34 C.F.R. § 361.57(b)(4).

3. **Exhibit C - TWC-EO Formal Vendor Complaint & Receipt (Feb. 27, 2026) (Exh_C_TWCEO_Formal_Vendor_Complaint_and_Receipt.pdf)**

This document proves Plaintiff proactively utilized proper administrative channels by formally reporting TXST's non-compliance to TWC's Equal Opportunity (EO) Compliance Department months prior to the spoliation, explicitly citing that the inaccessible environment was a direct barrier to the IPE goal.

4. **Exhibit D - TWC-EO Real-Time Escalation Log (Feb. 26, 2026 - March 24, 2026) (Exh_D_TWCEO_RealTime_Escalation_Log.pdf)**

A contemporaneous, verified email ledger proving that Plaintiff exhaustively petitioned

TWC's Equal Opportunity (EO) office for intervention regarding TXST's hostile environment. These records prove TWC possessed *actual knowledge* that its educational vendor was actively retaliating against Plaintiff, yet TWC deliberately refused to execute its oversight mandates.

### 5. Exhibit E - TWC-EO Notice of Lack of Jurisdiction (April 14, 2026) (Exh_E_TWCEO_Ntc_of_Lack_of_Jurisdiction.pdf)

A formal letter from TWC State EO Officer Jon Pokorney demonstrating that TWC officially disclaimed civil rights jurisdiction over its own university vendor and minimized the withholding of authorized maintenance payments as mere "programmatic issues".

### 6. Exhibit F - TXST Notice of Bailment and Demand for Return of Property (May 27, 2026) (Exh_F_TXST_Ntc_of_Bailment_and_Dmd_for_Return_of_Property.pdf)

This exhibit serves as the formal demand for the transit of the seized vocational assets and unequivocally destroys the "abandoned property" pretext. The record proves that on May 27, 2026, Plaintiff formally placed the Defendants and the Texas State University System (TSUS) on notice of a bailment, demanding they contract an insured freight company to ship the property to Plaintiff's emergency relocation in Texas City, Texas.

Furthermore, Plaintiff explicitly warned the State that he could not physically retrieve the items due to the retaliatory Criminal Trespass Warning, proving the Defendants actively manufactured the condition of immobility that they later weaponized to justify

the destruction of the assets.

### 7. Exhibit G - TXST Retrieval Date Designation (June 17, 2026) (Exh_G_TXST_Retrieval_Date_Designation.pdf)

This record proves the State had actual notice of the logistical barriers a full thirty days prior to the destruction. On June 17, 2026, Plaintiff formally notified TXST Housing and directly CC'd Assistant Attorney General Elizabeth Bryan, establishing the July 17 retrieval date specifically to grant the OAG the required window to process emergency freight funding. Plaintiff explicitly warned the OAG that unassisted physical retrieval was impossible due to a 210-mile geographic displacement and reliance on a leg brace, proving the State was fully aware of the ADA Title II barrier.

## V. OBJECTION 1: ERRONEOUS SEVERANCE OF PROXIMATE CAUSE AND JOINT LIABILITY

Plaintiff specifically objects to the Magistrate Judge's finding on Pages 4–5 [ECF Doc No. 30 at p. 4] that Plaintiff's evidence:

> *"does not support a finding that he is likely to succeed on the merits of his claims, which are leveled against TWC-VR and its staff, not against the University."*

### 1. Assertion of Error

The Magistrate Judge committed a clear error of law by failing to apply the doctrine of proximate cause and artificially severing the actions of Texas State University (TXST) from the liability of the Texas Workforce Commission (TWC) and its named agents. This analytical framework constitutes reversible error under established federal disability law by ignoring the integrated operational nexus and joint liability of these

entities.

## 2. Record and Statutory Support

### A. The Integrated Operational Nexus

TWC-VR services and placements at Texas State University are inextricably linked under federal statutory mandates, including the Rehabilitation Act of 1973 and Title II of the Americans with Disabilities Act (ADA). Plaintiff's university enrollment, housing assignment at Balcones 3414, and educational progress were administered pursuant to a formal Individualized Plan for Employment (IPE) overseen directly by TWC-VR personnel. The State's legal counsel explicitly confirmed this integrated operational nexus in writing on July 16, 2026, [ECF Doc No. 23-1] formally notifying Plaintiff that the

> *"services authorized under your IPE are designed specifically to support your attendance and degree completion at Texas State University"* and *"cannot be utilized while you are not enrolled at that institution".*

### B. Joint Action Under Color of State Law

Under 28 C.F.R. § 35.130(b)(1), TWC-VR is expressly prohibited from discriminating *"directly or through contractual, licensing, or other arrangements"*. TXST is not a disconnected third party; it is the exclusive, federally funded educational vendor contracted to execute Plaintiff's IPE. Both entities operate as integrated participants under color of state law to administer public vocational rehabilitation and educational benefits.

