# Texas State University

# Documented Pattern of Non-Compliance & Coercion (Items 1–94)

## December 2025 - April 2026

This 94-point document forms a comprehensive, legally fortified record of institutional non-compliance, statutory breach, administrative coercion, and vendor default.

By systematically cataloging events from the December 9, 2025, accessibility crisis through the April 2026 Office of Equal Opportunity (OEO) final determination, the text establishes a cohesive narrative of deliberate indifference under Title II of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act.

---

## Quick Navigation / Exhibit Index


| Section | Title | Primary Authority |
|---|---|---|
| **Section I** | December 9, 2025, Accessibility Crisis | 28 C.F.R. § 35.160 / 34 C.F.R. § 104.4 / UPPS 07.11.01 |
| **Section II** | Procedural & Grievance Failures | 34 C.F.R. § 104.7(b) / UPPS 04.04.46 |
| **Section III** | Administrative Coercion & Retaliation | 28 C.F.R. § 35.134 / 34 C.F.R. § 100.7(e) |
| **Section IV** | Systemic EIT & State Law Violations | 1 TAC Chapters 206 & 213 / Tex. Gov't Code § 552.221 |
| **Section V** | University Policy (UPPS) Breaches | UPPS 07.11.01 / UPPS 06.05.01 / 34 C.F.R. § 104.7(b) |
| **Section VI** | Structural Barriers & Discriminatory Methods | 28 C.F.R. § 35.130 / 34 C.F.R. § 104.4 / 29 C.F.R. § 38.5 |
| **Section VII** | Administrative Coercion & Bad Faith | 28 C.F.R. § 35.134 / 34 C.F.R. § 104.44 / 34 C.F.R. § 100.7(e) |
| **Section VIII** | Forensic Record of Systemic Breach | 28 C.F.R. § 35.134 / 28 C.F.R. § 35.160 / 1 TAC § 213.38 |
| **Section IX** | EIR / Technical Audit Default | 1 TAC Chapter 213 / WCAG 2.1 / Tex. Gov't Code § 2054.451 |


Exhibit A

| Section | Title | Primary Authority |
|---|---|---|
| Section X | Ratification & Due Process Breaches | 34 C.F.R. § 104.7(b) / UPPS 01.04.02 / UPPS 04.04.60 |
| Section XI | Repudiation of TWC-VR Obligations | 34 C.F.R. § 361.13 / 4 TAC § 352.7 / Tex. Lab. Code § 21.055 |
| Section XII | Evidence of Deliberate Indifference | 28 C.F.R. § 35.130 / UPPS 01.04.02 / UPPS 02.03.12 |
| Section XIII | March 20, 2026 Service & Statutory Default | Tex. Gov't Code § 2001.054 / Tex. R. Civ. P. 196.4 |
| Section XIV | Final Status & Exhaustion of Remedies | 20 U.S.C. § 1232g / Tex. Lab. Code § 21.2585 / 34 C.F.R. § 100.7(e) |
| Section XV | OEO Final Determination & Exhaustion | TSUS Rules Ch. VI § 10.06 / 28 C.F.R. § 35.160 / 1 TAC Ch. 213 |

# I. THE DECEMBER 9, 2025, ACCESSIBILITY CRISIS

# (Circuits I - EE 2300)

1. **Breach of August 18, 2025, Mandate (Texas State University Policy and Procedure Statement (UPPS) 07.11.01, §02.02):** **Dr. Cecil Compeau** failed to implement the pre-approved "Alternative Format" notice. Under TXST policy, faculty are responsible for implementing accommodations immediately upon receipt of the ODS notification.

2. **Violation of ADA Effective Communication (28 C.F.R. § 35.160(a)(1) (ADA Title II Effective Communication)):** On December 9, 2025, the provided formula sheet was mathematically inaccessible. Title II requires communication with students with disabilities be "as effective as" communication with others.

3. **Complete Absence of Remedy (34 C.F.R. § 104.4 (Section 504 Discriminatory Denial of Benefit)):** Following the student's immediate report of the December 9, 2025, accessibility crisis, the university failed to provide any "corrected" materials, auxiliary aids, or alternative evaluative measures. There is no record of ODS ever correcting the formula sheet or attempting to restore access during the final exam window.

4. **The 52-Hour Communication Blackout (28 C.F.R. § 35.130(b)(1)(iii)):** **ODS Director Gavin Steiger** maintained total silence from December 9 until December 11, 2025, at 4:47 PM, effectively abandoning the student while coordinating a punitive outcome with **Dr. Compeau**.

Exhibit A

5. **Failure of the Internal Grievance Procedure (34 C.F.R. § 104.7(b)):** By allowing the Office of Disability Services (ODS) to serve as the sole arbiter of the student's immediate December 9, 2025, complaint, the university failed to provide a "prompt and equitable" grievance procedure as required by federal law.

6. **Failure to Supervise (UPPS 07.11.01, §04.03):** Between August 18 and December 9, 2025, **ODS Director Steiger** failed to ensure the Engineering department converted visual materials into accessible formats.

7. **Discriminatory Refusal of Remediation (34 C.F.R. § 104.44(a)):** Following the exam, **Dr. Compeau** refused to allow a retake or substitute, violating the requirement to modify academic requirements to prevent discrimination.

8. **Punitive Grading/The '0' (29 C.F.R. § 38.5):** On December 11, 2025, **Dr. Compeau** assigned a zero(0) for the inaccessible exam, a discriminatory penalty in a federally funded program.

9. **Quantifiable Academic Harm (34 C.F.R. § 104.4):** The resulting drop from a 93% average to a 65% (D) constitutes a "denial of benefit" from the educational program.

10. **Intentional Delay to Ensure Finality of Harm (28 C.F.R. § 35.130):** By maintaining a 52-hour communication blackout from December 9 through December 11, 2025, **ODS Director Steiger** ensured the punitive '0' grade became final in Canvas before the dispute could be addressed.

---

## II. PROCEDURAL & GRIEVANCE FAILURES

11. **Failure of Prompt Resolution (34 C.F.R. § 104.7(b)):** **Dr. Jesus Jimenez** (December 14, 2025) and **Dr. Barrett Bryant** (December 17, 2025) failed to provide a "prompt and equitable" resolution to the grade appeal, allowing the harm to persist.

12. **Denial of Interim Supportive Measures (UPPS 04.04.46, §03):** University officials denied an "Administrative Incomplete" while the civil rights case was pending, allowing ongoing academic damage.

13. **AVP Hatcher's Jurisdictional Disavowal (1 Tex. Admin. Code § 213.37):** On March 5, 2026, **AVP Hatcher** refused to intervene in accessibility gaps, contradicting the state mandate for executive oversight of EIT compliance.

14. **Lack of Procedural Neutrality (34 C.F.R. § 104.7):** **ODS Director Steiger**, acted as an advocate for faculty on December 11, 2025, rather than a neutral compliance body.

15. **Conflict of Interest in Self-Policing (34 C.F.R. § 104.7(b)):** **ODS Director Steiger** and ODS staff acted as the primary investigators into their own 52-hour administrative abandonment and failure to provide exam remedies, violating procedural neutrality.

