**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| **MARK L. SHORT,**<br><br>Plaintiff,<br><br>v.<br><br>**TEXAS WORKFORCE COMMISSION,**<br><br>**MICHAEL MARLER,** in his official capacity as Interim Deputy Regional Director,<br><br>**TANISHA PICKNEY,** in her official capacity as Vocational Rehabilitation Counselor**,**<br><br>Defendants. | Civil Action No: 1:26-cv-01174-ADA-DH |

# PLAINTIFF'S EMERGENCY MOTION FOR A PRESERVATION ORDER AND EXECUTION OF WRIT OF REPLEVIN (ECF 37)

Pursuant to Fed. R. Civ. P. 65 and the Court's inherent authority to prevent the spoliation of jurisdictional evidence under Fed. R. Civ. P. 37, Plaintiff Mark L. Short files this Emergency Motion for a Preservation Order to halt the scheduled **September 19, 2026,**[1] destruction of federally protected Blind/Visually Impaired (BVI) vocational assets. Plaintiff

[1] Plaintiff previously estimated the 60-day deadline as September 17; however, an exact calendar calculation from the July 21, 2026, TXST directive confirms the 60th day falls on September 19, 2026.

concurrently requests the immediate execution of the pending Emergency Motion for Writ of Replevin [ECF Doc. No. 37] to secure these assets.

## I. INTRODUCTION

This filing serves as a formal evidentiary timestamp to establish the following for the judicial record:

- **Constructive Denial:** Defendant Texas Workforce Commission (TWC) has constructively denied mandatory transition services, actively facilitating the unrecoverable destruction of specialized Blind/Visually Impaired (BVI) vocational assets, which constitute irreplaceable physical and digital evidence.
- **Impending Spoliation Date:** These jurisdictional assets, currently detained by Texas State University, are subject to an arbitrary administrative destruction deadline of **September 19, 2026**.
- **Exhaustion of Remedies:** The State was provided with, and ignored, clear and actionable administrative opportunities to cure the statutory breach and preserve this evidence prior to its imminent destruction.
- **Extrajudicial Evasion:** Despite explicitly assuming representation and instituting a strict communication bar on June 4, 2026,[2] Assistant Attorney General (AAG) Bryan has deliberately withheld a formal docket appearance for over 90 days. The OAG continues to operate entirely off-docket—attempting to isolate Plaintiff administratively while refusing to submit to the Court's jurisdictional oversight as the September 19, 2026, evidence destruction deadline approaches.

[2] See Exhibit A, AAG Notice of Representation and Communication Bar (June 4)

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiff's Verified Complaint (May 4, 2026)

Plaintiff's verified complaint and application to proceed *in forma pauperis* (IFP) were filed on May 4, 2026, (Application to Proceed IFP) [ECF Doc. No. 3] remaining in administrative screening for 99 days (3+ months) until granted on August 11, 2026. [ECF Doc. No. 30]

### B. Armed Eviction and Financial Pretext (May 20, 2026)

On May 20, 2026, Defendant Texas Workforce Commission (TWC) and Texas State University (TXST) coordinated an armed university police squad to forcefully evict Plaintiff and seize federally protected BVI vocational assets. The eviction was executed under a manufactured financial pretext regarding a student account balance - a service explicitly mandated and funded under Plaintiff's active IPE[3]. TWC processed the payment of this exact **$9,382.58** balance on May 22, 2026, exactly two days after the lockout and property seizure occurred. (TXST Acct Stmnt Spring 2026) [ECF Doc. No. 34-3] The property, containing irreplaceable physical and digital evidence of ADA Title II noncompliance, remains detained by the TXST University Police Department under threat of destruction.

### C. Resultant Geographic Displacement and Medical Impossibility of Unassisted Asset Retrieval

[3] See Exhibit B, Plaintiff's "redacted" Individual Plan for Employment (IPE) (November 2025)

The detained property has not been **abandoned** and has been refuted, on the record. (Notice of Intent to Spoliate Evidence) [ECF Doc. No. 22-2] Unassisted physical retrieval of these assets by the Plaintiff is a factual and medical impossibility due to the following barriers:

- **Geographic Displacement:** Following the May 20, 2026, administrative action, Plaintiff was forcibly displaced 210 miles away to Texas City.

- **Logistical Barriers:** Plaintiff does not drive and does not own a vehicle.

- **Active Medical Constraints:** Plaintiff's mobility and logistical capacities are severely limited by documented medical constraints.

Consequently, executing a 420-mile round trip to manually recover and haul heavy freight is physically impossible, unequivocally necessitating agency intervention under federal law. Emergency freight transit funded by TWC is a statutory mandate under the active Individualized Plan for Employment (IPE)[4] to recover these "tools, equipment," and "rehabilitation technology" under 34 C.F.R. § 361.48(b).