Under 42 U.S.C. § 1983 and Title II integration mandates, when a state agency

and a public university coordinate to manage a disabled student's housing and educational placement, actions taken by university housing and police personnel in tandem with or resulting from agency default constitute joint state action.

**C. Actual Knowledge and Deliberate Indifference**

TWC-VR cannot feign ignorance of its vendor's statutory defaults. Between February 26 and March 24, 2026, Plaintiff provided TWC's EO office with continuous, real-time documentation of the university's hostility, encompassing the systemic accessibility failures, retaliatory grading, and coercion that are forensically cataloged in Exhibit A. [6] [7] This included written notification on March 2, 2026, that the university's internal investigation was procedurally compromised, and an urgent update on March 5, 2026, providing explicit evidence that TXST's Chief Compliance Officer was conditioning federally mandated interim relief on Plaintiff dropping his civil rights complaints. Despite having actual knowledge of this overt retaliation and receiving objective medical evidence proving the inaccessible EIT constituted an absolute barrier to Plaintiff's education, TWC deliberately refused to intervene, cementing their joint liability for the ensuing physical displacement.

**D. Direct Causal Chain of Displacement (Proximate Cause)**

The administrative default forced eviction from university housing, and subsequent

---

[6] See Exhibit A, Exh_A_TXST_Pattern_of_Noncompliance_Items_1_94.pdf

[7] See Exhibit D, Exh_D_TWCEO_RealTime_Escalation_Log.pdf (Feb. 26, 2026 - March 24, 2026)

property disposal were not spontaneous, isolated acts by independent municipal actors. They were the direct, proximate, and realized harm stemming from TWC-VR's service withdrawal, refusal of accommodations, and active eligibility manipulation.

TWC-VR cannot purposefully funnel federal funds to a designated vendor, allow that vendor to seize Plaintiff's authorized Blind/Visually Impaired (BVI) assistive technology at Balcones 3414, and then claim a lack of privity or jurisdiction when the resulting property destruction occurs.

By artificially segregating TWC-VR from the downstream consequences of its own statutory failures, the R&R creates an impermissible procedural loophole that rewards state-level bureaucratic paralysis and warrants *de novo* review and reversal.

## VI. OBJECTION 2: UNCRITICAL ADOPTION OF THE "ABANDONED PROPERTY" PRETEXT AND IGNORING PLED THEORIES

Plaintiff specifically objects to the Magistrate Judge's finding on Page 4 [ECF Doc No. 30 at p. 4]:

> *"an email from University staff giving Short notice that any unretrieved items in storage would be disposed of as abandoned property."*

### 1. Assertion of Error

The Magistrate Judge committed a clear legal and factual error by passively adopting the University's "abandoned property" pretext as an undisputed fact. In doing so, the R&R entirely ignored Plaintiff's explicitly pled theories and documentary evidence

demonstrating that this "abandonment" was a fraudulent condition manufactured by TWC-VR's deliberate administrative paralysis.

## 2. Record and Statutory Support

### A. Rebuttal of "Abandonment" and Manufactured Immobility

A disabled individual who is forcibly evicted and stripped of authorized living stipends has not "abandoned" their property; they have been constructively deprived of it by the State. The economic reality is that Plaintiff formally requested emergency transit funding from TWC-VR to secure the assets, which the State intentionally ignored to facilitate their destruction.

As established in the underlying pleadings and accompanying exhibits:

### B. Notice of Bailment and Demand for Return of Property (May 27) [8] and Emergency Administrative Request for TWC-VR Transport Funding (June 15) [ECF Doc No. 22-1]

Demonstrates that Plaintiff formally petitioned the Defendants and their legal counsel prior to the destruction deadline for emergency freight and transportation funding to secure the assets. These documents prove the State was acutely aware of the property's status as federally protected vocational assets and active litigation evidence.