16. **Failure to Mitigate Professional Harm (28 C.F.R. § 35.130):** The university failed to correct the transcript during the critical graduate school application window in March 2026.

17. **Intentional Administrative Silence (34 C.F.R. § 104.7(b); Tex. Admin. Code § 213.38):** The refusal of OEO/Title IX to provide status updates throughout February 2026 constitutes a denial of "prompt and equitable" resolution and a breach of state EIT complaint processing.

---

## III. ADMINISTRATIVE COERCION & RETALIATION

18. **The February 17, 2026, Warning (28 C.F.R. § 35.134(b)): ODS Director Steiger** issued a written statement that a formal grievance would make future needs *"harder to justify,"* a facial violation of anti-coercion provisions.

19. **Coercive "Optional Pathway" (34 C.F.R. § 100.7(e) via § 104.61; 28 C.F.R. § 35.134):** Pressuring the student to accept an informal resolution on February 17, 2026, as a precondition for continued essential services constitutes prohibited retaliation and unlawful interference with the exercise of rights under Section 504 and Title II of the ADA.

20. **Retaliatory Grading Standing (28 C.F.R. § 35.134):** Maintaining the punitive 'D' as a "baseline" during the appeal effectively penalizes the student for exercising protected rights.

21. **Interference with TWC Advocacy (29 C.F.R. § 38.25):** Threatening the "justification" of needs interferes with the student's standing and funding with the **Texas Workforce Commission**.

22. **Intimidation via Administrative Burden:** Requiring excessive legal/administrative labor from a student just to receive pre-approved access (Spring 2026).

23. **Discriminatory Burden-Shifting (34 C.F.R. § 104.4(b)(4)):** In "Email 5," university staff attempted to blame low grades on medical appointments rather than the inaccessible materials.

---

## IV. SYSTEMIC EIT & STATE LAW VIOLATIONS

24. **Repetitive Failure (1 Tex. Admin. Code § 206 & § 213):** Similar digital barriers in CS 3339 (Spring 2026) under **Dr. Klepetko** prove systemic violation of state EIT mandates.

25. **Failure of Corrective Action (1 Tex. Admin. Code § 213.38):** The university failed to audit the Engineering department after the December 9, 2025, failure.

Exhibit A

26. **Non-Compliant Content at Posting (1 Tex. Admin. Code § 206.70):** Digital documents in Spring 2026 were not accessible at the point of posting.

27. **TPIA Delay Breach (Tex. Gov't Code § 552.221):** The university improperly applied a 45-day window to state public information requests in March 2026.

28. **HB 2504 Non-Compliance (Tex. Educ. Code § 51.974):** Withholding end-of-course evaluations from the public website violates state transparency laws.

29. **Mismanagement of State-Directed Funds (Tex. Lab. Code § 352.053):** Failing to provide an accessible environment for a **TWC-VR** funded student violates state vocational rehabilitation agreements.

30. **Breach of the IPE (29 U.S.C. § 3248 (WIOA Section 188)):** The university's actions directly obstructed career milestones identified in the student's **Individualized Plan for Employment(IPE)**.

---

## V. UNIVERSITY POLICY (UPPS) BREACHES

31. **Violation of the "7-Day Rule" (UPPS 07.11.01, §02.04):** **Dr. Compeau** failed to object to the August 18, 2025, notice within seven business days, making it mandatory.

32. **Breach of Shared Responsibility (UPPS 07.11.01, §04.01):** Failure to collaborate to ensure access, prioritizing faculty convenience over student rights.

33. **Canvas Accessibility Breach (UPPS 06.05.01):** Failure of the university's LMS content to meet technical accessibility standards (WCAG 2.1).

34. **Failure to Maintain Formal Records (34 C.F.R. § 104.7(b); 1 Tex. Admin. Code § 213.38):** Documented gaps in internal communication regarding the December 9, 2025 incident constitute a failure to maintain the formal administrative records required for a "prompt and equitable" investigation.

---

## VI. STRUCTURAL BARRIERS & DISCRIMINATORY METHODS

35. **Testing Center Notice Conflict (34 C.F.R. § 104.4; UPPS 07.11.01):** The ODS/ATSD requirement for a 3-business-day notice is structurally incompatible with faculty 24-hour quiz cycles, creating a "logistical trap" that shifts the burden of institutional non-compliance onto the student.

36. **Discriminatory Logistical Deadlines (28 C.F.R. § 35.130(b)(1)):** Administrative deadlines for exam scheduling that fail to account for a student's documented physical mobility limitations and 30-minute commute to the San Marcos campus constitute a method of administration that impairs program access.

37. **Creation of an Administrative Impairment (28 C.F.R. § 35.130; 34 C.F.R. § 104.4):** Between December 11, 2025, and March 5, 2026, **Dr. Compeau**, **ODS Director Steiger**, and **AVP Hatcher** coordinated to finalize and maintain a "D" grade in EE 2300, utilizing academic penalties to manufacture a permanent transcript barrier that blocks graduate admissions and labor market entry.

38. **Failure of Assistive Technology Integration (29 C.F.R. § 38.5):** By providing non-digital, mathematically inaccessible materials on December 9, 2025, the university rendered the student's TWC-funded Adobe Acrobat Pro and OCR workflows irrelevant, violating federal standards for assistive technology utility.

39. **Coordination of Punitive Grading Outcomes (28 C.F.R. § 35.130):** Documentation of the "Abandonment Window" confirms that ODS and Engineering staff coordinated the final '0' assignment on December 11, 2025 before **ODS Director Steiger** responded to the student, ensuring a punitive outcome preceded any support.

40. **Institutional Deliberate Indifference (42 U.S.C. §§ 12131–12134 (ADA Title II); 1 Tex. Admin. Code § 213.37):** On March 5, 2026, **AVP Hatcher** and **ODS Director Steiger** were formally notified of the December 9, 2025, accessibility failures and ongoing systemic breaches but refused to authorize interim remediation or supportive measures.

---

# VII. ADMINISTRATIVE COERCION & PROCEDURAL BAD FAITH (MARCH 2026)

41. **Pretextual Requirement of a Meeting (34 C.F.R. § 104.7; UPPS 04.04.46):** On March 3, 2026, **AVP Hatcher** mandated a Zoom meeting to *"ensure I fully understand your needs"* regarding standard interim supportive measures. Given the 77 pages of prior documentation, this requirement functioned as an administrative delay tactic rather than a good-faith interactive process.

42. **Contradictory Jurisdictional Representations (28 C.F.R. § 35.130):** On March 3, 2026, **Deputy Title IX Coordinator Sabrina Rodriguez** stated the Petitioner's request for supportive measures was *"under review"* by **AVP Hatcher**. On March 5, 2026, **AVP Hatcher** pivoted to claiming the measures were *"outside of the scope"* of her office. This 48-hour flip-flop indicates a pretextual denial of services.