## D. AAG Representation Announcement and the "Do Not Contact" Directive (June 4, 2026) and Exploitation of Procedural Delays

On June 4, 2026, Assistant Attorney General (AAG) Elizabeth Bryan assumed representation of the Defendants and issued a strict "Do Not Contact" directive,

[4] See Exhibit B, Plaintiff's "redacted" Individual Plan for Employment (IPE) (November 2025)

ordering Plaintiff to direct all communications to the OAG rather than the agency clients.[5]

By enforcing this administrative blockade, the OAG intentionally severed Plaintiff's legal and operational ability to directly contact TWC to arrange emergency freight transit. The OAG utilized the authority of representation as a sword to block mitigation, while AAG Bryan concurrently refused to halt the scheduled disposal of the vocation property or enter a docket appearance to shield the State from judicial oversight.

## E. Exploitation of the Administrative IFP Delay (May 4 - August 11, 2026)

The OAG utilized this procedural IFP bottleneck as a designated blackout period. While the Court's administrative IFP screening paused the formal docket, the OAG maintained its communication blockade, allowing the university's destruction timeline for the federally funded vocational assets to advance unimpeded.

## F. Off-Docket Evasion and Prioritization of Administrative Convenience (August 11, 2026)

On August 11 and 12, 2026, AAG Bryan engaged in off-docket email negotiations with Plaintiff, attempting to secure a waiver of service under Fed. R. Civ. P. 4(d)—a provision inapplicable to state agencies under Fed. R. Civ. P. 4(j)—in an effort to extend the State's response deadline by 60 days.

[5] See Exhibit A, AAG Notice of Representation and Communication Bar (June 4)

When Plaintiff formally denied this waiver, AAG Bryan indicated an intent to file a motion to extend the TWC's deadline.

Critically, neither AAG Bryan nor the OAG cited an emergency or a need to investigate the claims; AAG Bryan explicitly stated the delay was sought so she *"wouldn't have to juggle two different briefing schedules."* [6]

## G. The Spoliation Timeline and Refusal to Institute a Preservation Hold (August 29, 2026)

Following formal U.S. Marshals service on August 27, 2026, the statutory 21-day Fed. R. Civ. P. 12(a) response window makes the Defendants' formal answer due on September 17, 2026. TXST has established an unyielding deadline of September 19, 2026, to execute the physical destruction of Plaintiff's remaining vocational property.

On August 29, 2026, Plaintiff served a formal "Legal [Reiterated] Preservation Hold and Notice of Active Federal Litigation"[7] upon the TXST Office of General Counsel, the University Police Department, and AAG Bryan, explicitly citing the September destruction deadline and the pending federal motions. (Motion for Sanctions and Return of Property) [ECF Doc. No. 34], (Emergency Motion for Writ of Replevin) [ECF Doc. No. 37].

---

[6] See Exhibit F, AAG Conferral Log (August 12)
[7] See Exhibit C, NOTICE OF PENDING FEDERAL LITIGATION AND [REITERATED] FORMAL PRESERVATION HOLD (August 29)

To date, Defendants and their counsel have failed to issue any confirmation that a preservation hold is in effect, signaling a tacit administrative endorsement of the September 19 destruction.

## H. Constructive Denial of Mandatory Transit Services (September 4, 2026) and the Bad-Faith Attempt to Manufacture an Administrative Waiver

On September 1 and September 2, Plaintiff issued a final administrative request for transitional services directly to their recently assigned Vocational Rehabilitation Counselor (VRC), Monica Villareal.[8] Plaintiff formally requested the authorization of emergency freight transit funding, specifically citing the medical impossibility of unassisted retrieval across a 210-mile displacement. Plaintiff set an extended deadline of 5:00 PM CDT on Friday, September 4, 2026, for authorization.

Rather than authorize transit funding, the VRC contacted Plaintiff on September 5, 2026, via an off-docket text message, demanding a "remote signature" and blanket agreement to newly emailed statements. This constitutes a calculated administrative trap designed to secure a modified IPE agreement, which the OAG could leverage to claim mootness and waive Plaintiff's existing federal claims while the destruction clock continues to run.

The lapsing of this deadline without authorization[9] constitutes a constructive denial of mandatory transition services under 34 C.F.R. § 361.48(b)(8). This administrative

[8] See Exhibit D, Plaintiff's Request(s) for TWC-VR Transition Services (September 1,2)
[9] See Exhibit E, TWC-VR Constructive Denial of Transition Services (September 4)

silence operates as a calculated evasion, orchestrated by the agency's legal counsel, confirming their deliberate indifference to the preservation of federal litigation evidence.