### C. Formal Demand for Immediate Transit of Vocational Assets (July 17) [ECF Doc No. 24-1]

8 See Exhibit F, Exh_F_TXST_Ntc_of_Bailment_Dmd_for_Return_of_Property.pdf (May 27, 2026)

Serves as the formal demand for the transit of these vocational assets, explicitly warning the Office of the Attorney General (OAG) that the failure to release transit funding constituted a material breach of the Individualized Plan for Employment (IPE) and a direct failure to provide mandatory transition services under the Rehabilitation Act.

The Defendants deliberately ignored these emergency requests, weaponizing Plaintiff's financial immobility to manufacture a fraudulent condition of asset "abandonment". By accepting the State's factual framing of "abandoned property" while ignoring Plaintiff's documented requests for mandatory logistical transit, the R&R improperly reduces an ongoing statutory violation of the Rehabilitation Act into a localized property dispute, warranting *de novo* review and reversal.

## VII. OBJECTION 3: ERRONEOUS CHARACTERIZATION OF TWC-VR JURISDICTIONAL ASSETS AS STANDARD PERSONAL PROPERTY

Plaintiff specifically objects to the Magistrate Judge's findings on Pages 3 and 4 [ECF Doc No. 30 at p.3] characterizing the seized assets merely as:

> *"property from a university apartment he was forced to vacate" and summarizing that "Short could collect high-value items from the university's police department but that other items had been discarded."*

### 1. Assertion of Error

The Magistrate Judge committed a clearly erroneous factual finding and legal error by treating the seized, converted, and discarded materials as standard personal effects rather than federally protected Blind and Visually Impaired (BVI) vocational assets,

adaptive technology, and direct physical evidence governed by an active Individualized Plan for Employment (IPE).

## 2. Record and Statutory Support

### A. Statutory Classification of Assets

Under 34 C.F.R. § 361.48 and Title IV of WIOA, adaptive equipment, specialized hardware, software licenses, and academic materials acquired to fulfill an approved employment goal are jurisdictional vocational assets.

The materials retained and discarded at Balcones 3414 included personally and federally funded BVI assistive technology, adaptive tools, and educational records essential to Plaintiff's degree completion in Engineering.

### B. Affirmative, Non-Delegable Custodial Duty

TWC-VR maintains an ongoing, non-delegable duty under 34 C.F.R. § 361.13(c)(1) to administer and safeguard the auxiliary aids and transition services necessary for an individual's IPE.

Permitting a designated educational host site to seize these tools, unilaterally classify them into subjective "high value" versus discarded "low value" tiers [ECF Doc No. 26-1], and destroy them constitutes an active failure by TWC-VR to protect program assets.

### C. Proof of Direct Statutory Violation

The evidentiary record of property conversion [ECF Doc No. 25-1] and [ECF Doc No. 26-1] does not reflect a routine landlord-tenant dispute; it establishes the direct, realized harm of TWC-VR's refusal to authorize mandatory transportation

and support services. Allowing the destruction of specialized BVI equipment, as well as educational, professional and personal effects, which directly deprives a blind student of the ability to access educational curriculum—constitutes a direct violation of Section 504 of the Rehabilitation Act and Title II of the ADA.

By mischaracterizing these jurisdictional BVI tools as generic personal belongings, the R&R erroneously overlooked TWC-VR's direct statutory breach in failing to secure and transit them, requiring *de novo* review and rejection of the recommendation.

## VIII. OBJECTION 4: IMPOSITION OF AN ASYMMETRIC EVIDENTIARY BURDEN AND PREJUDICIAL EXPLOITATION OF ADMINISTRATIVE DELAY

Plaintiff specifically objects to the Magistrate Judge's conclusion on Page 5 [ECF Doc No. 30 at p.5]:

> *"Accordingly, because Short fails to carry his burden of persuasion as to whether he is likely to succeed on the merits of his claims, the undersigned RECOMMENDS that the District Judge DENY Short's motions for TRO, Dkts. 22; 27."*

### 1. Assertion of Error

The Magistrate Judge committed reversible error by evaluating Plaintiff's evidentiary burden in an artificial vacuum. The R&R penalizes a visually impaired, *pro se* litigant for evidentiary and logistical limitations deliberately engineered by the Defendants' bad-faith obstruction, while simultaneously permitting the State to exploit the tribunal's own administrative delay to defeat injunctive relief.