43. **Coercive "Quid Pro Quo" Offer (34 C.F.R. § 100.7(e) via § 104.61; 28 C.F.R. § 35.134; 34 C.F.R. § 104.44):** During the March 5, 2026, meeting, **AVP Hatcher** explicitly conditioned the authorization of mandatory interim supportive measures (Incompletes and Spring course flexibilities) on the Petitioner's agreement to an "informal resolution." As documented in the Petitioner's "Memorialization of March 5, 2026, Meeting" email, **AVP Hatcher** required a waiver of the right to a formal investigation in exchange for basic accessibility remedies. This constitutes Administrative Coercion and a violation of anti-retaliation statutes.

44. **Violation of Non-Adversarial Support Standards (34 C.F.R. § 104.44):** By using "Incompletes" as leverage for a settlement, the University violated the requirement that modifications to academic requirements be provided as a matter of right to ensure equal access, not as a bargaining chip in an adversarial process.

45. **Documentation of "Administrative Gaslighting" (34 C.F.R. § 104.7):** On March 3, 2026, **AVP Hatcher** issued a written demand to meet to *"understand needs"* that had been forensically defined in the January 13, 2026, PAC Audit. This insistence that the Petitioner "re-explain" documented barriers during the March 5, 2026, meeting constitutes a failure to maintain a "prompt and equitable" grievance procedure.

46. **Breach of the Interactive Process (29 C.F.R. § 1630.2(o)(3)):** The University conducted the March 5, 2026, meeting without providing a prior written agenda or subsequent official minutes, despite the high-stakes nature of the "supportive measures" being discussed. This lack of transparency prevented the creation of a "Good Faith" administrative record and allowed **AVP Hatcher** to pivot the meeting into an undocumented "Quid Pro Quo" settlement offer, effectively obstructing the formal interactive process.

47. **Retaliatory Threat of Non-Support (28 C.F.R. § 35.134): AVP Hatcher**'s March 5, 2026, statement that the University *"cannot help"* if a formal investigation is pursued constitutes a "threat, intimidation, or interference" with a person exercising protected rights. The failure to provide a technical arbiter and the pivot to a settlement negotiation without a prior agenda—proves the meeting was a pretextual "charade" designed to pressure the student into a settlement rather than a good-faith effort to restore academic access.

48. **Improper Delegation of Accessibility Duty (42 U.S.C. §§ 12131–12134 (ADA Title II)):** During the March 5, 2026, meeting, **AVP Hatcher** attempted to delegate the responsibility for "solving" accessibility to the academic departments. Under ADA Title II, the legal obligation to ensure accessibility rests with the institution, not the individual departments or the student. This delegation is a "Method of Administration" that impairs program access.

49. **Repudiation of ADA Coordinator Oversight (1 Tex. Admin. Code § 213.37):** On March 3, 2026, OEO Investigator **Sabrina Rodriguez** directed the Petitioner to the ADA Coordinator and Chief Compliance Officer for "systemic" issues. As of March 20, 2026, neither office has acknowledged receipt or provided a timeline, representing a total collapse of the university's compliance oversight.

Exhibit A

50. **Intentional Creation of an Administrative Loop (28 C.F.R. § 35.130(b)(3)(i); UPPS 04.04.60, §02.02):** By intentionally redirecting the Petitioner between the Office of Equal Opportunity (which claimed "outside scope" on March 5, 2026) and the ADA Coordinator (who remained silent following the March 3, 2026, notice), the University utilized a "method of administration" that has the effect of defeating or substantially impairing the accomplishment of the objectives of the service. Under ADA Title II, public entities are prohibited from utilizing administrative criteria or methods that subject qualified individuals to discrimination. This unbreakable loop functioned as a "denial by exhaustion," designed to deplete the Petitioner's resources rather than provide the required regulatory oversight.

---

# VIII. FORENSIC RECORD OF SYSTEMIC BREACH

51. **Administrative Responsibility Laundering (34 C.F.R. § 104.7):** On December 17, 2025, **Dr. Barrett Bryant** explicitly refused to address grading consequences, stating: *"Disability Services... will review your complaints,"* violating the duty to provide an integrated resolution.

52. **Forensic Intimidation and Coercion (28 C.F.R. § 35.134):** On February 16, 2026, **ODS Director Steiger** issued a written threat: *"You will have a harder time justifying [your case] if there is a written account that you... declined [assistance]."* This weaponization of the interactive process constitutes active coercion.

53. **The "Constructive Denial" Catch-22 (28 C.F.R. § 35.160 (Effective Communication)):** On December 10, 2025, the University's failure to provide an accessible formula sheet coerced a "futile" exam cancellation, which the University punished with a '0' grade.

54. **Violation of Privacy (42 U.S.C. §§ 12131–12134 (ADA Title II); UPPS 04.04.46):** In February 2026, **Dr. Klepetko** administered an inaccessible pop quiz via whiteboard, forcing public self-identification and a demand for accommodations in front of peers.

55. **Refusal of Equitable Remedy (Tex. Admin. Code § 213.38): Associate Dean Dr. Chad Booth** admitted on January 20, 2026, that the 'D' was caused by the missing final grade but refused to correct the grade, ratifying a punishment for a technical barrier.

56. **Institutional Notice via NFB (January 13, 2026):** Service of the National Federation of the Blind (NFB) letter to **Dr. Jimenez** and **Dr. Aslan** from Norma Crosby (President, NFB of Texas) regarding the Petitioner's lack of proper accommodations. This proves high-level external notice of non-compliance was ignored for over 60 days.

---

# IX. ELECTRONIC INFORMATION RESOURCES (EIR) FRAUD

Exhibit A

57. **Failure to Provide "Equally Effective Alternate Access" (1 Tex. Admin. Code § 206.70; 28 C.F.R. § 35.160 (Effective Communication)):** The December 9, 2025, materials were confirmed as mathematically inaccessible. Under TAC § 206.70, the university is required to provide "Equally Effective Alternate Access" (EEAA) when primary materials are inaccessible. The record shows that no EEAA was ever provided, creating a permanent barrier to the EE 2300 curriculum.

58. **Breach of EIR Accessibility Mandate (1 Tex. Admin. Code § 213.37 (TAC Chapter 213); UPPS 04.02.03, §02.01):** On March 17, 2026, the Petitioner served a formal demand to the University's Electronic Information Resources Accessibility Coordinator (EIRAC) for a technical audit of the December 9, 2025 formula sheets. Under TAC Chapter 213, state agencies and higher education institutions must ensure that EIR is accessible. The EIRAC's failure to respond or initiate an audit is a direct violation of state statutory requirements.

59. **Repudiation of Technical Compliance Standards (UPPS 04.02.03, §03.02):** University policy UPPS 04.02.03 designates the EIRAC as the authority responsible for ensuring all digital instructional materials meet WCAG 2.1 Level AA standards. By ignoring the March 17, 2026, audit request, the EIRAC abandoned their regulatory duty to verify the accessibility of the materials used to justify the Petitioner's "D" grade.