By refusing to fund the transit, and simultaneously refusing to institute a litigation hold on the physical property, the state has exhausted Plaintiff's administrative remedies and actively guaranteed the unrecoverable destruction of the federal vocational assets at issue in this litigation and therefore, immediate intervention by the Court is required regarding the pending motions. (Emergency Motion for Writ of Replevin) [ECF No. 37] (Motion for Sanctions and Return of Property) [ECF No. 34]

## III. STATUTORY AND ADMINISTRATIVE BREACH

Defendant TWC's refusal to authorize emergency freight transit violates the core statutory mandates of the Rehabilitation Act (29 U.S.C. § 723) and the corresponding federal directives governing an active Individualized Plan for Employment (IPE):

- **The Statutory Mandate (29 U.S.C. § 723):** Under 29 U.S.C. § 723(a), TWC is legally bound to provide mandatory vocational rehabilitation services. This statute explicitly mandates the provision of "rehabilitation technology" (§ 723(a)(14)), which encompasses the seized BVI vocational assets; "transition services" (§ 723(a)(15)); and "transportation" (§ 723(a)(8)), which includes the logistical costs of moving an individual and their necessary equipment to participate in VR services.

- **Federal Protection of Assets:** The detained items are federally protected "tools, equipment," and "rehabilitation technology" under 34 C.F.R. § 361.48(b)(16) and (17).
- **Federal Transit Mandate:** TWC is statutorily mandated to ensure the availability of "transportation in connection with the provision of any vocational rehabilitation service" and "other goods and services determined necessary" to achieve an employment outcome under 34 C.F.R. § 361.48(b)(8) and (21).
- **State Administrative Directives:** TWC's deliberate refusal to fund this transit constitutes a willful breach of the agency's own binding operational directives under the Texas Vocational Rehabilitation Services Manual (VRSM), specifically Chapter 16.4 (Transportation Services) and Chapter 16.5 (Tools and Equipment Services).

## IV. LEGAL FRAMEWORK: SPOLIATION OF EVIDENCE AND FRCP 37 SANCTIONS

### A. The Absolute Duty to Preserve Evidence

Federal law imposes an affirmative duty upon litigants to preserve evidence when litigation is pending or reasonably foreseeable. This duty requires a party to suspend its routine document retention and disposal policies and enact a litigation hold to ensure the preservation of relevant evidence.

The Office of the Attorney General formally acknowledged this active litigation on June 4, 2026. This triggered an immediate, non-delegable duty for the State to issue binding

litigation holds to all involved entities, including the Texas Workforce Commission (TWC) and its educational vendor, Texas State University (TXST).

The OAG's prior failure to halt the university's July 21, 2026, partial destruction of property (Spoilation and Destruction of Property) [ECF Doc No. 26-1], combined with its current failure to halt the university's September 19, 2026, destruction directive—despite having **105 days of actual notice**—constitutes a breach of this fundamental preservation duty.

## B. Intentional Spoliation and the Joint-Action Nexus

Under Fed. R. Civ. P. 37(e) and the Court's inherent authority, severe sanctions are warranted when a party destroys evidence with a culpable state of mind.

The Defendants cannot shield themselves by attributing the scheduled property destruction to TXST as an independent actor. Under 34 C.F.R. § 361.13, TWC maintains a non-delegable responsibility for the administration of vocational rehabilitation services, inextricably linking the agency and the university within a joint-action nexus.

By issuing a strict "Do Not Contact" directive that legally paralyzed Plaintiff's ability to coordinate freight transit directly with the TWC,[10] the OAG assumed full operational control over the fate of the property. Utilizing that exclusive control to run out the Fed.

[10] See Exhibit A, AAG Notice of Representation and Communication Bar (June 4)

R. Civ. P. 12(a) clock while the property advances toward destruction is an intentional, bad-faith facilitation of spoliation.

### C. Prejudicial Impact and the Foundation for Structural Sanctions

The assets scheduled for destruction are not merely peripheral personal property; they include federally and personally funded vocational technology, assistive devices, case files, documents and education records that constitute physical and electronic evidence of Plaintiff's claims and the Defendants' deliberate failure to accommodate under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

This Motion serves to exhaust Plaintiff's duty to mitigate the loss of evidence and places the Court and the Defendants on absolute, formal notice. Should the Defendants allow the September 19, 2026, destruction deadline to proceed without authorizing the necessary freight transit, Plaintiff will immediately move for maximum structural sanctions. This includes, but is not limited to, an adverse inference jury instruction, the striking of Defendants' subsequent pleadings, or the entry of a default judgment regarding the ADA and Section 504 liability claims.