### 2. Record and Statutory Support

### A. The Architecture of Manufactured Disadvantage

The Magistrate Judge's finding ignores the severe physical and procedural barriers intentionally erected by TWC-VR and its legal counsel. Defendants systematically crippled Plaintiff's litigation capacity by:

1. Forcibly displacing Plaintiff from stable housing, leaving him unhoused and transient;
2. Seizing, withholding, and destroying his Blind and Visually Impaired (BVI) assistive technology, adaptive hardware, and litigation records; and
3. Enforcing strict "Do Not Contact" (DNC) directives (issued by TWC Counsel Corra Dunigan on May 19 and May 22, 2026), [ECF Doc No. 35-4] [ECF Doc No. 35-5] legally barring Plaintiff from communicating directly with agency staff and forcing all emergency logistical requests through the Office of the Attorney General (OAG), which then deliberately refused to act. [9]

### B. Prohibition Against Exploiting Self-Created Evidentiary Gaps

It is a foundational principle of equity that a party cannot profit from its own bad-faith nonfeasance. The State cannot unlawfully strip a blind litigant of his adaptive tools, destroy his files, enforce a total administrative blackout, and then weaponize

[9] The AAG and OAG had since at least June 17, 2026, to effect transit of the seized assets. The documentary record establishes that AAG Elizabeth Bryan was explicitly copied on Plaintiff's formal notice designating the July 17, 2026, retrieval date, which was specifically established to grant the OAG the operational window to process the required emergency freight funding.
(See Exhibit G, Exh_G_TXST_Retrieval_Date_Designation.pdf) (June 17, 2026)

those resulting handicaps to claim Plaintiff failed to *"carry his burden of persuasion"* before the Court.

### C. Prejudicial Exploitation of Judicial Delay

The R&R's reliance on the passage of destruction deadlines is fundamentally prejudicial. Plaintiff explicitly filed for emergency relief prior to the July 17, 2026, destruction deadline. (Emergency Mtn for TRO, July 16) [ECF Doc No. 22]

The prolonged administrative lag in ruling on Plaintiff's *in forma pauperis* (IFP) application and emergency motions created the exact temporal window in which state actors executed the property disposal.

Allowing the State to benefit from this procedural lag—destroying evidence while judicial review was stalled and then citing that disposal to deny injunctive relief—penalizes the litigant for the administrative timeline and rewards institutional paralysis.

### D. Injunctive Authority Under Rule 65 and the All Writs Act

Under Fed. R. of Civ. P. 65(d)(2)(C), an injunction binds not only the named parties but also "other persons who are in active concert or participation with them".

Furthermore, the All Writs Act, 28 U.S.C. § 1651(a), explicitly empowers the Court to enjoin third-party vendors whose actions threaten to destroy the subject matter of active litigation. The Court had full authority to preserve the status quo, and the R&R's refusal to exercise that authority constitutes an error of law.

## IX. OBJECTION 5: CONSTRUCTIVE TERMINATION OF VOCATIONAL

## REHABILITATION SERVICES THROUGH MANUFACTURED PROCEDURAL DEADLOCK AND RETALIATORY CONFLICTS OF INTEREST

Plaintiff specifically objects to the Magistrate Judge's findings on Pages 4–5 [ECF Doc No. 30 at p.4]:

> *"Short's evidence does not support a finding that he is likely to succeed on the merits of his claims, which are leveled against TWC-VR and its staff, not against the University."*
>
> *"Accordingly, because Short fails to carry his burden of persuasion as to whether he is likely to succeed on the merits of his claims, the undersigned RECOMMENDS that the District Judge DENY Short's motions for TRO, Dkts. 22; 27."*

### 1. Assertion of Error

The Magistrate Judge committed reversible legal error by evaluating the likelihood of success on the merits solely through the lens of Texas State University's physical property destruction, completely overlooking direct, actionable, and bad-faith statutory misconduct executed personally by TWC-VR and its named agents. The evidentiary record demonstrates that Defendants Michael Marler, Tanisha Pickney, and TWC-VR leadership engaged in an active, ongoing constructive termination of Plaintiff's federally protected vocational rehabilitation services through intentional administrative deadlock, retaliatory personnel assignments, and bad-faith conditions of service delivery. This direct agency nonfeasance independently establishes a substantial likelihood of success on the merits under Title II of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act.