60. **Concealment of Technical Non-Compliance:** The University's silence regarding the EIR audit request functions as an administrative concealment of technical non-compliance. If the materials were compliant, the EIRAC would have produced an accessibility report; the refusal to do so suggests a known violation of Texas Government Code § 2054.451.

61. **Administrative Default on the "Technical Impasse":** The Petitioner's March 17, 2026, notice established a "Technical Impasse." The University's failure to resolve this impasse—specifically regarding the mathematical OCR compatibility of the exam materials—proves that the internal technical grievance process is non-functional.

62. **Certification of Systemic Inaccessibility:** Items 57–62, when combined with the EIRAC's silence, serve as a formal certification that the University's Electronic Information Resources (EIR) infrastructure is in a state of systemic non-compliance, necessitating the full $60,000 restitution for the resulting career obstruction.

---

# X. RATIFICATION OF DISCRIMINATORY OUTCOMES & DUE PROCESS BREACHES

63. **Institutional Ratification of Discriminatory Grading (UPPS 07.11.01):** By refusing to authorize interim supportive measures or a grading stay during the March 5, 2026 interactive window—despite having the "Actual Notice" provided by the prior forensic service—the OEO and **AVP Hatcher** effectively ratified a discriminatory grading outcome derived from a technical breach.

Exhibit A

64. **Breach of "Prompt and Equitable" Grievance Requirements (34 C.F.R. § 104.7(b); UPPS 01.04.02, §02.01):** The failure of the ADA Coordinator and Chief Compliance Officer to respond to the March 3, 2026, "Confirmation of Review Notice" regarding systemic breaches of TAC § 206/213 constitutes a per se violation of the university's duty to provide prompt resolution. Under Section 504, institutions must adopt grievance procedures that incorporate appropriate due process standards. A total lack of acknowledgment or timeline from the university's primary compliance officers—while academic penalties were actively compounding—represents a fundamental breakdown of the mandated institutional "safety net."

65. **Failure to Execute Remedial Action (34 C.F.R. § 104.7(b); UPPS 01.04.02, §02.01):** Federal Section 504 regulations require recipients to take "remedial action" to overcome the effects of discrimination. By failing to audit and correct the "D" grade once the technical inaccessibility was flagged, the university permitted a technically flawed evaluation to remain part of the Petitioner's permanent academic record.

66. **Failure to Designate a Competent Neutral (UPPS 04.04.60, §01.02):** By allowing the OEO (the office accused of coercion on March 5, 2026) to remain the sole point of contact for the $60,000 claim, the University has failed to provide a neutral arbiter as required by Due Process and Title II of the ADA.

---

# XI. REPUDIATION OF TWC-VR VENDOR OBLIGATIONS

67. **Breach of TWC-VR Vendor Standards (34 C.F.R. § 361.13):** By ignoring the formal notification of VR Docket No. 2026-27, the university has breached its duty as a state-contracted vendor. Federal VR regulations require that agencies (and their contractors) provide services that are "appropriate to the vocational rehabilitation needs of the individual."

68. **Repudiation of TWC-VR Vendor Contractual Duties (34 C.F.R. § 361.13; 4 Tex. Admin. Code § 352.7):** As a state-contracted vendor for Vocational Rehabilitation, the University is bound by TAC § 352.7 to provide services that facilitate the "attainment of the vocational objective." By maintaining a technical barrier that blocks the Petitioner's Master of Science in Computer Science (MSCS) degree, the University is in active breach of its vendor agreement with the State of Texas.

69. **Failure to Notify TWC-VR of Accessibility Breaches (34 C.F.R. § 361.13):** As a state vendor, the University has a duty to report any barriers that prevent the successful completion of a VR-funded program. The University's failure to notify TWC-VR that its own technical non-compliance (EIT breach) caused the program delay is a breach of vendor transparency.

70. **Intentional Interference with Career Progression (Tex. Lab. Code § 21.055):** The University's refusal to correct the inaccessible "D" grade—knowing it blocks the MSCS application—constitutes an interference with the Petitioner's future employment and labor market entry, a protected interest under Texas Labor Code.

# XII. REPRESENTATIVE EVIDENCE OF DELIBERATE INDIFFERENCE

71. **Executive Receipt of Formal Notice (UPPS 01.04.02, §01.01; 34 C.F.R. § 104.7):** On March 5, 2026, the Petitioner escalated **AVP Hatcher**'s refusal to afford interim measures to the Office of the President and the Office of the Provost. Under UPPS 01.04.02, the university administration is responsible for ensuring compliance with all state and federal laws. This notice established "Actual Notice" at the highest governance level.

72. **Failure of Executive Oversight / Deliberate Indifference (28 C.F.R. § 35.130(b)(1) (discriminatory methods of administration)):** Despite the March 5, 2026 escalation, the Office of the President failed to intervene or direct the OEO to provide a "prompt and equitable" resolution. Under ADA Title II, silence in the face of a documented civil rights breach constitutes deliberate indifference to the exclusion of a qualified individual from a program.

73. **Notice of Compounding Grading Penalties (UPPS 02.03.12, §02.01):** On March 12, 2026, a secondary notice to the Provost documented that grading penalties in CS 3339 were compounding daily. UPPS 02.03.12 governs the "Grades and Changes of Grades," and the university’s failure to freeze or adjust these grades during an active accessibility investigation represents a failure to mitigate academic harm.

74. **Knowledge of "Functional Termination" (34 C.F.R. § 104.4(b)(1)(ii)):** The March 12, 2026, notice informed the university that the lack of supportive measures resulted in "functional termination." Under Section 504, a recipient of federal funds may not afford a qualified person an opportunity to participate that is not "equal to that afforded others."

---

# XIII. THE MARCH 20 SERVICE & STATUTORY DEFAULT

75. **Administrative Estoppel (Tex. Gov't Code § 2001):** The University is estopped from claiming it lacked "Notice" of Spring 2026 technical barriers. The Petitioner formally served Investigator Sabrina Rodriguez with the PAC Test Report (ISO 14289-1 / Matterhorn Protocol Audit) on January 13, 2026. The University’s failure to engage with this technical data for over 60 days, followed by **AVP Hatcher**'s refusal to authorize remedies during the March 5, 2026 window, constitutes a willful and deliberate indifference to federal accessibility mandates.

76. **Formal Service of the "48-Hour Cure" (Tex. Gov't Code § 2001.054):** At 7:13 AM on March 20, 2026, the University was served with a final opportunity to settle the $60,000 loss and provide a technical remedy to avoid litigation.

Exhibit A

77. **Activation of the Actual Notice Trigger (UPPS 01.04.02):** Dr. Bryant's 8:15 AM Read Receipt on March 20, 2026, confirms executive leadership had "Actual Knowledge" of the litigation hold and liability before the cure window expired.

78. **Default on the Administrative Cure Window (34 C.F.R. § 104.7 (prompt and equitable grievance procedures)):** The University allowed the 48-hour deadline to expire without a technical remedy, establishing a "Final Default" and proving internal remedies are futile.

79. **Failure to Acknowledge Litigation Hold (Tex. R. Civ. P. 196.4):** As of March 23, 2026, the university has failed to acknowledge the formal Litigation Hold. Under Texas law, the duty to preserve evidence arises when a party knows or should know that there is a substantial chance that a claim will be filed.