## V. CONCLUSION

<u>Judicial intervention is actively required.</u>

The State has been provided with continuous, actual notice of the active bailment, the verified complaint, numerous requests and demands for the transit of assets, and the

September 19, 2026, destruction deadline. [ECF Doc. Nos. 22-1, 22-2, 24-1, 25-1, 34-7, 35-1, … ]

The Office of the Attorney General's ongoing refusal to enter a docket appearance, coupled with its active enforcement of a communication blockade and its stated intent to seek a procedural extension for mere ***"administrative convenience,"*** demonstrates a calculated strategy to prioritize docket delay over the preservation of federal assets. By filing this Motion, the spoliation timeline is officially unsealed.

Any destruction of Plaintiff's vocational property on or after September 19, 2026, can no longer be characterized as a routine administrative disposal, but must be recognized as a deliberate, sanctionable spoliation of federal evidence executed under the active jurisdiction of this Court.

## VI. REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests this Court:

1. Grant immediate injunctive relief via a Preservation Order and/or the execution of the pending Emergency Motion for Writ of Replevin [ECF Doc. No. 37], explicitly enjoining Defendants, their agents, and any associated state entities acting in concert (including Texas State University) from destroying, auctioning, or disposing of Plaintiff's seized BVI assistive technology.
2. Order the immediate release and freight transit of the entirety of Plaintiff's detained property seized on May 20, 2026—including, but not limited to, the dual 42-inch

monitors, all BVI assistive technology, educational records, and all associated personal and vocational assets—to Plaintiff's current location.

3. Grant any further relief this Court deems just and proper to preserve the status quo and prevent the permanent spoliation of evidence.

## VII. DECLARATION UNDER PENALTY OF PERJURY

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits A through F attached to this Motion, with the exception of exhibit watermark labels, are true and accurate copies of the original communications and documents.

Executed on September 8, 2026.

Respectfully submitted,

*/s/ Mark L. Short*

______________________

**Mark L. Short**, BSCS
Plaintiff, Pro Se
GENERAL DELIVERY
Texas City, TX 77590-9999
Phone: (940) 337-7005
Email: markl_short@yahoo.com

Dated: September 8, 2026

# CERTIFICATE OF CONFERENCE

Pursuant to Western District of Texas Local Rule CV-7(g), Plaintiff certifies a good-faith effort was made to confer with opposing counsel as follows:

- On September 4, 2026, at 7:24pm CDT, Plaintiff provided electronic notice of this administrative request to Assistant Attorney General Elizabeth Bryan, requesting a response by September 8, 2026, 2pm CDT.
- As of the date of this filing, the Counsel for Defendants were non-responsive and therefore implied they were OPPOSED to the motion.

Respectfully Submitted,

*/s/ Mark L. Short*

______________________

**Mark L. Short**, BSCS
Plaintiff, *Pro Se*
GENERAL DELIVERY
Texas City, TX 77590-9999
Phone: (940) 337-7005
Email: markl_short@yahoo.com

Dated: September 8, 2026

# CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.

Additionally, I hereby certify that on September 8, 2026, a true and correct copy of the foregoing was served upon the Defendants via Electronic Mail as follows:

**[Non-appeared] Counsel for Defendants (TWC, Marler, Pickney):**

**Elizabeth Bryan**
Assistant Attorney General
General Litigation Division
Office of the Attorney General of Texas
P.O. Box 12548
Capitol Station, MC-019
Austin, TX 78711-2548
Phone: 737-230-4700
Email: elizabeth.bryan@oag.texas.gov

Additionally, to satisfy the "actual notice" requirements of Fed. R. Civ. P. 65(d)(2)(C) and legally bind non-parties acting in active concert and participation with the Defendants, a true and correct copy of this filing has been served via direct electronic mail transmission to the following university administrators and legal officers:

**Office of the General Counsel**
Texas State University System (TSUS)
O. Henry Hall
601 Colorado Street
Austin, TX 78701-2904
Phone: (512) 463-1808
Email: tsusgencoun@txstate.edu

**Kate Gannon-Cullinan, Ph.D.,**
Executive Director of Housing and Residential Life (DHRL)
Texas State University
Housing & Residential Life
515 N. Comanche
San Marcos, Texas 78666
Phone: 512.245.4663
Email: dhrldirector@txstate.edu

Respectfully Submitted,

*/s/ Mark L. Short*

______________________

**Mark L. Short**, BSCS
Plaintiff, *Pro Se*
GENERAL DELIVERY
Texas City, TX 77590-9999
Phone: (940) 337-7005
Email: markl_short@yahoo.com

Dated: September 8, 2026