## 2. Record and Statutory Support

### A. Weaponization of Case Assignment and Conflict of Interest

Following the expiration of property transit deadlines, TWC-VR and the Office of the Attorney General (OAG) systematically obstructed Plaintiff's access to active vocational rehabilitation services by mandating that all service delivery and case management be routed exclusively through VR Supervisor TeShawn Ferguson. Supervisor Ferguson is a named, adverse respondent in Plaintiff's pending, active Due Process administrative complaint.[10]

Forcing a disabled client to submit to case management by the very supervisor under formal civil rights and administrative investigation creates an insurmountable conflict of interest and an impermissible ethical breach. Defendants' categorical refusal to assign a conflict-free, neutral case manager operates as an intentional procedural barricade designed to freeze service delivery while technically keeping the case file nominally "open".

### B. Contemporaneous Admissions of Agency Abdication

The evidentiary record establishes that TWC-VR staff actively conspired with university personnel to abandon their statutory obligations. Contemporaneous TWC-VR case notes (TWC/Chris Fink TXST Back Channels) (March 6, 2026) [ECF Doc No. 35-9] prove that Defendant VRC Tanisha Pickney and TWC staff

[10] See Exhibit B, Exh_B_TWCVR_Formal_Pets_for_Due_Process_Hearing.pdf (March 2026)

member Chris Fink conducted covert communications with the TXST Office of Disability Services (ODS) (Gavin Steiger) Director wherein TWC-VR explicitly abdicated its mandate to assess and provide necessary auxiliary aids and assistive technology (such as JAWS screen reader and Adobe Acrobat Pro), affirmatively declaring an intent to ***"let the school deal with it"***.

Furthermore, TWC-VR personnel memorialized disparaging remarks made by the ODS Director (Gavin Steiger) regarding Plaintiff, codifying a coordinated, adversarial administrative posture across state entities designed to undermine Plaintiff's IPE and defeat their approved vocational goal.

**C. Exhaustion of Remedies and Rebuttal of the "Difficult Client" Pretext**

The State’s anticipated defense that Plaintiff is merely a "difficult" or "uncooperative" client is objectively refuted by the administrative timeline, which proves Plaintiff exhausted every available internal remedy with meticulous, good-faith reporting prior to the physical eviction.

- On February 26, 2026, Plaintiff filed a formal vendor complaint with TWC's Equal Opportunity (EO) Department, explicitly warning that TXST's hostile environment was a direct barrier to his IPE goals.[11]
- On March 7, 2026, Plaintiff submitted Form EO-13 and Addendum A,[12] explicitly documenting that Defendants Pickney and VR Management were

---

[11] See Exhibit C, Exh_C_TWCEO_Formal_Vendor_Complaint_and_Receipt.pdf (Feb 27, 2026)

[12] See Exhibit D at p. 12, Exh_D_TWCEO_RealTime_Escalation_Log.pdf

engaged in deliberate administrative obstruction. The verified record proves Plaintiff notified the agency that:

> *"without providing the required legal notice and appeal rights, VR management is intentionally obstructing my access to the formal administrative review and fair hearing process. Simultaneously, VRC Tanisha Pickney and VR Management are engaging in 'de facto' denials of service by refusing to issue written Notices of Decision (NODs) regarding my MSCS program funding and a medically necessary maintenance reimbursement mandated by mediation Settlement Docket 2025-53."*

- By deliberately refusing to issue the federally mandated NODs—the precise legal instruments required under 34 C.F.R. § 361.57 to trigger a formal administrative appeal—TWC-VR illegally obstructed Plaintiff's federal right to due process. The Magistrate Judge's conclusion that Plaintiff lacks a 'likelihood of success on the merits' fundamentally ignores this documented, per se violation of federal administrative law by TWC-VR personnel.
- On March 16, 2026, Plaintiff exercised his federally protected rights by filing a formal Due Process Petition citing TWC-VR's 17-month failure to provide authorized Assistive Technology and the resulting medical regression.[13]
- On March 18, 2026, Plaintiff provided TWC-EO with a supplemental record detailing 40 specific, granular violations of federal and state law by TXST, including administrative coercion and a 52-hour communication blackout