80. **Repudiation of TWC-VR Vendor Duties (4 Tex. Admin. Code § 352.7 (facilitating vocational objectives)):** By ignoring the TWC-VR Docket number provided on March 20, 2026, the University has repudiated its regulatory obligations as a state-approved vocational rehabilitation vendor.

81. **Administrative Estoppel of the "Holiday" Defense:** Any attempt to use "Spring Break" as a pretextual excuse for the silence of the President or Provost is void, as the University's General Counsel remained active and the 48-hour notice was served during a standard business window.

---

# XIV. FINAL STATUS & EXHAUSTION OF REMEDIES

82. **Obstruction of Discovery in VR Docket No. 2026-27:** Intentional withholding of AVP/Dean communications to prevent "Evidence of Coordination" from entering the record.

83. **Unlawful Conflation of FERPA/TPIA (20 U.S.C. § 1232g(a)(1)(A) (FERPA); Tex. Gov't Code § 552.221 (TPIA)):** The University's attempt to apply a 45-day FERPA "ceiling" to standard administrative correspondence constitutes an intentional delay of discovery. This misapplication of federal privacy law to obstruct the production of public records violates the "reasonable promptness" requirements of both state and federal law.

84. **Service of the Statement of Economic Loss (Tex. Gov't Code § 2001.054):** On March 20, 2026, the Petitioner served a formal Statement of Economic Loss $60,000 . This notice satisfies the requirements of the Administrative Procedure Act regarding notice of claims and the intent to seek restitution for damages caused by agency/vendor default.

85. **Quantifiable Calculation of "Career Delay" Damages (Tex. Lab. Code § 21.2585):** As of March 23, 2026, the University has knowingly maintained the inaccessible "D" grade in EE 2300 for 102 days. This duration has now triggered a mandatory 6-month delay in the Petitioner's labor market entry. Under Texas Labor Code, the University is liable for the compensatory damages resulting from this intentional obstruction of vocational progress.

86. **Certification of the $60,000.00 Liability:** Items 1–85 collectively certify that the University's failure to implement the mandatory accommodations constitutes deliberate indifference and a material breach of the established IPE. The $60,000 baseline isolated in this certification expressly excludes the broader federal discovery exposure and the individual-capacity damages—which permanently index the annualized value of delayed MSCS entry and the subsequent state-sanctioned displacement. These uncapped liabilities remain actively docketed and will continue to escalate concurrently with the Defendants' administrative paralysis.

87. **Verification of Executive Awareness (42 U.S.C. §§ 12131–12134 (ADA Title II) - Actual Notice):** At 8:15 AM on March 20, 2026, **Dr. Bryant** generated a "Read Receipt" for the $60,000 Statement of Loss. Under Supreme Court precedent *(Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998)), this receipt constitutes "Actual Notice" to an official with the authority to address the discrimination and institute corrective measures.

88. **Breach of the 48-Hour Remediation Window (UPPS 04.04.53, §04.03):** The March 20, 2026, notice provided a final 48-hour window for the OEO to consolidate the March 5, 2026, retaliation claims. By allowing this window to expire during a period of documented executive monitoring, the University has formally waived its right to a "prompt and equitable" internal resolution, necessitating external state intervention.

89. **Intentional Infliction of Administrative Exhaustion:(34 C.F.R. § 100.7(e) via § 104.61; 28 C.F.R. § 35.134 (Anti-Retaliation Regulatory))** The University's decision to remain silent from March 16–23 while grading penalties remained active is a documented attempt to cause "Administrative Exhaustion." This tactic is a recognized form of Retaliatory Interference.

90. **Final Exhaustion of Internal Remedies:** With the expiration of the March 20, 2026, notice window and the documented silence of the President, Provost, and Dean, the Petitioner hereby declares all internal administrative remedies at Texas State University exhausted and futile. The matter now rests solely within the jurisdiction of the TWC-VR Administrative Law Judge.

---

# XV. THE APRIL 2026 OEO INVESTIGATION FAILURE & FINAL DETERMINATION

Exhibit A

91. **Institutionalization of the "Equal Treatment" Fallacy (28 C.F.R. § 35.160 (Effective Communication); 34 C.F.R. § 104.4):** The OEO's Determination Letter provided a written legal justification stating that providing the exact same inaccessible, image-based document to a visually impaired student as is provided to sighted students *"does not meet the definition of discrimination"*. Applying an "equal treatment" defense to an explicit failure-to-accommodate claim represents a severe and legally untenable misapplication of Section 504 and Title II of the ADA, which mandate effective communication and individual modification rather than uniform delivery of inaccessible materials.

92. **Pretextual Dismissal of Forensic Material Evidence:** The OEO formally dismissed the Petitioner's forensic PDF Accessibility Checker (PAC) audit on the grounds that the diagnostic tool was executed on December 17, 2025. Dismissing an automated, machine-verified ISO 14289-1 (PDF/UA) structural failure based on an inspection timeline demonstrates a profound institutional misunderstanding of Electronic and Information Resources (EIR) accessibility; a digital file's underlying structural source code remains static and non-compliant regardless of the date of its technical inspection.

93. **Express Repudiation of EIT State and Federal Mandates (1 Tex. Admin. Code Chapter 213; 29 U.S.C. § 794d (Section 508)):** Despite being provided with explicit statutory citations in the December 18, 2025, Amended Complaint, the OEO chose to omit and ignore the objective digital accessibility metrics required under state and federal law. This omission confirms that the university's internal compliance infrastructure operates in direct defiance of state-mandated Electronic and Information Resources (EIR) complaint processing and technical compliance benchmarks.

94. **Final Procedural Exhaustion Under TSUS Rules Chapter VI, Section 10.06 (42 U.S.C. §§ 12131–12134 (ADA Title II)):** Pursuant to Chapter VI, Section 10.06 of the Texas State University System (TSUS) Rules and Regulations governing discrimination grievance finality, the OEO issued a final, non-appealable determination that permanently closed the university's internal review. By formally refusing to recognize or cure the inaccessible digital environment while declaring the administrative process exhausted under this system mandate, the university's executive leadership established a permanent posture of deliberate indifference, cementing its status as a non-compliant vendor of federally funded training services and triggering immediate external state and federal jurisdiction.

[^1]: This $60,000 figure is a historical baseline for vocational restitution resulting strictly from the IPE's material breach and a six-month labor market delay. It is not a settlement ceiling. This calculation expressly excludes—and does not waive—uncapped federal damages for ongoing displacement, Fourth Amendment liabilities stemming from the May 20, 2026 eviction, and the active individual-capacity premiums against named Defendants.