[13] See Exhibit B, Exh_B_TWCVR_Formal_Pets_for_Due_Process_Hearing.pdf (March 2026)

regarding inaccessible materials.[14] These systemic institutional failures are comprehensively mapped and substantiated in Exhibit A (Items 1-94).[15]

- Despite this exhaustive, professional paper trail, Defendant Pickney and TWC-VR management retaliated on March 23, 2026—exactly seven days after the Due Process filing—by downgrading Plaintiff's BVI classification to a "general caseload" without conducting the required Humphrey Field Analyzer test [16]. Altering a client's priority status and suspending services while a formal dispute is pending is a direct violation of the "stay put" protections of 34 C.F.R. § 361.57(b)(4).
- Culminating this bad-faith obstruction, TWC's State EO Officer issued a formal "Notice of Lack of Jurisdiction" on April 14, 2026.[17] TWC officially abdicated its oversight of its educational vendor and dismissed not only the withheld funding and missing Notices of Decision (NODs), but completely swept aside the full scope of reported violations—including the 17-month withholding of approved Assistive Technology, the unmitigated systemic accessibility barriers in Digital coursework (TAC Chapters 206 and 213), the university's refusal to provide Equally Effective Alternate Access (EEAA), and the documented retaliatory coercion and quid pro quo settlement demands executed by university leadership.

---

14 See Exhibit D at p.18, Exh_D_TWCEO_RealTime_Escalation_Log.pdf

15 See Exhibit A, Exh_A_TXST_Pattern_of_NonCompliance_Items_1_94.pdf

16 See Exhibit D at p. 21, Exh_D_TWCEO_RealTime_Esclation_Log.pdf

17 See Exhibit E, Exh_E_TWCEO_Ntc_of_Lack_of_Jurisdiction.pdf (April 14, 2026)

This extensive paper trail proves Plaintiff is not a difficult client, but a diligent litigant who repeatedly begged TWC to enforce baseline federal compliance. The subsequent physical eviction and spoliation in May 2026 were the direct, proximate consequence of TWC officially abandoning its oversight despite having actual knowledge of the vendor's hostility.

**D. Actionable Retaliation Disguised as Administrative Friction**

The State's anticipated defense that Plaintiff is merely a "difficult" or "uncooperative" client is objectively refuted by the administrative timeline. This is not the management of a difficult client; it is documented, actionable retaliation designed to execute a constructive discharge.

**E. The "Texas State-Specific" Constructive Discharge**

On July 16, 2026, Assistant Attorney General Elizabeth Bryan formally notified Plaintiff in writing that Plaintiff's Individualized Plan for Employment (IPE) *"remains open and valid,"* but explicitly declared [ECF Doc No. 23-1] that the

> *"services authorized under your IPE are designed specifically to support your attendance and degree completion at Texas State University" … "cannot be utilized while you are not enrolled at that institution".*

By Defendants' own written admission, TWC-VR tethered Plaintiff's federal vocational rehabilitation rights exclusively to TXST. Having proximately caused the forfeiture of Plaintiff's academic enrollment through the deliberate denial of auxiliary aids and living maintenance funds, Defendants now weaponize that lack of enrollment to justify the absolute withholding of all IPE services, creating a self-

reinforcing, retaliatory constructive discharge from the vocational rehabilitation program.

**F. Affirmative, Non-Discretionary Duties Under 34 C.F.R. § 361.48**

Under Section 103 of the Rehabilitation Act and 34 C.F.R. § 361.48, TWC-VR possesses an affirmative, non-discretionary statutory duty to provide core vocational rehabilitation services, including maintenance, transportation, auxiliary aids, and vocational counseling, to assist eligible individuals with disabilities in achieving their employment outcome.

Refusing to release authorized funds, forcing an administrative blackout via "Do Not Contact" orders (issued by TWC Legal Counsel Corra Dunigan on May 19 and May 22, 2026), [ECF Doc No. 35-4] [ECF Doc No. 35-5] and conditioning basic program access on submitting to an adverse, conflicted supervisor constitutes an egregious, ongoing material breach of the Rehabilitation Act.