Exhibit A

# Section-by-Section Forensic Breakdown

## I. The December 9, 2025, Accessibility Crisis (Circuits I - EE 2300)

- **Core Issue:** Implementation failure of pre-approved accommodations on a final exam formula sheet.
- **Statutory Violations:** UPPS 07.11.01 §02.02 (Immediate Implementation); 28 C.F.R. § 35.160(a)(1) (Effective Communication); 34 C.F.R. § 104.4 (Denial of Benefit).
- **Operational Impact:** **ODS Director Steiger** initiated a 52-hour communication blackout (December 9–11, 2025) while coordinating a zero (0) grade with **Dr. Compeau**, reducing the student's course average from 93% to 65% (D). This established a permanent transcript barrier blocking graduate school admission.

## II. Procedural & Grievance Failures

- **Core Issue:** Administrative breakdown across academic leadership.
- **Statutory Violations:** 34 C.F.R. § 104.7(b) (Prompt and Equitable Resolution); UPPS 04.04.46 §03 (Interim Measures); 1 Tex. Admin. Code § 213.37 (EIR Oversight).
- **Operational Impact:** Academic leadership (**Dr. Jimenez**, **Dr. Bryant**, **AVP Hatcher**) refused interim supportive measures such as an *"Administrative Incomplete"* or grade freeze. ODS investigated its own 52-hour abandonment, creating an irreconcilable conflict of interest.

## III. Administrative Coercion & Retaliation

- **Core Issue:** Active interference with protected civil rights.
- **Statutory Violations:** 28 C.F.R. § 35.134; 34 C.F.R. § 100.7(e) via § 104.61; 29 C.F.R. § 38.25.
- **Operational Impact:** **ODS Director Steiger** issued a written statement on February 17, 2026, warning that a formal grievance would make future needs "harder to justify". Staff shifted blame for low grades onto medical appointments while using the punitive 'D' grade as leverage.

## IV. Systemic EIT & State Law Violations

- **Core Issue:** Systemic digital non-compliance extending into Spring 2026 courses.
- **Statutory Violations:** 1 Tex. Admin. Code Ch. 206 & 213; Tex. Gov't Code § 552.221 (TPIA); Tex. Educ. Code § 51.974 (HB 2504); Tex. Lab. Code § 352.053.

Exhibit A

- **Operational Impact:** Digital barriers recurred in CS 3339 under **Dr. Klepetko**. The university improperly applied a 45-day window to state public information requests and withheld required web data, directly obstructing career objectives under the student's TWC-VR Individualized Plan for Employment (IPE).

## V. University Policy (UPPS) Breaches

- **Core Issue:** Faculty and administrative non-compliance with institutional rules.
- **Statutory Violations:** UPPS 07.11.01 §02.04 (7-Day Objection Window); UPPS 06.05.01 (Canvas Standards); 34 C.F.R. § 104.7(b).
- **Operational Impact:** **Dr. Compeau** failed to object to the initial accommodation notice within seven business days, making it mandatory. The LMS content failed WCAG 2.1 standards, and the university failed to maintain mandatory formal administrative records of internal complaints.

## VI. Structural Barriers & Discriminatory Methods

- **Core Issue:** Administrative methods that inherently impair access.
- **Statutory Violations:** 28 C.F.R. § 35.130(b)(1); 34 C.F.R. § 104.4; 29 C.F.R. § 38.5.
- **Operational Impact:** A 3-day testing center notice requirement created a logistical trap against 24-hour quiz cycles. Physical mobility limits and a 30-minute commute were ignored. Non-digital exam delivery neutralized TWC-funded OCR and Adobe Acrobat Pro workflows.

## VII. Administrative Coercion & Bad Faith (March 2026)

- **Core Issue:** Quid pro quo settlement demands during the interactive process.
- **Statutory Violations:** 34 C.F.R. § 100.7(e) via § 104.61; 28 C.F.R. § 35.134; 29 C.F.R. § 1630.2(o)(3).
- **Operational Impact:** **AVP Hatcher** conditioned mandatory supportive measures (Incompletes and Spring flexibilities) on waiving formal investigation rights during a March 5, 2026, meeting. Officials redirected the student between OEO and the ADA Coordinator, creating an unbreakable administrative loop.

## VIII. Forensic Record of Systemic Breach

- **Core Issue:** Evidentiary record confirming actual knowledge and bad faith.
- **Statutory Violations:** 28 C.F.R. § 35.160; 1 Tex. Admin. Code § 213.38.
- **Operational Impact:** Deans refused grade oversight. Public whiteboard quizzes forced peer self-identification. A formal warning letter from NFB of Texas President Norma Crosby went unaddressed for over 60 days.

## IX. Electronic Information Resources (EIR) Fraud

- **Core Issue:** Total default on statutory EIR audit mandates.

> - **Statutory Violations:** 1 Tex. Admin. Code § 206.70; 1 Tex. Admin. Code § 213.37; UPPS 04.02.03; Tex. Gov't Code § 2054.451.
> - **Operational Impact:** The EIRAC ignored a March 17, 2026, demand for an accessibility audit of the December 9, 2025, exam materials, concealing known technical non-compliance with WCAG 2.1 AA standards and certifying systemic EIR failure.

### X. Ratification of Discriminatory Outcomes & Due Process Breaches

> - **Core Issue:** Executive ratification of discriminatory acts.
> - **Statutory Violations:** 34 C.F.R. § 104.7(b); UPPS 01.04.02 §02.01; UPPS 04.04.60.
> - **Operational Impact:** Administrative silence from the ADA Coordinator and Chief Compliance Officer ratified the un-accommodated "D" grade. The university failed to designate a neutral arbiter, leaving the accused office (OEO) in sole control.

### XI. Repudiation of TWC-VR Vendor Obligations

> - **Core Issue:** Breach of state-contracted vocational rehabilitation duties.
> - **Statutory Violations:** 34 C.F.R. § 361.13; 4 Tex. Admin. Code § 352.7; Tex. Lab. Code § 21.055.
> - **Operational Impact:** Ignoring VR Docket No. 2026-27 breached vendor commitments to facilitate vocational objectives, actively interfering with Master of Science in Computer Science (MSCS) progression and labor market entry.

### XII. Representative Evidence of Deliberate Indifference

> - **Core Issue:** High-level executive awareness without corrective action.
> - **Statutory Violations:** UPPS 01.04.02 §01.01; 28 C.F.R. § 35.130(b)(1); UPPS 02.03.12.
> - **Operational Impact:** Escalations sent directly to the Office of the President and Provost on March 5 and March 12, 2026, detailing compounding daily grading penalties in CS 3339 and "functional termination," yielded zero executive intervention.

### XIII. The March 20 Service & Statutory Default

> - **Core Issue:** Final cure window expiration and litigation hold notice.
> - **Statutory Violations:** Tex. Gov't Code § 2001.054; Tex. R. Civ. P. 196.4; 34 C.F.R. § 104.7.
> - **Operational Impact:** A 48-Hour Cure notice and Statement of Loss $60,000 served on March 20, 2026, expired without response. Dean Barrett Bryant generated an 8:15 AM read receipt, establishing actual knowledge prior to default.