Because Plaintiff demonstrated direct, documented, and ongoing statutory violations executed specifically by TWC-VR personnel—independent of the university's physical conversion of assets—Plaintiff carried his burden of demonstrating a substantial likelihood of success on the merits. The Magistrate Judge's contrary finding represents an error of law that must be rejected upon *de novo* review.

## X. CONCLUSION & PRESERVATION OF RIGHTS

The Magistrate Judge’s Report and Recommendation rests on a fundamental misapprehension of the governing federal administrative framework and artificially

partitions the coordinated actions of two highly integrated state entities to deny injunctive relief. By severing proximate cause, the R&R erroneously adopts a manufactured "abandoned property" pretext, mischaracterizes federally protected BVI vocational assets as standard personal effects, and penalizes Plaintiff for evidentiary gaps actively engineered by the State's administrative blackout.

Furthermore, the R&R completely overlooks the direct, documented retaliation and constructive termination of services executed specifically by TWC-VR personnel.

Plaintiff respectfully demands a *de novo* review of these specific factual findings and legal conclusions by the District Judge. Should the District Court adopt the Magistrate's erroneous legal conclusions regarding proximate cause, the exhaustion of remedies, or the severability of joint state action under Title II and Section 504, Plaintiff formally preserves these specific issues for appellate review by the Fifth Circuit Court of Appeals.

## XI. PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully requests that the Honorable District Judge Alan D. Albright:

1. Conduct a *de novo* review of the specific factual findings and legal conclusions challenged herein;
2. Recognize the unified operational nexus between TWC-VR and Texas State University;
3. Recognize the Court's jurisdiction over non-party vendors acting in concert with the Defendants under Fed. R. Civ. P. 65(d)(2) and 28 U.S.C. § 1651;

4. **DECLINE TO ADOPT** that specific portion of the Magistrate Judge's Report and Recommendation [ECF Doc No. 30] which recommends the denial of Plaintiff's motions for temporary restraining orders;
5. Grant the requested injunctive relief to secure:
   - the immediate return of Plaintiff's seized property;
   - the replacement value of the converted assets;
   - halt further evidentiary destruction; and,
6. Grant such other and further relief to which Plaintiff may show himself justly entitled.

## CERTIFICATION UNDER 28 U.S.C. § 1746

I declare under penalty of perjury that the foregoing objections are true and correct to the best of my knowledge, and that the attached Exhibits A through G are true, correct, and with the exception of added exhibit watermark labels, unaltered copies of the original documents and contemporaneous administrative communications.

Executed on August 22, 2026.

*/s/ Mark L. Short*

**Mark L. Short**, BSCS

Respectfully submitted,

*/s/ Mark L. Short*

______________________________

**Mark L. Short**, BSCS
Plaintiff, Pro Se
GENERAL DELIVERY
Texas City, TX 77590-9999
Phone: (940) 337-7005
Email: markl_short@yahoo.com

Dated: August 22, 2026

# CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2026, a true and correct copy of the foregoing was served upon the Respondents via Electronic Mail as follows:

**Counsel for Defendants (TWC, Marler, Pickney):**

**Elizabeth Bryan**
Assistant Attorney General
General Litigation Division
Office of the Attorney General of Texas
P.O. Box 12548
Capitol Station, MC-019
Austin, TX 78711-2548
Phone: 737-230-4700
Email: elizabeth.bryan@oag.texas.gov

Additionally, to satisfy the "actual notice" requirements of Fed. R. Civ. P. 65(d)(2)(C) and legally bind non-parties acting in active concert and participation with the Defendants, a true and correct copy of this filing has been served via direct electronic mail transmission to the following university administrators and legal officers:

**Office of the General Counsel**
Texas State University System (TSUS)
O. Henry Hall
601 Colorado Street
Austin, TX 78701-2904
Phone: (512) 463-1808
Email: tsusgencoun@txstate.edu

**Kate Gannon-Cullinan, Ph.D.,**
Executive Director of Housing and Residential Life (DHRL)
Texas State University
Housing & Residential Life
515 N. Comanche
San Marcos, Texas 78666
Phone: 512.245.4663
Email: dhrldirector@txstate.edu

Respectfully Submitted,

*/s/ Mark L. Short*

**Mark L. Short**, BSCS
Plaintiff, *Pro Se*
GENERAL DELIVERY
Texas City, TX 77590-9999
Phone: (940) 337-7005
Email: markl_short@yahoo.com

Dated: August 22, 2026