### XIV. Final Status & Exhaustion of Remedies

- **Core Issue:** Full exhaustion of internal administrative remedies.
- **Statutory Violations:** 20 U.S.C. § 1232g(a)(1)(A); Tex. Lab. Code § 21.2585; 34 C.F.R. § 100.7(e).
- **Operational Impact:** Misapplication of FERPA timelines to withhold administrative records was cited as discovery obstruction. Maintaining the "D" grade for 102 days forced a 6-month delay in labor market entry, fixing economic loss liability at $60,000 and transferring jurisdiction to the TWC-VR Administrative Law Judge.

### XV. The April 2026 OEO Investigation Failure & Final Determination

- **Core Issue:** Final administrative determination establishing institutional deliberate indifference.
- **Statutory Violations:** 28 C.F.R. § 35.160; 34 C.F.R. § 104.4; 1 Tex. Admin. Code Ch. 213; TSUS Rules Ch. VI § 10.06.
- **Operational Impact:** The OEO issued a final determination letter adopting an "equal treatment" defense—claiming that providing identical inaccessible image-based materials to visual impairments is non-discriminatory. It dismissed automated ISO 14289-1 PAC audit data based on inspection date, repudiated state EIT standards, and closed all internal review under TSUS rules.

### Critical Legal Elements Established

1. **Actual Notice:** Established under *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998) via verified read receipts (**Dr. Bryant**, March 20, 2026, at 8:15 AM) and direct service to the Office of the President, Provost, and General Counsel.
2. **Deliberate Indifference:** Demonstrated by executive silence, refusal to conduct statutory EIR audits, and the OEO's written rejection of accessibility standards in favor of an "equal treatment" defense.
3. **Quantifiable Economic Harm:** Fixed at $60,000 based on a 6-month delay in labor market entry under Texas Labor Code § 21.2585 and TWC-VR IPE vocational objectives.
4. **Administrative Exhaustion:** Finalized under TSUS Rules Chapter VI, Section 10.06, rendering internal remedies futile and opening complete judicial & administrative jurisdiction.

Exhibit A

# Table of Key Actors & Institutional Officials

| Name | Title / Designation | Affiliation / Department | Faculty Profile |
|---|---|---|---|
| **I. Texas Workforce Commission (TWC) & State Officials** | | | |
| **June Mann** | Impartial Hearing Officer (IHO) | contracted by TWC | NA |
| **Melissa Collins** | TWC Hearings Coordinator | TWC - Office of the General Counsel | NA |
| **Michael Marler** | Interim Deputy Regional Director | TWC - Vocational Rehabilitation | NA |
| **Tanisha Pickney** | VR Counselor - BVI | TWC - Vocational Rehabilitation | NA |
| **Teshawn Ferguson** | VR Supervisor | TWC - Vocational Rehabilitation | NA |
| **Selah Mendoza** | VR Customer Engagement Officer | TWC - Vocational Rehabilitation | NA |
| **Chris Fink** | VR Program Specialist | TWC - Vocational Rehabilitation | NA |
| **Linda Robinson** | VR Program Specialist | TWC - Vocational Rehabilitation | NA |
| **Laura Castillo, PhD, CRC** | Statewide TWC-EO Coordinator | TWC - FDCM<br>TWC - EOCD | NA |
| **II. Texas State University (TXST) Administrative & Compliance** | | | |
| **Dr. Kelly Damphousse** | President | TXST-President's House | View Profile |
| **Alexandria Hatcher** | Asst. Vice President for Office of Equal Opportunity | TXST - Office of Equal Opportunity (OEO) | View Profile |

Exhibit A

| Name | Title / Designation | Affiliation / Department | Faculty Profile |
|---|---|---|---|
| **Sabrina Rodriguez** | Deputy Title IX Coordinator / Senior Investigator | TXST - Office of Equal Opportunity (OEO) | NA |
| **Gavin Steiger** | Director - Office of Disability Services (ODS) | TXST - Office of Disability Services (ODS) | View Profile |
| **Kate Gannon-Cullinan, Ph.D.** | Director - Housing and Residential Life (DHRL) | TXST - Housing & Residential Life | NA |
| **Alex Metiash** | Director - Residential Experience | TXST - Housing & Residential Life | NA |
| **[Names TBD]** | Armed Police Squad / Personnel | TXST - University Police Dept (UPD) | NA |
| **III. Texas State University (TXST) Academic Faculty & Leadership** | | | |
| **Dr. Barrett Bryant** | Dean - College of Science and Engineering (COSE) | TXST-COSE | View Profile |
| **Dr. Chad Booth** | Assoc. Dean - College of Science and Engineering (COSE) | TXST-COSE | View Profile |
| **Dr. Jesus Jimenez** | Director - Ingram School of Engineering (ISOE) | TXST-ISOE | View Profile |
| **Dr. Semih Aslan** | Assoc. Professor, EE Program Coordinator - ISOE | TXST-ISOE | View Profile |
| **Dr. Cecil R. Compeau** | Asst. Professor - ISOE | TXST-ISOE | View Profile |
| **Dr. Randall Klepetko** | Asst. Professor - ISOE | TXST-ISOE | View Profile |

Exhibit A

# Glossary of Acronyms & Abbreviations

| Acronym / Abbreviation | Full Term / Definition |
|---|---|
| **ADA** | Americans with Disabilities Act |
| **ADAA** | Americans with Disabilities Act as Amended |
| **ATSD** | Assessment and Testing for Students with Disabilities |
| **AVP** | Assistant (or Associate) Vice President |
| **BVI** | Blind and Visually Impaired |
| **C.F.R.** | Code of Federal Regulations |
| **COSE** | College of Science and Engineering |
| **CS** | Computer Science |
| **EE** | Electrical Engineering |
| **EEAA** | Equally Effective Alternate Access |
| **EIR** | Electronic and Information Resources |
| **EIRAC** | Electronic Information Resources Accessibility Coordinator |
| **EIT** | Electronic and Information Technology |
| **EOCD** | Equal Opportunity Compliance Dept. |
| **FERPA** | Family Educational Rights and Privacy Act |
| **FDCM** | Fraud Deterrence and Compliance Monitoring |
| **HB** | House Bill (Texas Legislature) |
| **IHO** | Impartial Hearing Officer |
| **IPE** | Individualized Plan for Employment |
| **ISO** | International Organization for Standardization |
| **ISOE** | Ingram School of Engineering |
| **LMS** | Learning Management System (e.g., Canvas) |
| **MSCS** | Master of Science in Computer Science |
| **NFB** | National Federation of the Blind |
| **OCR** | Optical Character Recognition |
| **ODS** | Office of Disability Services |

Exhibit A

| Acronym / Abbreviation | Full Term / Definition |
|---|---|
| **OEO** | Office of Equal Opportunity |
| **PAC** | PDF Accessibility Checker |
| **PDF/UA** | Portable Document Format / Universal Accessibility (ISO 14289) |
| **TAC** | Texas Administrative Code |
| **TPIA** | Texas Public Information Act |
| **TSUS** | Texas State University System |
| **TXST** | Texas State University |
| **TWC** | Texas Workforce Commission |
| **TWC-VR** | Texas Workforce Commission - Vocational Rehabilitation |
| **UPD** | University Police Department |
| **UPPS** | University Policy and Procedure Statement (Texas State University) |
| **WCAG** | Web Content Accessibility Guidelines |
| **WIOA** | Workforce Innovation and Opportunity Act |

Exhibit A

# Comprehensive Legal & Procedural Overview

| Legal Framework | Primary Authorities Cited | Core Cause of Action / Allegation |
|---|---|---|
| **Federal Disability Rights** | 42 U.S.C. §§ 12131–12134; 28 C.F.R. § 35.160; 34 C.F.R. § 104.4, § 104.7, § 104.44 | Failure to provide effective communication, denial of program benefits, failure to modify academic requirements, and lack of prompt/equitable grievance procedures. |
| **Anti-Retaliation & Coercion** | 28 C.F.R. § 35.134; 34 C.F.R. § 100.7(e) via § 104.61 | Coercive "quid pro quo" demands, threats regarding future needs justifications, and administrative exhaustion tactics. |
| **Texas EIR Accessibility Mandates** | 1 Tex. Admin. Code Ch. 206 & 213 (§§ 213.37, 213.38); Tex. Gov't Code § 2054.451 | Non-compliant instructional materials at point of posting, lack of Equally Effective Alternate Access (EEAA), and refusal to perform EIRAC technical audits. |
| **Vocational Rehabilitation Vendor Duties** | 34 C.F.R. § 361.13; 4 Tex. Admin. Code § 352.7; Tex. Lab. Code § 352.053 | Breach of state-contracted vendor duties by obstructing career progression and failing to facilitate vocational objectives under the Individualized Plan for Employment (IPE). |
| **Institutional Policy & Governance** | UPPS 07.11.01, 04.02.03, 04.04.46, 04.04.53, 01.04.02 | Breach of faculty implementation windows, failure of executive compliance oversight, and misuse of non-adversarial supportive measures as bargaining chips. |

Exhibit A

# Table of Authorities

### I. Federal Statutes

| Authority | Description |
|---|---|
| **Americans with Disabilities Act (ADA) Title II (42 U.S.C. §§ 12131–12134)** | Prohibits discrimination by public entities and mandates program accessibility. |
| **Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794)** | Prohibits disability discrimination in federally funded programs. |
| **Section 508 of the Rehabilitation Act (29 U.S.C. § 794d)** | Mandates accessible electronic and information technology for individuals with disabilities. |
| **Workforce Innovation and Opportunity Act (WIOA) Section 188 (29 U.S.C. § 3248)** | Bars discrimination and ensures accessibility within state-funded vocational programs. |
| **Family Educational Rights and Privacy Act (FERPA) (20 U.S.C. § 1232g(a)(1)(A))** | Regulates access to educational records. |

### II. Federal Regulations (Code of Federal Regulations)

| Authority | Description |
|---|---|
| **29 C.F.R. § 38.5 & § 38.25** | Enforces nondiscrimination and protects advocacy rights under WIOA. |
| **34 C.F.R. § 361.13** | Outlines state vocational rehabilitation agency and vendor service delivery obligations. |

### III. (ADA Title II) Federal Regulations (Code of Federal Regulations)

| Authority | Description |
|---|---|
| **28 C.F.R. § 35.130** | Prohibits discriminatory methods of administration and program exclusion. |
| **28 C.F.R. § 35.134** | Prohibits retaliation, coercion, threats, or interference regarding protected rights. |
| **28 C.F.R. § 35.160** | Mandates auxiliary aids and "effective communication" for disabled individuals. |

Exhibit A

| Authority | Description |
|---|---|
| **29 C.F.R. § 1630.2(o)(3)** | ADA Interactive Process Requirements - Title I standard adopted by judicial precedent for Title II environments. |

**IV. (Section 504) Federal Regulations (Code of Federal Regulations)**

| Authority | Description |
|---|---|
| **34 C.F.R. § 104.4 & § 104.44** | Prohibit denial of benefits and mandate academic adjustments. |
| **34 C.F.R. § 104.7(b)** | Mandates prompt and equitable grievance procedures and procedural neutrality. |
| **34 C.F.R. § 100.7(e)** | Prohibit retaliatory conduct and administrative exhaustion tactics. |
| **34 C.F.R. § 104.44(a)** | Academic Adjustments/Remediation. |

**V. Texas State Statutes**

| Authority | Description |
|---|---|
| **Tex. Educ. Code § 51.974** | HB 2504 (Transparency/Public Information) |
| **Tex. Gov't Code § 2054.451** | Mandates state agency compliance with EIR accessibility standards. |
| **Tex. Gov't Code § 552.221** | Mandates prompt production of public information under the TPIA. |
| **Tex. Gov't Code § 2001** | Administrative Procedure Act (Notice/Hearings) |
| **Tex. Lab. Code § 21.055 / 21.2585** | Prohibits interference with employment/career progression and authorizes compensatory damages for vocational delays. |
| **Tex. Lab. Code § 352.053** | Regulates the administration and expenditure of state vocational rehabilitation funds. |

**VI. Texas Administrative Code (TAC)**

| Authority | Description |
|---|---|
| **1 Tex. Admin. Code 206 & § 206.70** | State web accessibility standards and Equally Effective Alternate Access (EEAA) mandates. |

Exhibit A

| Authority | Description |
| --- | --- |
| **1 Tex. Admin. Code 213, § 213.37, & § 213.38** | State Electronic and Information Resources (EIR) compliance, coordinator duties, and grievance rules. |
| **4 Tex. Admin. Code § 352.7** | Standards for vocational rehabilitation state vendors in achieving client vocational objectives. |

### VII. University Policy & Procedure Statements (UPPS)

| Authority | Description |
| --- | --- |
| **UPPS 01.04.02** | Institutional compliance responsibilities of university executive administration. |
| **UPPS 02.03.12** | Governs official grade changes and maintenance of academic records. |
| **UPPS 04.02.03** | Defines EIRAC regulatory authority over digital instructional materials. |
| **UPPS 04.04.46** | Mandates non-adversarial processes and interim supportive measures. |
| **UPPS 04.04.53** | Governs consolidation of civil rights and retaliation complaints. |
| **UPPS 06.05.01** | Canvas/LMS Accessibility Standards |
| **UPPS 07.11.01** | Faculty obligations for immediate accommodation implementation and the 7-day objection window. |

### VIII. Case Law

| Case Citation | Context |
| --- | --- |
| *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998) | Supreme Court precedent governing "actual notice" and deliberate indifference standards. |

### IX. Procedural Rules, Technical Benchmarks

| Authority | Description |
| --- | --- |
| **Tex. R. Civ. P. 196.4** | Electronic evidence preservation duties upon notice of potential claims. |
| **TSUS Rules, Ch. VI, § 10.06** | TSUS Discrimination Grievance Finality. |

Exhibit A

| Authority | Description |
|---|---|
| **ISO 14289-1 (PDF/UA) & Matterhorn Protocol** | Machine-verified technical criteria for digital document accessibility. |
| **WCAG 2.1 Level AA** | Web Content Accessibility Guidelines integrated into state and university policy. |